UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

|   |   |   |
|---|---|---|
| In re: | : | Chapter 11 |
|   | : |   |
|   | : | Case No. |
| RUBIE'S COSTUME COMPANY, INC., *et al*. | : | (Pending Joint Administration) |
|   | : |   |
|   | : |   |
| Debtors. | : |   |
|   | : |   |

------------------------------------------------------------ x

### DECLARATION OF MARC P. BEIGE PURSUANT TO
### RULE 1007-4 OF THE LOCAL BANKRUPTCY RULES FOR
### THE EASTERN DISTRICT OF NEW YORK AND IN SUPPORT
### OF DEBTORS' FIRST DAY MOTIONS AND APPLICATIONS

I, MARC P. BEIGE, hereby declare as follows:

1.      I am the President of Rubie's Costume Company, Inc. ("Rubie's"). Rubie's is the

sole owner of Forum Novelties Inc. ("Forum"), of which I am a Director. Rubie's is also the sole

owner, and managing member of, Buyseasons Enterprises, LLC ("Buyseasons"). Rubie's is also

the sole owner and managing member of Kramer Funding, LLC, which is the sole manager of

Masquerade, LLC ("Masquerade").

2.      I am also the President of Rubietoys Company, Inc., which is the sole member of

The Diamond Collection, LLC ("Diamond Collection"). Additionally, I am a member of Rubie's

Masquerade Company, LLC ("Rubie's Masquerade," and together with Rubie's, Forum,

Buyseasons, Masquerade, and Diamond Collection, the "Debtors").

3.      Rubie's, a New York corporation, is a designer, manufacturer and distributor of

costumes and related accessories with a wide ranging portfolio of non-exclusive licenses including,

but not limited to: Marvel, Warner Brothers, Nickelodeon, Disney and Lucasfilm. Historically, the

Company's growth has been through sales of products with designs driven by the strength of these

non-exclusive third-party licensing agreements, as well as rising interest among both adults and children in dressing up as authentic movie and television characters. The remaining Debtors are each in the costume and party supply industry, as set forth in more detail below.

4.      Rubie's operates or contracts with manufacturing facilities throughout the world and has worldwide wholesale distribution of its products.  It often licenses widely recognized designs from leading worldwide content providers such as Warner Brothers, Disney, and Marvel and currently maintains approximately 75 licenses in the United States.

5.      Rubie's is part of a corporate structure consisting of approximately twenty-eight companies and entities that are referred to herein collectively as the "Rubie's Group."

6.      On the date hereof (the "Petition Date"), the Debtors filed petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

7.      I submit this Declaration on behalf of the Debtors pursuant to Rule 1007-4 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules") for the purpose of apprising the Court and parties in interest of the circumstances that compelled the filing of these chapter 11 cases and in support of (i) the Debtors' chapter 11 petitions and (ii) the motions and applications that the Debtors have filed or will shortly file with the Court, including, but not limited to, the typical chapter 11 case first-day motions (the "First-Day Motions").

8.      I joined Rubie's in 1965 and became President and CEO in 1972.

9.      In my role as President of Rubie's and managing the other Debtors, and with the assistance of the Debtors' employees and advisors, I have been extensively involved in the Debtors' chapter 11 preparations and the events leading up to the Petition Date.  I also have extensive knowledge of, and experience with, the business and financial affairs of each of the Debtors and related companies, and the industry in which they operate.

10.     I am authorized to submit this Declaration on behalf of the Debtors.

11.     Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees working under my supervision, or my opinion based upon my experience, knowledge, and information concerning the operations of the Debtors and related companies.   If called upon to testify, I would testify competently to the facts set forth in this Declaration.  Unless otherwise indicated, the financial information contained herein is unaudited.

## I.      OVERVIEW OF THE DEBTORS AND THEIR BUSINESSES AND THE REASONS FOR THE CHAPTER 11 CASES

**A.      Introduction; Background of Companies and Businesses; Overview of Corporate Structure and Indebtedness**

12.     Rubie's has been in business for nearly 70 years.

13.     The Rubie's Group is the one of the world's largest designer, manufacturer and distributor of costumes and related accessories with an impressive portfolio of  non-exclusive licenses including, but not limited to: Marvel, Warner Brothers, Nickelodeon, Disney and Lucasfilm. Historically, the Company's growth has been driven by the strength of these exclusive third-party licensing agreements, as well as rising interest among both adults and children in dressing up as authentic movie and television characters.

14.     Forum is a distributor of non-licensed costumes and accessories, which tends to have sales year round focused on all major holidays, not just Halloween. Forum also supplies souvenir shops and related vendors with gifts and novelty items.

15.     Masquerade operates 4 retail costume stores in Manhattan, Queens, and Long Island and has some online operations through sales on Amazon.

16.     Buyseasons is an e-commerce retailer selling costumes, party goods, and accessories through a variety of its own websites, Amazon and other online marketplaces, and "drop shipping" fulfilling customer orders for costume and party supplies made on Walmart, Target, and other retailers websites.

17.     Diamond Collection is a manufacturer of high end costumes and is strictly a wholesaler. Diamond Collection's customer base is different than that of Rubie's.

18.     Finally, Rubie's Masquerade is a United States based holding company for ownership interests in various European and Asian entities involved in the costume and party supplies industry.

19.     Rubie's and its affiliates operate globally, with significant operations in 15 countries and distribution and sales into 52 countries across 6 continents.

20.     The Debtors maintain strong relationships with in excess of 2,000 retail accounts worldwide, both brick-and-mortar and e-commerce, including, but not limited to, Amazon, Target, Walmart, and Party City, with more than 14,500 shipment destinations. On average, the Debtors have maintained relationships with retail accounts for in excess of 24 years and approximately 99% of the Debtors' sales are to repeat customers.

21.     The Debtors also maintain strong, extensive relationships with Asian contract manufacturers, which permit the Debtors to streamline its sourcing operations and improve margins. As a result of the Debtors' strong relationships with manufacturers, and the close working relationship between such manufacturers and the Debtors' China-based team, the Debtors have been afforded preferred status with their manufacturers enabling the Debtors to rush production to meet the needs of its customers.

22.     In addition, the Debtors possess extensive in-house knowledge with respect to design and production, enabling the Debtors to work closely with customers to ensure their design needs are met and with manufacturers to ensure smooth operations and proactively control quality.

## B.     Financial Performance and Cash Position

23.     The Debtors' operating results have deteriorated in recent years primarily due to shifts in the industry. Independent customers have declined and the average order per existing customer also has declined. For the fiscal year ending December 31, 2018 ("FY 2018") net sales and Adjusted EBITDA were approximately $310 million and $2 million, respectively.  As a result of the decline in independent customers, for fiscal year ending December 31, 2019 ("FY 2019"), the Company generated net sales and Adjusted EBITDA of approximately $268 million ($42 million decline) and $3 million ($5 million decline), respectively.  In FY 2019, in order to offset the recent decline in sales, the Debtors implemented a series of payroll and other expense reductions, resulting in approximately $4 million of partial year expense savings.  The resulting expense savings is expected to impact the fiscal year ending December 31, 2020 ("FY 2020") by up to an additional $5 million resulting in an $8 to $9 million full year impact.

## C.     Prepetition Indebtedness

24.     A bank group consisting of Bank of America, NA, Wells Fargo Bank, NA, JP Morgan Chase Bank, NA, TD Bank, NA, Citibank, NA, and HSBC Bank, USA, NA  (the "Bank Group"), for which HSBC serves as Administrative Agent ("HSBC"), provided a credit facility to Rubie's under a 3-Year Credit Agreement, dated as of July 22, 2016 and amended by (i) that certain Amendment No. 1 and Waiver, dated as of July 9, 2017, and (ii) that certain Amendment No. 2 and Waiver, dated as of October 18, 2018 (the "Credit Agreement").

25.     The Credit Agreement provided for various lending facilities for funding in an aggregate amount in excess of $150 million.

26.     The obligations under the Credit Agreement and related documents were guaranteed by certain members of the Rubie's Group, including the Debtors, pursuant to the terms of that certain Guaranty Agreement dated as of July 22, 2016.

27.     Subsequent to the origination of the loan under the Credit Agreement, in the context of a series of loan restructuring negotiations with the Bank Group resulting in a series of forbearance agreements, certain members of the Rubie's Group also granted to the Bank Group a security interest and lien in certain of their assets pursuant to a Security Agreement, dated June 27, 2019.

28.     The Debtors' unsecured debt owed to general trade creditors, primarily vendors, is approximately $24.5 million, of which approximately $3 million is owed to entities owned or controlled by insiders who lease real property to the Debtors.

**D.      <u>Overview of Reasons for Chapter 11 Cases</u>**

29.     The filing of these cases has been caused by a number of factors, including the COVID-19 worldwide crisis, that began in China in late 2019 with worldwide effects starting in January, 2020.

30.     In 2019, even before the start of the COVID-19 crisis, the Debtors implemented comprehensive cost cutting programs to bring operating expenses in line with revenue, which program produced an immediate positive cost reduction impact for that year and will have beneficial impacts on the Debtors' finances on a going-forward basis.

31.    Thus, the Debtors are well positioned to respond to changes in consumer spending brought about the COVID crisis.  The Debtors' current financial projections are conservative and account for these potential impacts.

32.    However, the COVID crisis has had an impact on the Debtors' ability to obtain new financing from the Bank Group. The Bank Group has declined to provide continued financing and the  Debtors' efforts to obtain replacement financing on an asset based lending structure have been slowed by the crisis. Notwithstanding, as further explained below, the Debtors are optimistic that a financing package will become available for them over the next 60 to 90 days.

33.    The Bank Group's refusal to extend the existing financing, notwithstanding a series of forbearance agreements, extensive discussions with the Debtors' management and advisors and significant concessions by the Debtors to the Bank Group in the form of the payment of  significant fees, the granting of additional collateral and the granting of releases, has forced the Debtors into a liquidity crisis.

34.    Beginning early in 2019, the Debtors and the Bank Group entered into an intensive and extensive series of discussions concerning certain operational declines that the Debtors' businesses were experiencing and the resulting effect on their financial performance and cash flow liquidity.

35.    These discussions resulted in a series of forbearance agreements (collectively, the "Forbearance Agreements") between such parties executed in June, September and December of 2019 along with a series of extension letter agreements that preserved the status quo up to May 4, 2020.

36.    The Forbearance Agreements included a number of amendments to the Credit Agreement including the execution of the Security Agreement, reaffirmation of the guaranties

provided by the members of the Rubie's Group, including the other Debtors, and the granting of releases to the Bank Group.1

37.     Under such Agreements, Rubie's agreed to, and did, implement the hiring of an independent financial advisor, the Business Restructuring Services group of BDO USA, LLP ("BDO").

38.     During this time, the Debtors and certain members of the Bank Group had been having serious on-going discussions for these Banks, possibly with another new lender, to provide an asset based lending facility to replace the existing Bank Group facility.  However, in early April, one of the  Bank Group members that had been participating  in such discussions, and spearheading the effort to put together a new asset based lending facility for the Debtors to replace the existing facility, substantially lowered the amount of the commitment that it was willing to make, thus making it more difficult for the Debtors to complete this arrangement. More recently, on April 15, 2020, that lender, Wells Fargo, advised the Debtors that it would not participate further in the effort to construct replacement financing for the Debtors in the form of an asset based lending facility. It advised the Debtors that its decision was based on the conditions in the global lending market due to the COVID-19 crisis and internal restrictions on its current lending, and was not a reflection on the Debtors' creditworthiness.

39.     On or about April 15, 2020, the Debtors hired SSG Capital Advisors ("SSG"), a premier middle-market investment banking firm, to pursue other financing opportunities for the Debtors outside of the money-center banks. In the past few weeks, SSG has located and

---

[1] All recitations contained herein of the dealings and agreements between the Bank Group, the Debtors and the Rubie's Group are for informational purposes only and are not to be construed as an admission of any fact or concession as to any issue.  The Debtors and the members of the Rubie's Group hereby reserve all rights, claims, remedies and potential challenges to the claims and security position of the Bank Group and otherwise.

communicated with various potential lenders who have expressed interest in lending to the Debtors. Both the Debtors and SSG are optimistic about such opportunities.

40.     Following this sudden and unexpected news from Wells Fargo, the Debtors obtained further extensions of the Forbearance Agreement, parsed out in two week increments, the latest providing an extension through May 4, 2020, with no additional advances from the Bank Group, so that the Debtors could finalize its engagement with SSG and prepare and present to the Bank Group the Debtors' plan, on a going forward basis, to obtain a new asset based lending facility to replace the Bank Group's facility.

41.     The Debtors then entered into negotiations with the Banks on the terms for continued lending under a proposed extended Forbearance Agreement.  These negotiations continued on an intensive basis through approximately April 29, 2020.

42.     The Debtors demonstrated the viability of their business to the Banks in a number of ways including through the business plan implemented over the last year with the assistance of BDO, the continued value of their inventory which exceeds the debt owed to the Banks and even most recently the fact that major national account clients placed firm orders for the Halloween season.

43.     By April 29, 2020 it had become apparent to the Debtors that an agreement could not be reached with the Bank Group.  Without a binding Forbearance Agreement in place, placing the Debtors at risk of having the Banks exercising their remedies, the Debtors believed they had no choice but to file these chapter 11 cases in order to preserve the value of their businesses as a going concern.

44.     Other factors contributing to the chapter 11 filings include a downturn in sales due to a more general change in the business environment, insolvency of a number of the Debtors'

major trading partners, and the decision of many of Rubie's licensors to grant non-exclusive licenses thereby allowing a multitude of other manufacturers/wholesalers to obtain licenses for certain popular designs and images.

45.     These chapter 11 filings give the Debtors the essential breathing space that they need to overcome this short term liquidity crisis caused by the COVID-19 crisis and the actions of the Bank Group.  These chapter 11 cases allow for the Debtors to access the use of cash collateral to fund operations and payroll immediately and obtain a DIP financing facility, all pending the placement of an asset based lending facility as exit financing.  The Debtors have undertaken extensive efforts, with the aid of consultants and advisors, to obtain same and are confident that it will be achieved. The Debtors anticipate that obtaining a replacement facility, while continuing to operate in the ordinary course, will take between 90 and 120 days and is likely to be achieved given the streamlining of the Debtors' operations and cost structure that they have achieved in the last year, their very strong base of existing inventory and its continued receipt of significant Halloween season orders from its national client accounts.

## II.     THE DEBTORS' CHAPTER 11 CASES

46.     The Debtors intend to operate their businesses in the ordinary course during these chapter 11 cases.

47.     For fiscal year 2020, the Debtors forecast net sales and Adjusted EBITDA of approximately $220 to $230 million and $7 to $8 million, respectively. These amounts are estimates due to the impact of COVID-19 and represent an approximate 18% decline in sales from FY 2019. Despite the forecasted decline in sales, the first quarter of fiscal year 2020 yielded higher year over year purchase orders from key customers. These key customers have placed the majority of their orders for the year and have historically placed the majority of their order in the first quarter.

The increase in Adjusted EBITDA is the direct result of the Debtors' concerted effort to reconfigure its business strategy and implement cost savings initiatives in fiscal year 2019. Additionally, in the first quarter of fiscal year 2020, the Debtors have taken the initiative to implement additional payroll cost savings of approximately $6 million and plan on initiating an additional $3 million of cost savings which were included in the fiscal year 2020 Adjusted EBITDA budget mentioned above. The Debtors believe these additional initiatives will help maintain profitability in fiscal year 2020 despite a projected decline in net sales. The changes implemented by the Debtors in fiscal year 2019 and the first quarter of fiscal year 2020 will result in a stronger company and position the business to capture a larger share of an evolving market for licensed costumes and accessories.

## III.    THE DEBTORS' FIRST DAY MOTIONS

48.     The Debtors have or will shortly file motions for approval of certain relief typically sought at the initiation of the chapter 11 process ("First-Day Motions"). I have reviewed the Petition and First-Day Motions, or have otherwise had their contents explained to me, and it is my belief that the relief sought therein is essential to ensure the uninterrupted operation of the Debtors' businesses and success of the Debtors' reorganization.  Receiving this Court's approval of the relief sought in the First-Day Motions is essential to transitioning the Debtors into chapter 11 which will provide the Debtors an opportunity to work towards a successful restructuring that will benefit the Debtors' constituents and stakeholders.

### A.    Motion for Joint Administration of the Debtors' Chapter 11 Cases

49.     The Debtors request entry of an order directing the joint administration of these Debtors' chapter 11 cases for procedural purposes only, pursuant to Bankruptcy Rule 1015(b), and maintain one file and one docket for each of the chapter 11 cases under the lead case, Rubie's.

Joint administration of these chapter 11 cases will provide significant administrative efficiencies without impacting the substantive rights of any party in interest. Many of the motions, hearings, and orders that will be filed in these chapter 11 cases will affect each of the Debtors and their estates. The entry of an order directing joint administration of the chapter 11 cases will reduce costs, and promote judicial economy, by avoiding duplicative filings, objections, notices, and hearings, and will allow all parties in interest to monitor the chapter 11 cases with greater ease and efficiency.

**B.      Motion Extending Time to File Schedules and SOFAs:**

50.      The Debtors request entry of an order granting a 30-day extension (without prejudice to further extension) to file their schedules of assets and liabilities, schedules of executory contracts and unexpired leases (the "Schedules"), and statements of financial affairs (the "SOFA").

51.      To prepare the Schedules, the Debtors must carefully review and compile information from their books and records. This task requires a substantial expenditure of time and effort on the part of the Debtors. While the Debtors, with the assistance of their professional advisors, are mobilizing to work diligently and expeditiously on preparing the Schedules, the Debtors' resources are limited and strained.

52.      The number of creditors likely to be involved in these chapter 11 cases, the geographical spread of the Debtors' operations, and the numerous critical operational matters that must be addressed by the Debtors' management all contribute to the load that the Debtors must carry at the beginning of these cases. An extension to file the Schedules is necessary and appropriate and will ultimately maximize the value of the Debtors' estates for the benefit of their creditors and all other parties in interest.

**C.    Motion of Debtors for an Order Authorizing Them to Pay Certain Prepetition Wages, Compensation, an Employee Benefits and Related Relief**

53.    The Debtors request the entry of interim and final orders authorizing, but not directing, the Debtors to (a) pay wages, salaries, and all costs incident to the foregoing, including, without limitation, related prepetition withholding and payroll-related taxes;  (b) to maintain and continue to honor their practices, programs, and policies for the Employees and (each as defined below), and as such may be modified, amended, or supplemented from time to time in the ordinary course, including, without limitation, the continuation and maintenance of all employee benefit programs in the ordinary course; and (c) directing all banks to honor prepetition checks for payment of prepetition employee obligations; and (d) granting related relief.

54.    The relief requested includes compensation for the Debtors' full-time and part-time Employees. The Debtors pays their Employees on a weekly or bi-weekly basis. The Debtors' payroll obligations generally include wages, salaries, benefit programs,  and payments on account of used vacation time and other paid time off.

55.    The Debtors estimate that as of the Petition Date, they will owe approximately $395,000 to Employees on account of prepetition payroll obligations, incurred in the weeks ending April 24 and May 1, 2020 including accrued but unpaid wages and salaries (the "Unpaid Compensation") (excluding issued but uncashed checks). The Debtors do not believe that any Employee is owed Unpaid Compensation in an amount exceeding the $13,650 priority cap imposed by section 507(a)(4) of the Bankruptcy Code. However, a substantial number of employees have been placed on furlough due primarily to the COVID-19 crisis, but are expected to be recalled. Accordingly, the Debtors' weekly gross payroll on a going forward, post-petition basis, is expected to increase.

56.     Notwithstanding the current furlough, the majority of the Debtors' Employees rely heavily on the Debtors' compensation, benefits, and reimbursement of expenses to satisfy daily living expenses. The workforce will be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid compensation, benefits, and reimbursable expenses. Moreover, if the Debtors are unable to satisfy such obligations, morale and loyalty will be jeopardized at a time when such support is critical. In the absence of such payments, Employees may seek alternative employment opportunities, hindering the Debtors' ability to meet their customer obligations and likely diminishing customer confidence. Employee attrition, whether now or upon the end of the furlough, would cause the Debtors to incur additional expenses to find appropriate and experienced replacements. Additionally, loss of valuable employees would distract the Debtors from focusing on their operations and administering these chapter 11 cases at this critical juncture.

**D.      Debtors' Motion for Entry of an Interim Order Authorizing Use of Cash Collateral and Scheduling a Hearing to Consider the Entry of a Final Order Authorizing Use of Cash Collateral**

57.     By way of their Motion to Use Cash Collateral, the Debtors seek entry of an Interim Order authorizing the Debtors' use of cash collateral of the Bank Group. The Debtors require immediate authority to use cash collateral in order to continue their business operations (including paying their employees) without interruption towards the objective of the eventual reorganization of their businesses and secured debt through, *inter alia*, obtaining a new ABL facility. The Debtors are confident that they have the ability to successfully reorganize and, with the assistance of SSG, to obtain a new ABL facility, enabling them to make substantial distributions to creditors, but such a reorganization will not be possible if the Debtors are forced to shut their doors and discontinue serving their customers.

58.     To enable the Debtors to continue fulfilling the needs of their customers and to avoid a disruption of their and their clients' business operations and any potential impact on their clients' reputations in their respective industries, the Debtors require the use of cash collateral for the continuation of their operations. Without authorization to use cash collateral in accordance with the Debtors' budget, the Debtors' operations will cease to the detriment of all parties involved, including the Bank Group, the Debtors' employees, customers, and creditors.

59.     The need for the Debtors' immediate use of the Cash Collateral and for the relief requested in the Interim Order is best illustrated by the Debtors' expenditures forecast in the Budget.

60.     The Debtors' Budget, as further described in the Cash Collateral Motion, demonstrate that during the initial four-week period after the filing of these chapter 11 cases (the "Interim Period"), the Debtors anticipate that they will collect approximately $7.228 million in cash. The Budget also set forth the weekly expenditures required by the Debtors and project cash disbursements totalling $14.736 million in operating disbursements during the Interim Period. The bulk of these disbursements represent payments related to payroll and other employee-related obligations, utilities, the purchase of inventory and supplies, royalty payments, and all other expenses necessary for the Debtors' continued post-petition operations. The Budget demonstrate the Debtors' need for use of Cash Collateral during the Interim Period. The Debtors believes that they can operate their businesses during the Interim Period using Cash Collateral alone. Without the Court's authorization to use Cash Collateral, the Debtors will be unable to satisfy the administrative expenses attendant with the reorganization of their businesses under chapter 11.

61.     Moreover, the Debtors have a strong base of existing inventory whose value will continue to increase as the Halloween season approached as evidenced by the Debtors' recent receipt of firm orders from their national client accounts.

62.     In short, there is a substantial, viable business with a multitude of employees to preserve and a likelihood that the Debtors will be able to obtain a new ABL facility, thereby provided the Debtors with the necessary operating capital. However, the Debtors' businesses have no chance of surviving if the Debtors are not authorized to use Cash Collateral and do not receive any of the revenues resulting from the post-petition goods and services to its customers. If the Debtors' chapter 11 cases are converted to chapter 7 cases, unsecured creditors will likely receive greatly diminished recoveries. On the other hand, if the Debtors are permitted to use cash collateral and can survive until a successful reorganization, such reorganization will enhance the value of the collateral and improve results for all creditors.

**E.      Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management Systems, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (II) Granting Related Relief (the "Cash Management Motion")**

63.     Pursuant to the Cash Management Motion, the Debtors seek entry of interim and final orders: (a) authorizing the Debtors to (i) continue to operate their Cash Management systems; (ii) honor certain prepetition obligations related thereto; (iii) maintain existing Business Forms in the ordinary course of business; and (b) granting related relief.

64.     The Debtors' Cash Management Systems are similar to the centralized cash management systems used by other comparably sized companies to manage cash flow. The Debtors use their Cash Management Systems in the ordinary course to transfer and distribute funds and to facilitate cash monitoring, forecasting, and reporting, including funding of the Debtors'

non-Debtor affiliates. The bank accounts maintained by each of the Debtors are set forth in Exhibit K attached hereto.

65.     The Debtors routinely deposit, withdraw, and otherwise transfer money to, from, and between certain of the Bank Accounts by various methods (collectively, the "Ordinary Transfer Methods"), including, but not limited to, wires, checks, and other electronic funds transfers.  The Debtors are able to account for and reconcile payments made to third parties and affiliates.

66.     Because of the disruption that would result if the Debtors were forced to close their existing bank accounts, I believe that it is critical that the existing Cash Management Systems remain in place. I believe that the relief requested in the Cash Management Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest, and will enable the Debtors to continue to operate their businesses in chapter 11.

**F.      Debtors' Motion for (I) Authorization to (A) Continue to Maintain Their Insurance Policies and Programs and Surety Bond Program and (B) Honor All Obligations With Respect Thereto; and (II) Related Relief (the "Insurance Motion")**

67.     By the Insurance Motion, the Debtors request (i) authority, but not direction to (a) continue to maintain, and renew, in their sole discretion, their Insurance Policies and Programs, (b) honor its Insurance and Surety Obligations (as defined below) in the ordinary course of business during the administration of these chapter 11 cases; and (ii) related relief.

68.     The Debtors' Insurance Policies are essential to the preservation of the value of the Debtors' businesses, properties, and assets. I understand that, in many cases, insurance coverage such as that provided by the Insurance Policies, is required by diverse regulations, laws, and contracts. Failure to make payments required by the Debtors' Insurance Policies could have a significant negative impact on the Debtors' operations.

69. The Debtors incur approximately $1,532,000 in the aggregate in annual Insurance Obligations, including Brokers' Fees. Of this amount, the Debtors anticipate approximately $108,000 will become due and owing in the month following Petition Date. In order to preserve the value of the Debtors' estates and to protect against uninsured loss, the Debtors seek authority to pay any prepetition Insurance and Surety Obligations.

70. I believe that the relief requested in the Insurance Motion is in the best interest of the Debtors' estates, their creditors, and all other parties in interest, and will enable the Debtors to continue to operate their businesses in chapter 11 without disruption.

**G. Debtors' Motion for (I) Authorization to Pay Certain Critical Vendors and (II) Related Relief (the "Critical Vendor Motion")**

71. By the Critical Vendor Motion, the Debtors request authority to pay the pre-petition claims of certain of certain vendors (the "Critical Vendors") with whom continued business is critical to maintaining the Debtors' businesses. The Debtors propose that such payments to Critical Vendors would be made in the ordinary course, as such amounts become due.

72. The Debtors' wide-ranging operations require close coordination and integration among numerous parties, including the Critical Vendors who provide essential goods and services that cannot be easily replaced or substituted without disrupting the Debtors' operations. Because of this leverage, the Debtors believe that the Critical Vendors may make credible and actionable threats that, unless paid on account of their prepetition Critical Vendor claims, they will cease to supply the Debtors with the essential goods and services necessary to maintain the Debtors' operations and specifically to provide the Debtors with the inventory it needs for the upcoming Halloween season.

73. As set forth in the Critical Vendor Motion, the Critical Vendors fall into three categories: (i) certain foreign companies that provide necessary manufacturing services that cannot

be replaced during this purchase cycle (the "Critical Manufacturers"); (ii) licensors of certain intellectual property, including Warner Brothers, Disney, Marvel, Sony, Universal, and Netflix, which is used by the Debtors and their affiliates in the production of certain products (the "Critical Licensors"); and (iii) certain third-party sales representatives who are essential to the Debtors' effective distribution (the "Critical Representatives").

74.      In order to adequately prepare for the Halloween season, the Debtors incur the majority of their costs in late winter and early spring. Therefore, in order to ensure that the Debtors' businesses do not falter and to foster the Debtors' reorganization, the Debtors require the authority to pay these Critical Vendor Claims in the ordinary course. Any defaults in said payments would seriously jeopardize the Debtors business operations.

75.      I believe that the relief requested in the Critical Vendor Motion is in the best interest of the Debtors' estates, their creditors, and all other parties in interest, and will enable the Debtors to continue to operate their businesses in chapter 11 without disruption.

**H.      Debtors' Motion for (I) Authorization to Prepare a List of Creditors in Lieu of a Formatted Mailing Matrix; (II) Approving the Form and Manner of Notice of Commencement of the Debtors' Chapter 11 Cases; and (III) Related Relief (the "Creditor Notice Motion")**

76.      By the Creditor Notice Motion, the Debtors seek the entry of an Order (i) authorizing the Debtors to maintain and file a consolidated mailing matrix of creditors and other parties in interest (the "Consolidated Creditor Matrix"); (ii) authorizing the Debtors to file a consolidated list of top thirty (30) unsecured creditors (the "Top 30 Consolidated List") in lieu of filing a separate list of top twenty (20) creditors who have unsecured claims for each of the Debtors; and (iii) authorizing the Debtors to establish certain procedures for providing notice to parties of the commencement of these Chapter 11 Cases and of the meeting of creditors (the "Notice of Commencement") pursuant to section 341 of Bankruptcy Code.

77.     The Debtors estimate that there are hundreds of creditors and parties-in-interest that will be entitled to receive notices in the Debtors' bankruptcy cases. The Debtors maintain computerized lists of such parties and have prepared that list as the Consolidated Creditor Matrix containing the names and addresses of those creditors and parties-in-interest who were readily ascertainable as of the Petition Date. The Debtors have provided the Consolidated Creditor Matrix to the Clerk of the Court and the Debtors' proposed claims agent.

78.     The Consolidated Creditor Matrix is in a format ordinarily used by Debtors' counsel and might not comply with all or some of the various creditor matrix requirements. Under the circumstances, re-formatting the Consolidated Creditor Matrix, preparing and filing a separate formatted creditor matrix, and otherwise complying with the creditor matrix requirements under the Bankruptcy Rules will impose unnecessary administrative burdens on the Debtors without any corresponding benefit to the estates, especially in light of the fact that the Debtors intend to retain a claims agent well versed in the procedures of this Court.

79.     Moreover, permitted the Debtors to submit a Top 30 Consolidated List, rather than separate lists of the 20 largest unsecured creditors of each Debtor, will enable the Debtors to avoid substantial administrative burdens while still enabling the UST to identify and appoint members of an unsecured creditors' committee.

80.     Finally, the Debtors propose that the Notice of Commencement, in the form proposed by the Debtors, satisfies all relevant rules and guidelines and will enable the Debtors to give notice of these chapter 11 cases to their creditors and other parties-in-interest in a manner that reduces administrative burden, thereby facilitating the Debtors' reorganization and preserving value for creditors..

81.     I believe that the relief requested in the Creditor Notice Motion is in the best interests of the Debtors' estates, their creditors, and parties-in-interest and will enable the Debtors to properly provide notice to all necessary parties without overburdening the Debtors.

I.     **Debtors' Application for an Order Appointing Kurtzman Carson Consultants ("KCC") as Claims and Noticing Agent for the Debtors (the "Claims Agent Application")**

82.     By the Claims Agent Application, the Debtors seek authority to retain KCC as claims and noticing agent for the Debtors.

83.     Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipates that there will be in excess of approximately 700 entities to be noticed.  In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent is both necessary and in the best interests of both the Debtors' estate and their creditors.

84.     By appointing KCC as the claims and noticing agent in this chapter 11 cases, the distribution of notices and the processing of claims will be expedited, and the Office of the Clerk of the Court (the "Clerks Office" or "Clerk") will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

85.     I have been informed by counsel that the Debtors' selection of KCC to act as the claims and noticing agent has satisfied the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, in that the Debtors have obtained and reviewed engagement proposals from at least two (2) other court-approved claims and noticing agents to ensure selection through a competitive process.

86.     The scope of KCC's retention is more fully set forth in Claims Agent Application.

87.     It is my belief that the retention of KCC, and related relief sought by the Claims Agent Application, is in the best interests of the Debtors' estates, their creditors, and parties-in-

interest, as it will relieve the Debtors from significant burdens associated with providing notice and processing proofs of claim.

### IV.    Information Required by Local Bankruptcy Rule 1007-4

88.    Rule 1007-4 requires certain information related to the Debtors, which I have provided in the exhibits and/or below.  Specifically, these exhibits and the other exhibits contain the following information with respect to the Debtor:

(a)    I have been informed by counsel that the Debtors are not small business debtors within the meaning of Bankruptcy Code § 101(51D).

(b)    I have also been informed by counsel that the Debtors are not single asset real estate debtors within the meaning of Bankruptcy Code § 101(51B).

(c)    The nature of the Debtors' businesses and a statement concerning the circumstances leading to the Debtors' filings under chapter 11 is contained in Section I, *supra*.

(d)    **Exhibit A** attached hereto provides the following information with respect to each of the holders of the Debtors' collective 30 largest unsecured claims excluding claims of insiders: the creditor's name, address (including the number, street, apartment, or suite number, and zip code, if not included in the post office address) and telephone number; the name(s) of person(s) familiar with the Debtors' account; the nature and approximate amount of the claim; and an indication of whether the claim is contingent, unliquidated, disputed or partially secured.

(e)    **Exhibit B** attached hereto provides the following information with respect to each of the holders of secured claims against the Debtors (i.e. the Bank Group): the secured creditor's name, address (including the number, street, apartment or suite number, and zip code, if not included in the mailing address), telephone number, e- mail address, amount of the claim, a

description and an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.

(f)      **Exhibit C** attached hereto are balance sheets providing a summary of the Debtors' respective assets and liabilities.

(g)      The Debtors have no publicly traded securities.

(h)      The Debtors represent that there is no property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditors, or agent for such entity, provided, however that the Debtors maintains bank accounts which are subject to restrictions as provided in the Credit Agreement, Security Agreement and Forbearance Agreements.  The balance in such accounts as of the Petition Date was approximately $17 million.

(i)      **Exhibit D** attached hereto provides a list of the premises owned, leased or held under other arrangement from which the Debtors operates their businesses.

(j)      The Debtors' books and records are located at Rubie's Costume Company, Inc., 601 Cantiague Rock Road, Jericho, New York 11753.

(k)      **Exhibit E** attached hereto provides the location of the Debtors' significant assets and the nature, and location of any assets held by the Debtors outside the territorial limits of the United States.

(l)      **Exhibit F** attached hereto provides a list of the nature and present status of each action or proceeding, pending or threatened, against the Debtors or its property where a judgment or seizure of its property may be imminent.

(m)    **Exhibit G** attached hereto sets forth a list of the names of the individuals who comprise the Debtors' existing senior management, their tenure with the Debtors, and a brief summary of their relevant responsibilities and experience.

(n)    **Exhibit H** attached hereto provides the estimated amount of payroll to the Debtors' respective employees (not including officers, directors and stockholders) and the estimated amounts to be paid to officers, stockholders, directors, and financial and business consultants retained by the Debtors, for the 30-day period following the Petition Date.

(o)    **Exhibit I** attached hereto provides a schedule for the 30-day period following the Petition Date, of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, and any other information relevant to an understanding of the foregoing.

(p)    **Exhibit J** attached hereto provides a schedule of the Debtors' current insurance policies, including the identity of the insurer, policy period and type of insurance for each insurance policy listed.

(q)    **Exhibit K** attached hereto provides a schedule of the Debtors' bank accounts, including the name and address of the banking institution where the accounts are held, the name on the account, and the nature of the account for each bank account listed.

[*signature page follows*]

89.     Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Executed on this 30th day of April, 2020

Marc P. Beige,
President and Authorized Signatory


*s/ Marc P. Beige*

## **EXHIBIT A**

**LIST OF 30 LARGEST UNSECURED CREDITORS EXCLUSIVE OF INSIDERS**

**Consolidated Top 30 Unsecured Creditors - Rubies Costume Co. Inc. et al.**

($ in USD)

| Rank | Entity | Essential Vendors' Name | Street Address 1 | Street Address 2 | City | State | ZIP Code | Country/Region | Nature of the Claim | Amount of Prepetition claim ($) |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Rubie's | WARNER BROS. | 4000 WARNER BOULEVARD | | BURBANK | CA | 91522 | | Licensing Fees | 1,859,225.75 |
| 2 | Rubie's | WUYI JINGHE CLOTHING CO., LTD | NO. 41 KAI FA AVENUE | BAI HUA SHAN INDUSTRIAL ZONE | ZHEJIANG | | 321200 | CN | Foreign Vendor | 1,114,567.98 |
| 3 | Rubie's | SUN WAH JIAN XING PLASTIC MANUFACTORY | NO. 38 SAU SUN NEW VILKGE | INDUSTRIAL AREA | SHENZHEN | | | CN | Foreign Vendor | 1,083,562.71 |
| 4 | Rubie's | MARS HILL INTERNATIONAL LIMITED | 3RD FLOOR NO. 10 TANGXIACHONG INDUSTRY STREET | SONGGANG TOWN | GUANGDONG | | | CN | Foreign Vendor | 1,073,248.20 |
| 5 | Rubie's | FEDEX | 942 SHADY GROVE ROAD | | MEMPHIS | TN | 38120 | | Trade Debt | 1,031,939.14 |
| 6 | Rubie's | MARVEL | 500 S. BUENA VISTA STREET | | BURBANK | CA | 91505 | | Licensing Fees | 880,608.75 |
| 7 | Buyseasons | AMSCAN | 80 GRASSLANDS ROAD | | ELMSFORD | NY | 10523 | | Trade Debt | 574,324.42 |
| 8 | Rubie's | CHANGZHOU SUNWOOD INTERNATIONAL TRADING CO., LTD | ROOM #2101 | XINHUI BUILDING #301 TONGJIANG AVENUE | JIANGSU | | | CN | Foreign Vendor | 545,132.87 |
| 9 | Rubie's | JINHUAZHIHOU GARMENT CO., LTD. | SMALL COMMODITIES INDUSTRIAL PARK, XIAOSHUN T | JINDONG DISTRICT, JINHUA | ZHEJIANG | | 321035 | CN | Foreign Vendor | 515,141.15 |
| 10 | Rubie's | ADRENAL LLC | 415 9TH AVENUE N | | SEATTLE | WA | 98109 | | Third Party Sales Commission | 453,874.66 |
| 11 | Rubie's | ZHEJIANG CHINABASE IMPEX CO., LTD | UNIT C 12/F MING YANG BL. | 18 JIEFANG ROAD | SHANGHAI | | | CN | Foreign Vendor | 433,705.27 |
| 12 | Rubie's | ZHE JIANG WELLFULL IMPORT AND EXPORT CO. LTD. | 2/F. YANGBAO BUILDING | XING YI ROAD YU HANG DISTRICT | HANGZHOU | | 311100 | CN | Foreign Vendor | 431,128.91 |
| 13 | Rubie's | SHENZHEN XINHUA LITE PLASTICS PRODUCTS LIMITED COMPANY | NO. 37 XIA PO VILLAGE, | LONG TIAN, KENGZLPINGSHAN | SHENZHEN GUANGDONG | | | CN | Foreign Vendor | 404,805.76 |
| 14 | Rubie's | HUANGSHAN SEA AND SAND CO., LTD. | 22 XIN HANG ROAD | CHENG BEI INDUSTRIAL ZONE | AN HUI PROVINCE | | | CN | Foreign Vendor | 391,842.35 |
| 15 | Rubie's | PANAN RIKANG COSTUME CO. LTD. | 2321 OGDEN AVE | | DOWNERS GROVE | IL | 60515 | | Foreign Vendor | 387,749.89 |
| 16 | Rubie's | ZHEJIANG PANAN COMBAAL CLOTHING CO., LTD. | FU HUA YUAN | XINCHENG DISTRICT | ZHEJIANG | | | CN | Foreign Vendor | 385,511.87 |
| 17 | Rubie's | ACTIVE MARKETING GROUP INC | 4640 GULFSTARR DRIVE | | DESTIN | FL | 32541 | | Third Party Sales Commission | 369,865.00 |
| 18 | Buyseasons | GOOGLE | 1600 AMPHITHEATRE PARKWAY | | MOUNTAIN VIEW | CA | 90453 | | Trade Debt | 254,493.47 |
| 19 | Rubie's | PANAN LUOLAN ARTS AND CRAFTS CO., LTD. | NO. 19 SHANGHU INDUSTRIAL FUNCTION ZONE | PANAN COUNTY | ZHEJIANG | | | CN | Foreign Vendor | 241,075.44 |
| 20 | Rubie's | SUNRISE PARTY PRODUCTS COMPANY LIMITED | RM B1 7/F. | CHEUNG FAT BUILDING | KOWLOON | | | HK | Foreign Vendor | 228,303.65 |
| 21 | Rubie's | YIWU PARTYLAND COSTUMS CO., LTD. | 6TH FLOOR AREA A NO. 7 BUILDING | NAN WU ROAD | ZHEJIANG | | 321035 | CN | Foreign Vendor | 216,648.88 |
| 22 | Rubie's | DONG YANG XINGBANG CULTURAL AND CREATIVE CO., LTD. | NO. 38 XINCHAO ROAD GARMENTS INDUSTRIAL ZONE | ECONOMIC DEVELOPMENT ZONE | ZHEJIANG PROVINCE | | 32200 | CN | Foreign Vendor | 215,988.22 |
| 23 | Buyseasons | UNIQUE INDUSTRIES INC | 4750 LEAGUE ISLAND BOULEVARD | | PHILADELPHIA | PA | 19112 | | Trade Debt | 212,069.68 |
| 24 | Buyseasons | CREATIVE CONVERTING | 255 SPRING STREET | | CLINTONVILLE | WI | 54929 | | Trade Debt | 185,960.56 |
| 25 | Rubie's | ZHENJIANG LIAN YEW | NO.12, HENGYUAN ROAD | DANTU INDUSTRIAL PARK | ZHENJIANG, JIANGSU | | | CN | Foreign Vendor | 181,413.80 |
| 26 | Rubie's | NINGBO ELITER IMPORT AND EXPORT CO. LTD. | RM906, NO.311 | JIANGNAN YIPIN PLAZA | NINGBO | | | CN | Foreign Vendor | 176,838.69 |
| 27 | Rubie's | ANHUI DINGHUI TOYS | 2888 LUCHAO ROAD | LUJIANG COUNTY | ANHUI | | | CN | Foreign Vendor | 159,305.98 |
| 28 | Rubie's | DONGYANG TANKE | 100 SHIMAODADAO | | DONGYANG JINHUA CITY | | 321000 | CN | Foreign Vendor | 158,018.30 |
| 29 | Forum | ERRIC SORELLE STUDIOS LTD. | 215 W. HOFFMAN AVENUE | | LINDENHURST | NY | 11757 | | Trade Debt | 154,592.82 |
| 30 | Rubie's | DONGYANG KEXIN | NO. 278 HANNING RD (W) | DONGYANG CITY | ZHEJIANG | | | CN | Foreign Vendor | 146,915.30 |

## EXHIBIT B

### LIST OF FIVE LARGEST SECURED CREDITORS

| Bank | Borrowing Amount | LC Amount | Combined |
|---|---|---|---|
| HSBC Bank USA, NA | 8,936,170.22 | 2,993,617.03 | 11,929,787.25 |
| Bank of America, NA | 7,446,808.51 | 2,494,680.85 | 9,941,489.36 |
| Wells Fargo Bank, NA | 6,329,787.23 | 2,120,478.72 | 8,450,265.95 |
| JPMorgan Chase Bank, NA | 4,840,425.53 | 1,621,542.55 | 6,461,968.08 |
| TD Bank, NA | 4,095,744.68 | 1,372,074.47 | 5,467,819.15 |
| Citibank, NA | 3,351,063.83 | 1,122,606.38 | 4,473,670.21 |
|  | 35,000,000.00 | 11,725,000.00 | 46,725,000.00 |

The name and address of the attorneys for HSBC as Administrative Agent for the Bank Group, is:

William J. Brown, Esq.
Phillips Lytle LLP
One Canalside
125 Main Street
Buffalo, NY  14203-2887

## **EXHIBIT C**

**BALANCE SHEET**

## ASSETS

| | Rubie's Costume Company Inc | Masquerade LLC | Forum Novelties Inc | Buyseasons Enterprises LLC | Rubies Masquerade Co LLC |
|---|---|---|---|---|---|
| **CURRENT ASSETS** | | | | | |
| Cash and Cash Equivalents | $ 5,093,190 | $ 109,200 | $ 783,241 | $ 691,042 | 38,912 |
| Accounts Receivable (Net of Allowance for Doubtful Accounts) | 37,078,231 | 0 | 10,764,305 | 2,768,176 | |
| Inventory | 48,110,758 | 5,362,350 | 22,703,920 | 23,270,150 | |
| Prepaid Expenses and Taxes | 4,346,465 | 159,932 | 755,785 | 366,183 | |
| Due from Affiliated Companies | 45,986,459 | 0 | 6,011,690 | 6,539,203 | 5,951,453 |
| Deferred Tax Asset | 0 | 0 | 0 | 0 | |
| Loans Receivable - Employees | 0 | 0 | 0 | 0 | |
| Accrued Interest Receivable | 0 | 0 | 0 | 0 | |
| Miscellaneous Receivables | 0 | 1,900,938 | 0 | 1,332,734 | |
| Investment in Marketable Securities | 17,084,723 | 0 | 0 | 0 | |
| Notes Receivable - affiliates | 0 | 0 | 0 | 0 | |
| Loans and Exchanges | 104,963 | 0 | 0 | 0 | |
| **TOTAL CURRENT ASSETS** | $ 157,804,789 | $ 7,532,420 | $ 41,018,941 | $ 34,967,488 | 5,990,365 |
| **PROPERTY AND EQUIPMENT** | | | | | |
| Land | $ 0 | 0 | 0 | 0 | |
| Building | 0 | 0 | 0 | 0 | |
| Construction in Progress | 0 | 0 | 0 | 0 | |
| Machinery and Equipment | 16,452,679 | 884,545 | 371,792 | 5,053,958 | |
| Furniture and Fixtures | 6,765,587 | 44,141 | 254,868 | 4,854,380 | |
| Automotive Equipment | 88,907 | 0 | 0 | 0 | |
| Leasehold Improvements | 18,597,150 | 892,438 | 0 | 3,793,572 | |
| **TOTAL PROPERTY AND EQUIPMENT** | $ 41,904,323 | $ 1,821,124 | $ 626,660 | $ 13,701,910 | 0 |
| Less: Accumulated Depreciation | 32,152,376 | 1,237,928 | 573,456 | 9,770,092 | |
| **NET PROPERTY AND EQUIPMENT** | $ 9,751,947 | $ 583,196 | $ 53,204 | $ 3,931,818 | 0 |
| **OTHER ASSETS** | | | | | |
| Cash Surrender Value of Officers' Life Insurance (Net of Loans) | $ 8,645,233 | 0 | 0 | 0 | |
| Due from Affiliated Companies | 14,172,821 | 0 | 0 | 0 | |
| Notes Receivable - affiliates | 0 | 0 | 0 | 0 | |
| Trademarks and Patents (Net of Accumulated Amortization) | 1,499,228 | 0 | 0 | 68,359 | |
| Customer-Relations Intangibles(Net of Accumulated Amortization) | 1,145,356 | 0 | 0 | 0 | |
| Deposits and Other Assets | 0 | 85,113 | 0 | 30,000 | 134,936 |
| Deferred Tax Asset | 16,364 | 0 | 0 | 0 | |
| Investment in Subsidiaries | 14,568,668 | 0 | 0 | 0 | 1,736 |
| Goodwill | 0 | 195,889 | 250,000 | 0 | |
| **TOTAL OTHER ASSETS** | $ 40,047,670 | $ 281,002 | $ 250,000 | $ 98,359 | 136,672 |
| **TOTAL ASSETS** | $ 207,604,406 | $ 8,396,618 | $ 41,322,145 | $ 38,997,665 | 6,127,037 |

## LIABILITIES, STOCKHOLDERS' EQUITY AND MEMBERS' CAPITAL

| | Rubie's Costume Company Inc | Kramer Funding LLC and Subsidiary | Forum Novelties Inc | Buyseasons Enterprises LLC | |
|---|---|---|---|---|---|
| **CURRENT LIABILITIES** | | | | | |
| Accounts Payable | $ 16,272,119 | 8,830,676 | 2,835,052 | 26,938,320 | |
| Accrued Expenses and Taxes | 5,280,352 | 71,539 | 137,652 | 2,859,652 | |
| Bank Overdraft | 0 | 0 | 0 | 0 | |
| Profit Sharing Plan Contributions Payable | 0 | 0 | 0 | 0 | |
| Loans Payable - Affiliate | 6,011,690 | 25,766,562 | 886,416 | 34,203,600 | 3,564,290 |
| Current Portion of Revolving Loan | 35,000,000 | 0 | 0 | 0 | |
| Current Portion of Long-Term Debt | 6,788 | 0 | 0 | 57,123 | |
| Loans and Exchanges - Related Parties | 0 | 0 | 0 | 0 | |
| Loans and Exchanges | 35,000 | 0 | 0 | 0 | |
| Deferred Expenses | 0 | 0 | 0 | 2,597,266 | |
| Due to Stockholders | 0 | 0 | 0 | 0 | |
| **TOTAL CURRENT LIABILITIES** | $ 62,605,949 | $ 34,668,777 | $ 3,859,120 | $ 66,655,961 | 3,564,290 |

**OTHER LIABILITIES**

| | | | | | |
|---|---|---|---|---|---|
| Long-Term Debt | $ 0 | 0 | 0 | 172,294 | |
| **TOTAL OTHER LIABILITIES** | 0 | 0 | 0 | 172,294 | 0 |
| **TOTAL LIABILITIES** | $ 62,605,949 | $ 34,668,777 | $ 3,859,120 | $ 66,828,255 | 3,564,290 |

**STOCKHOLDERS' EQUITY**

| | | | | | |
|---|---|---|---|---|---|
| Common Stock | $ 2,144,074 | $ 0 | 14,000 | 0 | |
| Retained Earnings and Members' Capital | 152,207,914 | (26,272,159) | 37,449,025 | (27,830,590) | 2,562,747 |
| Accumulated Other Comprehensive Income (Loss) | | | | | |
| Net Unrealized Gain on Marketable Securities | 291,360 | 0 | 0 | 0 | |
| Cumulative Foreign Currency Translation Adjustments | 0 | 0 | 0 | 0 | |
| Treasury Stock | (9,644,891) | 0 | 0 | 0 | |
| **TOTAL STOCKHOLDERS' EQUITY ATTRIBUTABLE RUBIES COSTUME COMPANY INC.** | $ 144,998,457 | $ (26,272,159) | $ 37,463,025 | $ (27,830,590) | 2,562,747 |
| Noncontrolling Interest | 0 | 0 | 0 | 0 | |
| **TOTAL STOCKHOLDERS' EQUITY** | 144,998,457 | (26,272,159) | 37,463,025 | (27,830,590) | 2,562,747 |
| **TOTAL LIABILITIES, STOCKHOLDERS'** | 207,604,406 | 8,396,618 | 41,322,145 | 38,997,665 | 6,127,037 |

**DIAMOND COLLECTION LLC**
**BALANCE SHEET**
**DECEMBER 31, 2019**

|  | December 31, 2019 |
|---|---:|
| **ASSETS** | |
| **CURRENT ASSETS** | |
| Cash and Cash Equivalents | $ 229,852 |
| Accounts Receivable (Net of Allowance for Doubtful Accounts) | 4,812,994 |
| Inventory | 4,979,224 |
| Prepaid Expenses and Taxes | 82,458 |
| Due from Affiliated Companies | 0 |
| **TOTAL CURRENT ASSETS** | $ 10,104,528 |
| **PROPERTY AND EQUIPMENT** | |
| Dies and Molds | $ 62,599 |
| Machinery and Equipment | 350,000 |
| Furniture and Fixtures | 269,653 |
| Automotive Equipment | 152,514 |
| Leasehold Improvements | 26,547 |
| **TOTAL PROPERTY AND EQUIPMENT** | $ 861,313 |
| Less: Accumulated Depreciation | 730,494 |
| **NET PROPERTY AND EQUIPMENT** | $ 130,819 |
| **OTHER ASSETS** | |
| Other Intangibles (Net of Accumulated Amortization) | $ 177,138 |
| Deposits and Other Assets | 90,752 |
| Investment in Partnership | 0 |
| Goodwill | 107,135 |
| **TOTAL OTHER ASSETS** | $ 375,024 |

**TOTAL ASSETS**          $     10,610,371

**DIAMOND COLLECTION LLC**
**BALANCE SHEET**
**DECEMBER 31, 2017 & 2016**

**LIABILITIES AND MEMBERS' CAPITAL**

|  | | December 31, 2019 |
|---|---|---|
| **CURRENT LIABILITIES** | | |
| Accounts Payable and Accrued Expenses | $ | 307,171 |
| Notes Payable - Affiliates | | 3,150,330 |
| Loans Payable - Affiliate | | 11,458,878 |
| **TOTAL CURRENT LIABILITIES** | $ | 14,916,379 |
| **OTHER LIABILITIES** | | |
| Long-Term Debt | $ | 0 |
| **TOTAL OTHER LIABILITIES** | $ | 0 |
| **TOTAL LIABILITIES** | $ | 14,916,379 |
| **MEMBERS' CAPITAL** | | |
| Members' Capital | $ | (4,306,008) |
| **TOTAL MEMBERS' CAPITAL** | $ | (4,306,008) |
| Noncontrolling Interest | | 0 |
| **TOTAL MEMBERS' CAPITAL** | | (4,306,008) |
| **TOTAL LIABILITIES AND MEMBERS' CAPITAL** | $ | 10,610,371 |

(0)

## **EXHIBIT D**

**Rubie's Leases**

Name and Address of Landlord    Location of Premises

Beige Family Realty
120-08 Jamaica Avenue
Richmond Hill, NY 11418

One Rubie Plaza
Richmond Hill, NY 11418

Richmond Associates LP
One Rubie Plaza
Richmond Hill, NY 11418

650 Cantiague Rock Road
Westbury, NY 11590

Melville Associates LP
One Rubie Plaza
Richmond Hill, NY 11418

1770 Walt Whitman Road
Melville, NY 11747

Paradise Lane Realty LLC
One Rubie Plaza
Richmond Hill, NY 11418

158 Candlewood Road
Bay Shore, NY 11706

Buckeye Associates LLC
One Rubie Plaza
Richmond Hill, NY 11418

4215 W Lower Buckeye Rd
Phoenix, AZ 85009

Buckeye 59th Avenue LLC
One Rubie Plaza
Richmond Hill, NY 11418

2 N. 59th Avenue
Phoenix, AZ 85043

100 Pineaire Drive LLC
One Rubie Plaza
Richmond Hill, NY 11418

100 Pineaire Drive
Bay Shore, NY 11706

Greenville Realty Group Inc
One Rubie Plaza
Richmond Hill, NY 11418

400 Bon Air Street
Mauldin, SC 29662

Greenville Realty Group Inc
One Rubie Plaza
Richmond Hill, NY 11418

333 N. Pleasantburg Drive
Greenville, SC 29607

Richmond Associates LP
One Rubie Plaza
Richmond Hill, NY 11418

601 Cantiague Rock Road
Jericho, NY 11753

Richmond Associates LP
One Rubie Plaza
Richmond Hill, NY 11418

145 Candlewood Road
Bay Shore, NY 11706

536 Broadhollow Realty LLC
One Rubie Plaza
Richmond Hill, NY 11418

536 Broadhollow Road
Melville, NY 11747

536 Broadhollow Realty LLC
One Rubie Plaza
Richmond Hill, NY 11418

1700 Walt Whitman Road
Melville, NY 11747

Adams & Company
411 Fifth Avenue
New York, NY 10016

16 Madison Square West, 9th Floor
New York, NY 10010

**Forum Leases**

Melville Associates LP
One Rubie Plaza
Richmond Hill, NY 11418

1770 Walt Whitman Road
Melville, NY 11747

Melville Associates LP
One Rubie Plaza
Richmond Hill, NY 11418

540 Broadhollow Road
Melville, NY 11747

**Diamond Collection Leases**

Glick Brothers LP
1833 E. Harmony Road
Fort Collins, CO 80528

1833 E. Harmony Road
Fort Collins, CO 80528

**Buyseasons Leases**

Beige New Berlin Realty LLC
601 Cantiague Rock Road
Jericho, NY 11753

5915 S. Moorland Road
New Berlin, WI 53151

**Masquerade Leases**

803 Broadway Associates LLC
One Rubie Plaza
Richmond Hill, NY 11418

808 Broadway
New York, NY 10003

## **EXHIBIT E**

The location of the Debtors' significant assets, the location of its books and records, and the nature, and location of any assets held by the debtors outside the territorial limits of the United States:

Location of Books and Records: 601 Cantiague Rock Road, Jericho, NY 11753.


Location of Debtors' Significant Assets (Inventory):

650 Cantiague Rock Road
Westbury, NY 11590

1770 Walt Whitman Road
Melville, NY 11747

158 Candlewood Road
Bay Shore, NY 11706

4215 W Lower Buckeye Rd
Phoenix, AZ 85009

2 N. 59th Avenue
Phoenix, AZ 85043

100 Pineaire Drive
Bay Shore, NY 11706

400 Bon Air Street
Mauldin, SC 29662

333 N. Pleasantburg Drive
Greenville, SC 29607

601 Cantiague Rock Road
Jericho, NY 11753

145 Candlewood Road
Bay Shore, NY 11706

536 Broadhollow Road
Melville, NY 11747

1700 Walt Whitman Road
Melville, NY 11747

1770 Walt Whitman Road
Melville, NY 11747

540 Broadhollow Road
Melville, NY 11747

1833 E. Harmony Road
Fort Collins, CO 80528

5915 S. Moorland Road
New Berlin, WI 53151

808 Broadway
New York, NY 10003

<u>Assets held by the Debtors Outside the Territorial Limits of the United States</u>: None.

## **EXHIBIT F**

List of the nature and present status of each action or proceeding, pending or threatened, against

the Debtors or their property where a judgment or seizure of its property may be imminent.

**NONE**

## **EXHIBIT G**

List of the names of the individuals who comprise the Debtors' existing senior management, their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience.

**Marc P. Beige, President and Director**: Joined the Debtors in 1965 and became President and CEO in 1972. By introducing consumers to a new view of Halloween as a dress-up and party holiday, Marc has driven the tremendous growth of Rubie's. Marc recently received the Ernst & Young Entrepreneur of the Year award. Through the hard work of Marc and his siblings Howard, Joel, and Maxine, Rubie's has grown to become the largest costume company in the U.S. with subsidiaries in Europe, The United Kingdom, Canada, Hong Kong, Japan, Israel, Mexico, South America and Australia. Marc is a graduate of Queens College with a degree in Math Education and is a member of the Halloween Industry Association, National Costume Association, Toy Manufacturers Association, U.S. Holocaust Museum, the 9-11 museum, and Yad Vashem, Museum of Jewish Heritage.

**Howard J. Beige, Executive Vice President and Director**: Joined the Debtors in 1978 and holds a Bachelor of Arts from Queens College. Howard is responsible for sales, licensing and distribution for Rubie's facilities in 15 different countries. Howard is a member of Halloween Industry Association, National Costume Association and Toy Industry Association and received the Disney Lifetime Achievement Award for development of costume sales for the Disney, Marvel and Lucasfilm portfolios.

**Rubin Beige, Chief Operating Officer**: Joined the Debtors full time in 1999. Along with several jobs in unrelated companies, Rubin learned the costume business from the ground up beginning in his teenage summers. Rubin oversees the relationships with the Company's China factories and the details of costume manufacturing, as well as the entire inventory production process, from conceptual design through the final shipments to customers. Upon graduation from Tulane University in 1999, Rubin entered the family business full-time, eventually working his way up to Chief Operating Officer. Rubin is presently responsible for planning, sourcing and product sales.

**John Clausen, General Manager**: Joined the Debtors in 1979 and began his career as a cutter before managing numerous functions including human resources, IT, international operations, domestic manufacturing, planning and production. John is responsible for manufacturing, operations outside of the U.S., and general corporate production and has represented the Company at the local Chamber of Commerce.

## **EXHIBIT H**

**30 Day Payroll (Exclusive of Officers and Directors)**: $562,000


**30 Day Anticipated Payments to Officers and Directors**: $56,000

Marc Beige

Howard Beige

Maxine  Beige

Rubin Beige

## **EXHIBIT I**

Schedule for the 30-day period following the Petition Date, of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, and any other information relevant to an understanding of the foregoing.

**Consolidated 4-Week Cash Flow Forecast**
April 29, 2020
*($ in 000's)*

| | Forecast 1 | Forecast 2 | Forecast 3 | Forecast 4 | Forecast Total |
|---|---|---|---|---|---|
| Week # | | | | | |
| Week Ending | 5/8/2020 | 5/15/2020 | 5/22/2020 | 5/29/2020 | |
| **Subsidiary Cash Receipts** | | | | | |
| Rubie's Costume Co, Inc. | $ 2,200 | $ 1,725 | $ 600 | $ 350 | $ 4,875 |
| Kramer Funding LLC (Masquerade) | 41 | 57 | 32 | 49 | 179 |
| Forum Novelties Inc. | 95 | 95 | 95 | 95 | 380 |
| Buyseasons Enterprises LLC | 344 | 403 | 423 | 438 | 1,607 |
| Diamond | 84 | 20 | 48 | 35 | 187 |
| **Total Receipts** | $ 2,764 | $ 2,299 | $ 1,197 | $ 967 | $ 7,228 |
| **Consolidated Cash Disbursements** | | | | | |
| Inventory | (1,326) | (454) | (1,578) | (1,570) | (4,928) |
| Royalties | (38) | (2,100) | (1,350) | (100) | (3,588) |
| Shipping | (374) | (309) | (417) | (355) | (1,455) |
| Payroll | (480) | (291) | (449) | (283) | (1,503) |
| Benefits | (3) | (69) | (1) | (307) | (380) |
| Taxes | - | (115) | (27) | - | (142) |
| Advertising | - | (254) | (22) | - | (276) |
| Commissions | (100) | (30) | (700) | - | (830) |
| Utilities | (74) | (52) | (54) | (54) | (234) |
| Professional Fees | (13) | (6) | (27) | (25) | (71) |
| Travel and Entertainment | (50) | (50) | (50) | (50) | (200) |
| Bank Charges & Interest | (300) | (4) | (0) | (0) | (305) |
| Rent | (4) | (22) | - | (20) | (46) |
| Corporate Insurance | (115) | (0) | (4) | (0) | (119) |
| Custom Duties | (100) | - | (100) | - | (200) |
| Other | (78) | (98) | (79) | (207) | (460) |
| **Total Operating Disbursements** | $ (3,056) | $ (3,853) | $ (4,856) | $ (2,970) | $ (14,736) |
| **Intercompany Receipts (Disbursements)** | | | | | |
| Intercompany expenses paid by Rubies | (50) | (20) | (50) | (20) | (140) |
| Canada [(2)] | (100) | | | (200) | (300) |
| Mask Illusions [(2)] | - | - | (100) | - | (100) |
| Collegeville Expenses | (100) | (100) | (100) | (100) | (400) |
| Other [(2)] | (148) | (181) | (348) | (141) | (817) |
| **Total** | $ (398) | $ (301) | $ (598) | $ (461) | $ (1,757) |
| **Bankruptcy Disbursements:** | | | | | |
| *Professional Fees:* | | | | | |
| Debtor Counsel | - | - | - | (525) | (525) |
| Debtor Advisor | - | - | - | (200) | (200) |
| Lender Counsel | - | - | - | (200) | (200) |
| Lender Advisor | - | - | - | (100) | (100) |
| Committee Counsel | - | - | - | (200) | (200) |
| Committee Advisor | - | - | - | (100) | (100) |
| Claims Agent | - | - | - | (50) | (50) |
| Total Professional Fees | $ - | $ - | $ - | $ (1,375) | $ (1,375) |
| Professional Fee Carve-out | - | - | - | (500) | (500) |
| Chapter 7 Trustee Carve-out | - | - | - | (25) | (25) |
| US Trustee Fees | - | - | - | (200) | (200) |
| Utility Deposit | (125) | | | | (125) |
| **Total Bankruptcy Disbursements** | $ (125) | $ - | $ - | $ (2,100) | $ (2,225) |
| **Net Cash Flow** | $ (815) | $ (1,855) | $ (4,257) | $ (4,564) | $ (11,490) |
| Beginning Cash Balance | $ 20,815 | $ 20,000 | $ 18,145 | $ 13,889 | |
| Ending Cash Balance | $ 20,000 | $ 18,145 | $ 13,889 | $ 9,325 | |
| Outstanding Checks | 734 | 916 | 774 | 821 | |
| Bank Balance | $ 20,735 | $ 19,062 | $ 14,663 | $ 10,146 | |

**Rubie's Costume Co, Inc. 4-Week Cash Flow Forecast**
April 29, 2020
*($ in 000's)*

| | Forecast 1 | Forecast 2 | Forecast 3 | Forecast 4 | Forecast Total |
|---|---|---|---|---|---|
| Forecast Week # | | | | | |
| Week Ending | 5/8/2020 | 5/15/2020 | 5/22/2020 | 5/29/2020 | |
| **Cash Receipts** | | | | | |
| Wal-Mart | 1,900 | 875 | 50 | 50 | 2,875 |
| Amazon | 200 | 650 | 350 | 100 | 1,300 |
| Other Customers | 100 | 200 | 200 | 200 | 700 |
| **Total Receipts** | **$ 2,200** | **$ 1,725** | **$ 600** | **$ 350** | **$ 4,875** |
| **Operating Disbursements** | | | | | |
| Inventory Purchases (1) | (1,200) | (200) | (1,350) | (1,350) | (4,100) |
| Royalties (1) | - | (2,100) | (1,350) | (100) | (3,550) |
| Shipping | (200) | (200) | (200) | (200) | (800) |
| Payroll | (400) | (80) | (400) | (80) | (960) |
| Benefits | - | - | - | (290) | (290) |
| Taxes | - | (75) | - | - | (75) |
| Advertising | - | - | - | - | - |
| Commissions (1) | (100) | - | (700) | - | (800) |
| Utilities | (50) | (50) | (50) | (50) | (200) |
| Professional Fees | - | - | - | - | - |
| Travel and Entertainment | (50) | (50) | (50) | (50) | (200) |
| Bank Charges & Interest | (300) | - | - | - | (300) |
| Rent- Rubies | - | - | - | - | - |
| Rent- Masquerade (2) | - | - | - | - | - |
| Rent -Buyseasons (2) | - | - | - | - | - |
| Corporate Insurance | (110) | - | - | - | (110) |
| Custom Duties | (100) | - | (100) | - | (200) |
| **Total Operating Disbursements** | **$ (2,510)** | **$ (2,755)** | **$ (4,200)** | **$ (2,120)** | **$ (11,585)** |
| **Operating Cash Flow** | **$ (310)** | **$ (1,030)** | **$ (3,600)** | **$ (1,770)** | **$ (6,710)** |
| Intercompany Payments (3) | | | | | |
| Diamond Payroll | (20) | (20) | (20) | (20) | (80) |
| Imagination Design Studios Payroll | (30) | - | (30) | - | (60) |
| Total Intercompany Payments | (50) | (20) | (50) | (20) | (140) |
| Intercompany Cash Transfer In (Out) | | | | | |
| Masquerade | - | - | - | - | - |
| Buyseasons | - | (400) | (200) | - | (600) |
| Forum | - | - | - | - | - |
| Canada | (100) | - | - | (200) | (300) |
| Collegeville | (100) | (100) | (100) | (100) | (400) |
| Mask Illusions | - | - | (100) | - | (100) |
| Great Eagle/Prod Services Ltd | - | - | (200) | - | (200) |
| Other (Carolina/Oriental/Taiwan/IDS) | (50) | (50) | (50) | (50) | (200) |
| Total Intercompany Cash Transfer In (Out) | $ (348) | $ (681) | $ (748) | $ (441) | $ (2,217) |
| **Bankruptcy Disbursements:** | | | | | |
| Professional Fees: | | | | | |
| Debtor Counsel | $ - | $ - | $ - | (525) | $ (525) |
| Debtor Advisor | - | - | - | (200) | (200) |
| Lender Counsel | - | - | - | (200) | (200) |
| Lender Advisor | - | - | - | (100) | (100) |
| Committee Counsel | - | - | - | (200) | (200) |
| Committee Advisor | - | - | - | (100) | (100) |
| Claims Agent | - | - | - | (50) | (50) |
| Total Professional Fees | $ - | $ - | $ - | $ (1,375) | $ (1,375) |
| Professional Fee Carve-out | - | - | - | (500) | (500) |
| Chapter 7 Trustee Carve-out | - | - | - | (25) | (25) |
| US Trustee Fees | - | - | - | (200) | (200) |
| Utility Deposit | (125) | - | - | - | (125) |
| **Total Bankruptcy Disbursements** | **$ (125)** | **$ -** | **$ -** | **$ (2,100)** | **$ (2,225)** |
| **Net Cash Flow** | **$ (833)** | **$ (1,731)** | **$ (4,398)** | **$ (4,331)** | **$ (11,292)** |
| Beginning Cash Balance (4) | 19,356 | 18,523 | 16,792 | 12,395 | 19,356 |
| Ending Cash Balance | $ 18,523 | $ 16,792 | $ 12,395 | $ 8,064 | $ 8,064 |
| Outstanding checks | 400 | 400 | 400 | 400 | 400 |
| Bank Balance | $ 18,923 | $ 17,192 | $ 12,795 | $ 8,464 | $ 8,464 |

Notes:
(1) Includes critical vendor payments for foreign vendors, royalties and sales commissions.
(2) Rent is only paid to mortgaged properties in the 4 week forecast. The landlords for these properties are related entities.
(3) Represents expenses paid by Rubies on behalf of related entities.
(4) Opening cash balance includes $17M of marketable securities held in non-operating accounts.
(5) Debtor permitted during each weekly period covered by the Budget (i) to exceed any category in the Budget
    by up to ten percent (10%) be rolled forward. and (ii) to exceed total outstanding disbursements as set forth
    in the Budget by up to ten percent (10%), which variance may be rolled forward.

**Busyseasons Enterprises LLC 4-Week Cash Flow Forecast**
April 29, 2020
*($ in 000's)*

| Forecast Week #<br>Week Ending | Forecast<br>**1**<br>**5/8/2020** | | Forecast<br>**2**<br>**5/15/2020** | | Forecast<br>**3**<br>**5/22/2020** | | Forecast<br>**4**<br>**5/29/2020** | | **Forecast**<br>**Total** |
|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | | |
| Websites | 214 | | 238 | | 238 | | 225 | | 914 |
| Marketplaces | 90 | | 125 | | 100 | | 128 | | 443 |
| Dropship Customers | 40 | | 40 | | 85 | | 85 | | 250 |
| Other | - | | - | | - | | - | | - |
| **Total Receipts** | $ | **344** | $ | **403** | $ | **423** | $ | **438** | $ **1,607** |
| | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | |
| Payroll/taxes | (22) | | (122) | | (22) | | (124) | | (290) |
| Benefits | (3) | | (69) | | (1) | | (5) | | (78) |
| Temp Agencies | (33) | | (9) | | (2) | | (1) | | (44) |
| Professional fees | (3) | | (1) | | (3) | | - | | (7) |
| Inventory | (110) | | (254) | | (208) | | (143) | | (715) |
| Advertising | - | | (254) | | (22) | | - | | (276) |
| Shipping | (35) | | (48) | | (207) | | (120) | | (410) |
| IT | (10) | | (5) | | (24) | | (25) | | (64) |
| Utilities | (23) | | (1) | | - | | (4) | | (28) |
| Pmt processing fees | (7) | | (3) | | (7) | | (3) | | (18) |
| Bank Fees | - | | (3) | | - | | (0) | | (3) |
| Rent | - | | (14) | | - | | - | | (14) |
| Royalties | (38) | | - | | - | | - | | (38) |
| Sales Tax | - | | (40) | | (10) | | - | | (50) |
| Other | (19) | | (49) | | (4) | | (152) | | (224) |
| **Total Disbursements** | $ | **(304)** | $ | **(872)** | $ | **(507)** | $ | **(576)** | $ **(2,259)** |
| | | | | | | | | | |
| **Operating Cash Flow** | $ | **40** | $ | **(469)** | $ | **(85)** | $ | **(138)** | $ **(652)** |
| | | | | | | | | | |
| Intercompany Cash Transfers In/(Out) | - | | 400 | | 200 | | - | | 600 |
| | | | | | | | | | |
| **Net Cash Flow** | | **40** | | **(69)** | | **115** | | **(138)** | $ **(52)** |
| | | | | | | | | | |
| Beginning Cash Balance | (74) | | (34) | | (103) | | 12 | | |
| Ending Cash Balance | $ | (34) | $ | (103) | $ | 12 | $ | (126) | |
| | | | | | | | | | |
| Outstanding checks | 327 | | 514 | | 364 | | 414 | | |
| Bank balance | $ | 294 | $ | 411 | $ | 377 | $ | 289 | |

**Forum Enterprises LLC 4-Week Cash Flow Forecast**
April 29, 2020
*($ in 000's)*

| | Forecast 1 5/8/2020 | Forecast 2 5/15/2020 | Forecast 3 5/22/2020 | Forecast 4 5/29/2020 | Forecast Total |
|---|---|---|---|---|---|
| Forecast Week # | | | | | |
| Week Ending | | | | | |
| | | | | | |
| **Cash Receipts** | | | | | |
| Amazon.Com.Kydc Llc | 70 | 70 | 70 | 70 | 280 |
| Toynk.Com | - | - | - | - | - |
| Other Customers | 25 | 25 | 25 | 25 | 100 |
| **Total Receipts** | $ 95 | $ 95 | $ 95 | $ 95 | $ 380 |
| | | | | | |
| **Operating Disbursements** | | | | | |
| Payroll/taxes | (25) | (25) | (25) | (25) | (100) |
| Commission | - | (30) | - | - | (30) |
| Purchase Foreign | - | - | - | - | - |
| Freight | (20) | (20) | - | (35) | (75) |
| Credit Card | - | - | - | (67) | (67) |
| Catalog | (10) | (10) | (10) | (10) | (40) |
| Rent | - | - | - | - | - |
| Citrin | - | - | - | (8) | (8) |
| Other | (35) | (35) | (35) | (35) | (140) |
| **Total Disbursements** | $ (90) | $ (120) | $ (70) | $ (180) | $ (460) |
| | | | | | |
| **Operating Cash Flow** | $ 5 | $ (25) | $ 25 | $ (85) | $ (80) |
| | | | | | |
| Intercompany Cash Transfers In/(Out) | - | - | - | - | - |
| | | | | | |
| **Net Cash Flow** | $ 5 | $ (25) | $ 25 | $ (85) | $ (80) |
| | | | | | |
| Beginning Cash Balance | 747 | 752 | 727 | 752 | |
| Ending Cash Balance | $ 752 | $ 727 | $ 752 | $ 667 | |
| | | | | | |
| Outstanding checks | - | - | - | - | |
| Bank balance | 752 | 727 | 752 | 667 | |

**Kramer Funding LLC (Masquerade) LLC 4-Week Cash Flow Forecast**
April 29, 2020
*($ in 000's)*

| | Forecast | Forecast | Forecast | Forecast | | Forecast |
|---|---|---|---|---|---|---|
| Forecast Week # | **1** | **2** | **3** | **4** | | **Forecast** |
| Week Ending | **5/8/2020** | **5/15/2020** | **5/22/2020** | **5/29/2020** | | **Total** |
| **Cash Receipts** | | | | | | |
| NYC Stores | 35 | 33 | 24 | 30 | | 122 |
| Other Stores Total | 6 | 8 | 8 | 7 | | 29 |
| Amazon Total | - | 16 | - | 12 | | 28 |
| **Total Receipts** | $   **41** | $   **57** | $   **32** | $   **49** | | $   **179** |
| **Operating Disbursements** | | | | | | |
| Inventory | (15) | - | (20) | (10) | | (45) |
| Freight | (1) | - | (10) | - | | (11) |
| Payroll/taxes | - | (55) | - | (53) | | (108) |
| Utilities | (1) | (1) | (4) | - | | (6) |
| Repairs/Maintenance | (0) | - | (4) | (0) | | (4) |
| Insurance | (5) | (0) | - | (0) | | (5) |
| Tax | - | - | (17) | - | | (17) |
| Bank fees | (0) | (1) | (0) | - | | (2) |
| Workers Compensation | - | - | (4) | - | | (4) |
| Other | (1) | (0) | (2) | (7) | | (10) |
| **Total Disbursements** | $   **(24)** | $   **(58)** | $   **(61)** | $   **(70)** | | $   **(212)** |
| **Operating Cash Flow** | $   **18** | $   **(1)** | $   **(29)** | $   **(20)** | | $   **(33)** |
| Intercompany Cash Transfers In/(Out) | - | - | - | - | | - |
| **Net Cash Flow** | $   **18** | $   **(1)** | $   **(29)** | $   **(20)** | | $   **(33)** |
| Beginning Cash Balance | 299 | 317 | 316 | 287 | | |
| Ending Cash Balance | $   317 | $   316 | $   287 | $   266 | | |
| Outstanding checks | 7 | 2 | 10 | 7 | | |
| Bank balance | 324 | 318 | 297 | 273 | | |

**Diamond Collection 4-Week Cash Flow Forecast**
April 29, 2020
*($ in 000's)*

| | Forecast 1 | Forecast 2 | Forecast 3 | Forecast 4 | Forecast Total |
|---|---|---|---|---|---|
| Forecast Week # | **1** | **2** | **3** | **4** | |
| Week Ending | **5/8/2020** | **5/15/2020** | **5/22/2020** | **5/29/2020** | |
| | | | | | |
| Cash Receipts | | | | | |
| Customers | 84 | 20 | 48 | 35 | **187** |
| **Total Receipts** | $    **84** | $    **20** | $    **48** | $    **35** | $    **187** |
| | | | | | |
| Operating Disbursements | | | | | |
| Shipping | (118) | (41) | - | - | (159) |
| Inventory | (1) | - | - | - | (1) |
| Benefits | - | - | - | (12) | (12) |
| Rent | (4) | (8) | - | (12) | (24) |
| Other | (6) | - | (18) | - | (24) |
| **Total Disbursements** | $    **(129)** | $    **(49)** | $    **(18)** | $    **(24)** | $    **(220)** |
| | | | | | |
| **Operating Cash Flow** | $    **(45)** | $    **(29)** | $    **30** | $    **11** | $    **(33)** |
| | | | | | |
| Intercompany Cash Transfers In/(Out) | - | - | - | - | - |
| | | | | | |
| **Net Cash Flow** | $    **(45)** | $    **(29)** | $    **30** | $    **11** | $    **(33)** |
| | | | | | |
| Beginning Cash Balance | 187 | 142 | 113 | 143 | |
| Ending Cash Balance | $    142 | $    113 | $    143 | $    154 | |
| | | | | | |
| Outstanding checks | | | | | |
| Bank balance | 142 | 113 | 143 | 154 | |

## EXHIBIT J

Schedule of the Debtors' current insurance policies, including the identity of the insurer, policy period and type of insurance for each insurance policy listed.

| Insurer | Policy Period | Type of Insurance |
|---|---|---|
| Markel Insurance Co. | 3/1/2020-3/1/2021 | General Liability |
| National Union | 3/1/2020-3/1/2021 | Umbrella |
| American Guarantee & Liability | 3/1/2020-3/1/2021 | Umbrella |
| Federal Insurance Co. | 3/1/2020-3/1/2021 | Umbrella |
| Hartford Insurance Co.[2] | 12/28/2020-12/28/2023 | Commercial Crime |
| Allianz Insurance Co. | 3/1/2020-3/1/2021 | Commercial Property |
| Starr Marine Insurance Co. | 3/1/2020-3/1/2021 | Marine/Warehouse Stock |
| Sentinel Insurance Co. | 3/1/2020-3/1/2021 | Automobile |
| Radnor Insurance Co. | 10/7/2020-10/7/2021 | Management Liability |
| StarStone | 2/7/2020-10/7/2021 | Management Liability (Excess) |
| Landmark | 2/7/2020-10/7/2021 | Management Liability (Excess) |
| Beazley Insurance Co. | 10/7/2020-10/7/2021 | Cyber Liability |
| Admiral Insurance Co. | 3/1/2020-3/1/2021 | Products Liability |
| Zurich Insurance Co. | 3/1/2020-3/1/2021 | Foreign Umbrella |

---

[2] The named insured on this policy is the Profit Sharing Plan for Employees of Rubie's Costume Company.

## EXHIBIT K

Schedule of the Debtors' bank accounts, including the name and address of the banking institution where the accounts are held, the name on the account, and the nature of the account for each bank account listed.

### Rubie's

| Account Type | Financial Institution | Last 4 Digits of Account Number | Address of Branch |
|---|---|---|---|
| Operating Account | HSBC | 0591 | 534 Broadhollow Road<br><br>Melville, NY 11747 |
| Controlled Disbursement Account | HSBC | 0978 | |
| Cash Deposits Account | HSBC | 6564 | |
| RMB Currency Account | HSBC | 5270 | |
| Credit Card Receivable Account | Bank of America | 6028 | 300 Broadhollow Road<br><br>Melville, NY 11747 |
| Credit Card Receivable Account | Bank of America | 2704 | |
| Credit Card Receivable Account | Bank of America | 4491 | |
| Credit Card Receivable Account | Bank of America | 4501 | |
| Credit Card Receivable Account | Bank of America | 1081 | |
| Credit Card Receivable Account | Bank of America | 6517 | |
| Expense Account | JP Morgan Chase | 7737 | 395 North Service Rd |

| | | | |
|---|---|---|---|
| Expense Account | JP Morgan Chase | 2171 | Melville, NY 11747 |
| Expense Account | JP Morgan Chase | 4160 | |
| Expense Account | JP Morgan Chase | 6443 | |
| Expense Account | JP Morgan Chase | 2198 | |
| Expense Account | JP Morgan Chase | 6354 | |
| Payroll Account | Capital One, N.A. | 3894 | 1307 Walt Whitman Road  Melville, NY 11747 |
| Payroll Account | Capital One, N.A. | 3910 | |
| Payroll Account | Capital One, N.A. | 3902 | |
| Payroll Account | Capital One, N.A. | 4223 | |
| Payroll Account | Capital One, N.A. | 2093 | |
| Investment Account | Merrill Lynch | 2659 | 1010 Northern Boulevard  Great Neck, NY 11747 |
| Investment Account | Merrill Lynch | 2652 | |
| Investment Account | Citibank | 5138 | 730 Veterans Memorial Highway  Hauppauge, NY 11788 |
| Investment Account | JP Morgan Chase | 1002 | 395 North Service Rd  Melville, NY 11747 |
| Investment Account | JP Morgan Chase | 6007 | |
| Investment Account | JP Morgan Chase | 7005 | |
| Investment Account | JP Morgan Chase | 8003 | |
| Investment Account | JP Morgan Chase | 2000 | |

| | | | |
|---|---|---|---|
| Investment Account | HSBC | 2411 | 534 Broadhollow Road Melville, NY 11747 |
| Investment Account | Charles Schwab | 4646 | 50 West Jericho Turnpike Huntington Station, NY 11746 |
| Inactive | HSBC | 3986 | 534 Broadhollow Road Melville, NY 11747 |
| Inactive | Citibank | 2663 | 730 Veterans Memorial Highway Hauppauge, NY 11788 |
| Inactive | TD Bank | 4375 | 324 South Service Rd Melville, NY 11747 |
| Inactive | Wells Fargo | 5021 | 58 South Service Rd Melville, NY 11747 |
| Inactive | JP Morgan Chase | 7625 | 395 North Service Rd Melville, NY 11747 |
| Inactive | JP Morgan Chase | 0844 | |

**Buyseasons**

| **Account Type** | **Financial Institution** | **Last 4 Digits of Account Number.** | **Address of Branch** |
|---|---|---|---|
| Operating Account | HSBC | 3681 | 534 Broadhollow Road Melville, NY 11747 |
| Health Account | HSBC | 3673 | |
| Amazon Cash Deposits | HSBC | 8855 | |
| Fee Account | Tristate Capital Bank | 1554 | 623 5th Avenue New York, NY 10022 |
| Amazon Cash Deposits | Tristate Capital Bank | 1661 | |
| Amazon Cash Deposits | Tristate Capital Bank | 1653 | |
| Inactive | US Bank | 9642 | 2537 W. Wisconsin Avenue Milwaukee, WI 53233 |

**Forum**

| Account Type | Financial Institution | Last 4 Digits of Account Number. | Address of Branch |
|---|---|---|---|
| Operating Account | JP Morgan Chase | 0941 | 395 North Service Rd<br>Melville, NY 11747 |
| CAD Currency Account | TD Bank | 5046 | 324 South Service Rd<br>Melville, NY 11747 |
| Payroll | Capital One, N.A. | 3944 | 1307 Walt Whitman Road<br>Melville, NY 11747 |
| Credit Card Receivables | Citibank | 6429 | 730 Veterans Memorial Highway<br>Hauppauge, NY 11788 |

**Masquerade**

| Account Type | Financial Institution | Last 4 Digits of Account Number. | Address of Branch |
|---|---|---|---|
| Operating Account | TD Bank | 7654 | 324 South Service Rd<br>Melville, NY 11747 |
| Receivables Account | JP Morgan Chase | 1265 | |
| Receivables Account | JP Morgan Chase | 8560 | 395 North Service Rd<br>Melville, NY 11747 |
| Receivables Account | JP Morgan Chase | 0720 | |
| CAD Currency Account | HSBC | 0001 | 534 Broadhollow Road<br>Melville, NY 11747 |
| Payroll | TD Bank | 8355 | 324 South Service Rd<br>Melville, NY 11747 |
| Inactive | Bank of America | 6140 | 300 Broadhollow Road<br>Melville, NY 11747 |
| Inactive | TD Bank | 6554 | 324 South Service Rd<br>Melville, NY 11747 |
| Inactive | TD Bank | 7049 | |

**Diamond Collection**

| Account Type | Financial Institution | Last 4 Digits of Account Number. | Address of Branch |
|---|---|---|---|
| Operating Account | JP Morgan Chase | 1313 | 395 North Service Rd Melville, NY 11747 |
| Receivables Account | JP Morgan Chase | 0650 | |
| Receivables Account | HSBC | 4887 | 534 Broadhollow Road Melville, NY 11747 |
| Receivables Account | Union Bank | 2232 | 17899 Colima Road City of Industry, CA 91748 |
| Receivables Account | Bank of America | 5853 | 300 Broadhollow Road Melville, NY 11747 |
| Payroll | JP Morgan Chase | 1556 | 395 North Service Rd Melville, NY 11747 |
| Warehouse | JP Morgan Chase | 6526 | |