MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
Edward J. LoBello
Howard B. Kleinberg
Jordan D. Weiss
990 Stewart Avenue, Suite 300
Garden City, New York 11530
(516) 741-6565

TOGUT, SEGAL & SEGAL LLP
Frank Oswald
Brian Moore
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

*Proposed Counsel to the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

In re:

RUBIE'S COSTUME COMPANY, INC., *et al*.

Debtors.

------------------------------------------------------------ x

: Chapter 11
:
: Case No. 20-71970 (___)
: (Proposed for Joint Administration)

## DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(b), 507(a), 541, 1107(a), AND 1108, AUTHORIZING, BUT NOT DIRECTING, DEBTORS *INTER ALIA* TO PAY PREPETITION WAGES, COMPENSATION, AND EMPLOYEE BENEFITS

Rubie's Costume Company, Inc. ("Rubies"), Forum Novelties Inc. ("Forum"), Buyseasons Enterprises, LLC ("Buyseasons"), Masquerade, LLC ("Masquerade"), The Diamond Collection LLC ("Diamond Collection"), and Rubie's Masquerade Company LLC ("Rubie's Masquerade"), Debtors and Debtors-in-Possession (collectively, the "Debtors"), hereby submit this motion (the "Motion") for entry of an interim order (the "Interim Order"), substantially in the form attached hereto as **Exhibit A**, and a final order, pursuant to sections 105, 363(b), 507(a), 541, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"): (a) authorizing, but not directing, the Debtors to pay prepetition wages, salaries, and all costs incident to the foregoing, including, without limitation, related prepetition withholding and payroll-related taxes; (b) authorizing, but not directing, the Debtors to maintain and continue to

honor their practices, programs, and policies for the Employees and (each as defined below), and as such may be modified, amended, or supplemented from time to time in the ordinary course, including, without limitation, the continuation and maintenance of all employee benefit programs in the ordinary course; and (c) directing all banks to honor prepetition checks for payment of prepetition employee obligations.

In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Marc Beige Pursuant to Local Bankruptcy Rule 1007-4 and in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* filed with the Court concurrently herewith (the "First-Day Declaration").[1] In further support of the Motion, the Debtors, by and through their undersigned proposed counsel, respectfully represent as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 363(b), 507(a), 541, 1107(a), and 1108.

## BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under Chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First-Day Declaration.

structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the First-Day Declaration, which is deemed fully incorporated herein by reference.

4.      The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

### RELIEF REQUESTED

5.      By this Motion, the Debtors request that this Court enter the Interim Order and a final order, pursuant to Bankruptcy Code sections 105, 363(b), 507(a), 541, 1107(a) and 1108: (a) authorizing, but not directing, the Debtors to: (i) pay and/or perform, as applicable, prepetition obligations to current employees (the "Employees") including accrued prepetition wages, salaries, and other cash and non-cash compensation claims (collectively, the "Employee Wage Claims"); (ii) maintain and continue to honor their practices, programs, and policies for their Employees as they were in effect as of the Petition Date, and as such may be modified, amended, or supplemented from time to time in the ordinary course, including, without limitation, the continuation and maintenance of the Debtors' various non-working day policies, employee benefit plans, and programs (and to pay all fees and costs in connection therewith, including those that arose prepetition) (collectively, the "Employee Benefit Obligations"); (iii) reimburse Employees for prepetition expenses that the Employees have incurred on behalf of the Debtors in the ordinary course of business (the "Employee Expense Obligations"); (iv) remit funds withheld from Employee paychecks to the 401(k) Plan (as defined below) (the "401(k) Obligations"), (v) pay all related prepetition withholdings and payroll-related taxes (the "Employee-Related Taxes" and together with the Employee Wage Claims, the Employee Benefit Obligations, the 401(k) Obligations, and the Employee Expense Obligations, collectively, the "Prepetition Employee Obligations") associated with the Employee Wage

Claims and the Employee Benefit Obligations, including any third parties that provide or aid in the monitoring, processing, or administration of the Prepetition Employee Obligations; (b) authorizing and directing the Debtors' banks (the "<u>Banks</u>") to receive, process, honor, and pay all of the Debtors' prepetition checks and fund transfers on account of any of the Prepetition Employee Obligations; (c) prohibiting the Debtors' Banks from placing any holds on, or attempting to reverse, any automatic transfers to any account of an Employee, Independent Contractor, or other party for the Prepetition Employee Obligations; and (d) authorizing the Debtors to issue new postpetition checks or effect new postpetition fund transfers on account of the Prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

### THE DEBTORS'S WORKFORCE AND RELATED EMPLOYEE OBLIGATIONS

#### A. Wages and Salaries

6. The Debtors employ, collectively, approximately 804 employees as of February 24, 2020.[2] A substantial number have been placed on furlough due primarily to the COVID-19 crisis, but are expected to be recalled. Currently, the Debtors' collective active workforce is 142 employees.[3]

7. The Employees perform a variety of critical functions and their skills, knowledge, and understanding of the Debtors' structure, operations, and customer relations are essential to the effective reorganization of the Debtors' business.

---

[2] The Debtors, respectively, normally employ the following amounts of individuals: Rubie's, 491; Forum, 131; Busyseasons, 112; Diamond Collection, 20; and Masqeurade, 50. Rubie's Masquerade has no employees,

[3] The Debtors' current number of active employees are, as follows: Rubies, 81; Forum, 5; Buyseasons, 48; Diamond Collection, 5; and Masquerade, 3.

8.      For payroll purposes, the employees are grouped into one of five separate payroll groups depending on their location and whether they are paid on a salaried or hourly basis. Employees are paid on either a weekly or bi-weekly basis. ADP provides payroll services for the Debtors for which it bills the Debtors.

9.      As of the Petition Date, the Debtors had incurred payroll obligations for salaried pay and wages that were earned during the week ending April 29, 2020 for which payroll is not due until May 1, 2020 in the aggregate amount of approximately $300,000 which includes FICA.[4]

10.     In addition, as of May 1, 2020, the Debtors will have incurred an obligation to ADP in the amount of $20,862 for processing the foregoing payrolls.

11.     Accordingly, by this Motion, the Debtors seek to pay the outstanding amounts owed as of the Petition Date for accrued and unpaid wages and salaries, including amounts owed for payroll processing services and amounts that the Debtors are required by law to withhold from Employee payroll checks with respect to federal, state, and local income taxes, garnishment contributions, social security, and Medicare taxes, to the extent not already paid prepetition.

**B.      Other Compensation: Vacation, Holiday, Paid Time Off, and Business Expenses**

12.     The Debtors offer their Employees other forms of compensation, including vacation time, paid holidays, and other earned time off. They also reimburse their Employees for certain business expenses. These forms of compensation are usual, customary, and necessary if the Debtors are to retain qualified employees to operate their business.

---

[4] As of April 29, 2020, the employees of each Debtor have earned the following: Rubie's, $232,000; Forum. $11,750; Buyseasons, $48,0000; Diamond Collection, $4,200; and Masquerade, $3,600. Rubie's Masquerade has no employees.

13.     **Vacation, Holiday, and Paid Time Off**. Employees are eligible to accrue paid vacation, holidays, and paid time off after certain periods of employment. By this Motion, the Debtors seek authority to honor, in the ordinary course of business, all liabilities related to their Employees' vacation, holidays, and paid time off, including those liabilities that arose under the Debtors' vacation, holiday, and other time-off policies or practices existing prior to the Petition Date. The Debtors anticipate that their Employees will utilize any accrued vacation time or paid time off in the ordinary course of business without resulting in any material cash flow requirements beyond the Debtors' normal payroll obligations.

14.     **Expense Reimbursement**. The Debtors routinely reimburse certain Employees for expenses incurred within the scope of their employment, including expenses for travel, lodging, ground transportation, meals, supplies, and other miscellaneous business expenses (collectively, the "Reimbursable Expenses"). Certain Employees may not have been reimbursed for Reimbursable Expenses previously incurred. Accordingly, by this Motion, the Debtors seek authority to pay all prepetition Reimbursable Expenses in the ordinary course of business that are not luxury items.

C.     **Employee Benefit Plans**

15.     The Debtors provide a number of Employees and their dependents with certain employee benefit plans, including a medical plan (the "Medical Plan") through Blue Cross/Blue Shield for which an obligation in the amount of $268,929 is due and owing for April premiums.

D.     **The Employee-Related Taxes**

16.     The Debtors routinely withhold from Employee paychecks amounts that the Debtors are required to transmit to third parties, *e.g.*, the Employee-Related Taxes. Examples of such withholdings include social security, FICA, federal and state income taxes, and

garnishments. The Debtors believe that such withheld funds, to the extent that they remain in the Debtors' possession, constitute moneys held in trust and, therefore, are not property of the Debtors' bankruptcy estate. Thus, the Debtors submit that they have authority to direct such funds to the appropriate parties in the ordinary course of business. By this Motion, the Debtors request authority to pay the Employee-Related Taxes.

### E. The 401(k) Plan

17.    The Debtors offer their Employees a savings and retirement plan, administered by ADP Retirement Services through which they can accumulate savings and defer applicable tax for their future (the "401(k) Plan"). The Debtors previously made matching contributions to the 401(k) Plan; however, they were forced to discontinue this practice as part of their cost-cutting measures. The Debtors deduct amounts to be contributed to the Employees' 401(k) Plan from the Employees' paychecks. The Debtors believe that such withheld funds, to the extent that they remain in the Debtors' possession, constitute moneys held in trust and, therefore, are not property of the Debtors' bankruptcy estate. Thus, the Debtors submit that they have authority to direct such funds to the 401(k) Plan in the ordinary course of business. By this Motion, the Debtors request authority to remit these withheld funds to the 401(k) Plan in the ordinary course of business.

### F. Direction to Banks

18.    Finally, the Debtors seek an order authorizing and directing the Banks to receive, process, honor, and pay any and all checks drawn on the Debtors' payroll and general disbursement accounts related to Prepetition Employee Obligations, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

## APPLICABLE AUTHORITY

I.   **CAUSE EXISTS TO AUTHORIZE PAYMENT OF THE PREPETITION EMPLOYEE OBLIGATIONS**

    A.   **The Proposed Payments Are Accorded Priority Under Bankruptcy Code Section 507**

        19.   Bankruptcy Code sections 507(a)(4) and 507(a)(5) require that certain claims for prepetition wages, salaries, commissions, vacation, and employee benefit contributions be accorded priority in payment in an amount not to exceed $13,650 for each employee. The Debtors believe that all of the Debtors' Employees are owed amounts less than the $13,650 cap provided for in sections 507(a)(4) and 507(a)(5) (the "Priority Wage Cap"). Accordingly, granting the relief requested will not adversely affect the Debtors' other unsecured creditors and relates solely to the timing of the payment of such claims.

        20.   To the extent that Employees are owed amounts in excess of these caps for their respective Prepetition Employee Obligations, the Debtors propose payment of only the wages and/or salaries, with the balance of the Prepetition Employee Obligations to be paid at a later date following review by and consultation with any statutory creditors' committee that may be appointed in these cases.

    B.   **The Proposed Payments Are Appropriate Under Bankruptcy Code Section 363**

        21.   Under Bankruptcy Code section 363, a bankruptcy court is empowered to authorize a Chapter 11 debtor to expend funds in the bankruptcy court's discretion outside the ordinary course of business. *See* 11 U.S.C. § 363. In order to obtain approval for the use of estate assets outside the ordinary course of business, the debtors must articulate a valid business justification for the requested use. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). Payment of prepetition claims postpetition to preserve and protect debtors'

business by retaining their employees and maintaining positive employee morale is a sufficient business justification for such an authorization, even if such payment were deemed to be outside the ordinary course of business. *See id.* Accordingly, this Court should grant the requested relief under Bankruptcy Code section 363.

**C.      The Payment of the Prepetition Employee Obligations Is Appropriate Under Bankruptcy Code Sections 507 and 541**

22.     The payment of the employee contribution component of the Employee-Related Taxes and 401(k) Plan or payment of garnished wages, if any, will not prejudice the Debtors' estate because such withholdings are held in trust for the benefit of the related payees and, thus, do not constitute property of the Debtors' estate under Bankruptcy Code section 541. *See Begier v. IRS*, 496 U.S. 53, 59 (1990). Moreover, payments that are critical to the retention and morale of the Debtors' workforce actually add value to the estates because an unplanned reduction in Employee retention or productivity could have disastrous effects on recoveries to unsecured creditors.

**D.      The Debtors Should Be Authorized to Pay the Prepetition Employee Obligations Under Bankruptcy Code Sections 1107(a) and 1108**

23.     The Debtors, operating their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, is a fiduciary "holding the bankruptcy estate and operating the business for the benefit of their creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business' going-concern value." *Id.*

24.     Courts have noted that there are instances in which debtors in possession can fulfill their fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a

valid exercise of debtors' fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* at 498. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of debtors' fiduciary duty:

> First, it must be critical that the debtors deal with the claimant. Second, unless it deals with the claimant, the debtors risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtors' going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtors can deal with the claimant other than by payment of the claim.

*Id.* at 498.

25.    Payment of the Prepetition Employee Obligations meets each element of the *CoServ* court's standard. As described above, the Employees likely maintain priority claims against the Debtors for most, if not all, of their Prepetition Employee Obligations. In addition, any failure by the Debtors to pay the Prepetition Employee Obligations would negatively impact the morale of the Debtors' Employees at a critical time for the Debtors and their businesses. In short, the potential harm and economic disadvantage that would stem from the failure to pay the Prepetition Employee Obligations is grossly disproportionate to the amount of any prepetition claim that may be paid.

26.    The Debtors have examined other options short of payment of the Prepetition Employee Obligations and have determined that to avoid significant disruption of the Debtors' business operations, there exists no practical or legal alternative to payment of such obligations. Therefore, the Debtors can best satisfy their fiduciary duties as debtors in possession under Bankruptcy Code sections 1107(a) and 1108 by payment of the Prepetition Employee Obligations.

**E.**  **Payment of the Prepetition Employee Obligations Should Be Authorized Under Bankruptcy Code Section 105 and the Doctrine of Necessity**

27.     The proposed payments of the Prepetition Employee Obligations should be authorized under Bankruptcy Code section 105 and under the "doctrine of necessity." Bankruptcy Code section 105 authorizes this Court "to issue any order . . . necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105. In light of the critical need for the Debtors to preserve the going concern value of their businesses to effect a successful restructuring by, among other things, preserving their workforce and their morale, payment of the wages, benefits, and other amounts as requested herein is proper in accordance with Bankruptcy Code section 105.

28.     Payment of the Prepetition Employee Obligations is further supported by the doctrine of necessity. This doctrine "recognizes the existence of the judicial power to authorize debtors in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtors." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176 (Bankr. S.D.N.Y. 1989); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtors "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment).[5]

29.     The doctrine of necessity is a widely accepted component of modern bankruptcy jurisprudence. *See Just For Feet*, 242 B.R. at 826 (approving payment of key

---

[5]     The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and their statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The United States Supreme Court first articulated the doctrine of necessity over a century ago, in *Miltenberger v. Logansport, C & S.W. R. Co.*, 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors, and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. *See id.* at 309–14. The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in *Miltenberger*. *See In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581–82 (3d Cir. 1981) ("[I]n order to justify

inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546–47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agree to provide postpetition trade credit); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994); *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175. Moreover, courts have recognized the applicability of the doctrine of necessity with respect to the payment of prepetition employee compensation and benefits. *See e.g.*, *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–89 (S.D.N.Y. 1987) (under "necessity of payment" doctrine, it is appropriate for bankruptcy court to defer to debtors' business judgment in permitting payment of certain workers' compensation claims); *In re Ionosphere Clubs, Inc.*, 89 B.R. at 176 ("This rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor.").

30.     Accordingly, the Court should allow the payment of the Prepetition Employee Obligations as requested herein.

31.     The relief requested herein is commonly granted in other chapter 11 cases in this District and in the Southern District of New York. *See, e.g., In re Orion Healthcorp., Inc.* 18-71748 (AST) (Bankr. E.D.N.Y. March 22, 2018); *In re Federation Employment and Guidance service, Inc.*, 15-71074 (REG) (Bankr. E.D.N.Y. March 24, 2018); *In re Gramercy Group, Inc.*, 19-73622 (LAS) (Bankr. E.D.N.Y. May 24, 2019); *In re Synergy Pharmaceuticals Inc.*, Case No. 18-14010 (JLG) (Bankr. S.D.N.Y. Jan. 24, 2019); *In re Republic Airways*

---

payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious jeopardy.").

*Holdings Inc.*, Case No. 16-10429 (SHL) (Bankr. S.D.N.Y. Feb. 29, 2016); *In re Relativity Fashion, LLC*, Case No. 15-11989 (MEW) (Bankr. S.D.N.Y. July 31, 2015); *In re Great Atl. & Pac. Tea Co., Inc.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. July 21, 2015).

32.     As a precaution, the proposed order provides that the relief granted therein shall not constitute or be deemed an assumption of any of the employment and service agreements to which the Debtors are a party or any of the Debtors' employee benefit policies, plans, programs, practices, and procedures under Bankruptcy Code section 365(a).

33.     Accordingly, for all of the foregoing reasons, the Debtors submit that cause exists for granting the relief requested herein.

## II.     THE DEBTORS' BANKS SHOULD BE AUTHORIZED TO HONOR AND PAY CHECKS ISSUED AND MAKE OTHER TRANSFERS TO PAY THE EMPLOYEE OBLIGATIONS

34.     The Debtors further request that the Court authorize the applicable Banks to receive, process, honor, and pay all prepetition and postpetition checks issued or to be issued, and electronic fund transfers requested or to be requested, by the Debtors in respect of the Prepetition Employee Obligations. The Debtors also seek authority to issue new postpetition checks, or effect new electronic fund transfers, on account of the Prepetition Employee Obligations to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected.

35.     As a result of the commencement of the Debtors' chapter 11 cases, and in the absence of an order of the Court providing otherwise, the Banks may reject or dishonor the Debtors' checks, wire transfers, and direct deposit transfers with respect to the Prepetition Employee Obligations. Therefore, the Debtors request that the Court authorize the Debtors' Banks and any other bank authorized by the Court to administer the Debtors' bank accounts

under the Cash Management Motion[6] to receive, process, honor, and pay all prepetition and postpetition checks issued by the Debtors, and funds transfers requested by the Debtors, in each case, with respect to the Prepetition Employee Obligations. The Debtors also seek authority to issue new postpetition checks, or effect new funds transfers, on account of the Prepetition Employee Obligations to replace any prepetition checks or funds transfer requests that may be dishonored or rejected.

36.     The Debtors represent that each of these checks or transfers is or will be drawn on accounts that can be readily identified as relating directly to payment of the Prepetition Employee Obligations. The Debtors believe that prepetition checks and transfers, other than those for Prepetition Employee Obligations, or those authorized by another order of the court, will not be honored inadvertently.

## III.     INTERIM RELIEF SHOULD BE GRANTED

37.     Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Second Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, the court instructed that irreparable harm "'is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (quoting *N.Y. Pathological & X-Ray Labs., Inc. v. INS*, 523 F.2d 79, 81 (2d Cir.

---

[6]     Simultaneously herewith, the Debtors filed the *Debtors' Motion for Interim and Final Orders (I) Authorizing Continued Use of Existing Cash Management System, Bank Accounts, and Business Forms and (II) Authorizing Continuance of Intercompany Transactions* (the "Cash Management Motion").

1975)). Further, the "harm must be shown to be actual and imminent, not remote or speculative." *Id.* at 214; *see also Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1998).

38.     The Debtors submit that for the reasons set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm as defined by the Second Circuit.

39.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve value for their estate. The Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

40.     Notice of this Motion has been provided either by facsimile, electronic transmission, overnight delivery, or hand delivery to: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the parties included on the Debtors' list of their 30 largest unsecured creditors; (d) the U.S. Attorney for the Eastern District of New York; (e) the Employees; (f) ADP; and (g) any such other party entitled to notice pursuant to Rule 9013-1(d) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York.

## NO PRIOR REQUEST

41.     No prior request for the relief requested herein has been made to this or any other Court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter the Interim Order, substantially in the form annexed hereto as **Exhibit A**, and a final order, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: Garden City, New York
      April 30, 2020

 

RUBIE'S COSTUME COMPANY, INC., *et al.*
*Debtors and Debtors in Possession*
By their Proposed Counsel
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By:
/s/ *Edward J. LoBello*
Edward J. LoBello
Howard B. Kleinberg
Jordan D. Weiss
990 Stewart Avenue, Suite 300
Garden City, New York 11530
(516) 741-6565

- and -

TOGUT, SEGAL & SEGAL LLP,
Frank Oswald
Brian Moore
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

4379935

# **EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                               :

In re:                            :    Chapter 11
                               :
                               :    Case No. 20-71970 (___)
RUBIE'S COSTUME COMPANY, INC., *et al*.  :    (Proposed for Joint Administration)
                               :
                               :
                 Debtors.       :
                               :
------------------------------------------------------------- x

## INTERIM ORDER, PURSUANT TO BANKRUPTCY
## CODE SECTIONS 105, 363(b), 507(a), 541, 1107(a), AND 1108,
## AUTHORIZING, BUT NOT DIRECTING, DEBTOR, *INTER ALIA*, TO
## PAY PREPETITION WAGES, COMPENSATION, AND EMPLOYEE BENEFITS

          Upon the motion (the "<u>Motion</u>") of the Debtors[1] for an order, pursuant to Bankruptcy Code sections 105, 363(b), 507(a), 541, 1107(a), and 1108, authorizing, but not directing, the Debtors, *inter alia*, to pay prepetition wages, compensation and employee benefits as set forth therein; and upon the First-Day Declaration; and due and sufficient notice of the Motion and this Order having been given under the particular circumstances; and no objections to the Motion having been filed; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest; and a hearing to consider the Motion having been held on _____ __, 2020; and after due deliberation thereon and sufficient cause appearing therefor, it is hereby

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

**ORDERED, ADJUDGED, AND DECREED that**:

1.      The Motion is GRANTED to the extent set forth herein.

2.      The Debtors are authorized to pay (including to any third parties that provide or aid in the monitoring, processing, or administration of the Prepetition Employee Obligations), in their sole discretion, the Prepetition Employee Obligations, including but not limited to Employee Wage Claims, Employee Benefit Obligations, Employee Expense Obligations, and Employee-Related Taxes, as and when such obligations are due, upon entry of this order notwithstanding the limits set forth in 11 U.S.C. §§ 507(a)(4) and 507(a)(5) (the "Priority Wage Cap").

3.      The Debtors are authorized, in their sole discretion, to honor and continue their Employee Benefit Obligations that were in effect as of the Petition Date; provided, however, that such relief shall not constitute or be deemed an assumption or an authorization to assume any of such Employee Benefit Obligations, including policies, plans, programs, practices, and procedures, under Bankruptcy Code section 365(a).

4.      The Debtors' banks are authorized to receive, process, honor, and pay all pre- and post-petition checks and fund transfers on account of the Prepetition Employee Obligations that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

5.      The Debtors' banks are prohibited from placing any holds on, or attempting to reverse, any automatic transfers to any account of an Employee or other party for Employee Obligations, provided that sufficient funds are on deposit in the applicable accounts to cover such transfers.

6.      The Debtors are authorized to issue new postpetition checks or effect new postpetition fund transfers on account of the Prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

7.      The Debtors may pay any and all withholding, including social security, FICA, federal and state income taxes, garnishments, health care payments, retirement fund withholding, and other types of withholding, whether these relate to the period prior to the date of the Debtors' Chapter 11 filings or subsequent thereto. Any party receiving payment from the Debtors is authorized and directed to rely upon the representations of the Debtors as to which payments are authorized by this order.

8.      Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors pursuant to the relief) shall (a) be construed as a request for authority to assume any executory contract under 11 U.S.C. § 365; (b) waive, affect or impair any of the Debtors' rights, claims, or defenses, including, but not limited to, those arising from Bankruptcy Code section 365, other applicable law, and any agreement; (c) grant third-party beneficiary status or bestow any additional rights on any third party; or (d) be otherwise enforceable by any third party.

9.      Authorizations given to the Debtors in this Order empower but do not direct the Debtors to effectuate the payments specified herein, said Debtors retaining the business judgment to make or not make said payments, and in all instances subject to the condition that funds are available to effect any payment and in no event shall any person (Debtor, officer, director, or otherwise) be personally liable for any amounts authorized for payment herein but not paid. This Paragraph 9 does not apply to the payment of trust fund taxes.

10.    Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

11.    The final hearing on the Motion is set for_____, 2020 at \_\_:\_\_ [a.m./p.m.] (prevailing Eastern time). Any objections or responses to the entry of the proposed Final Order shall be filed and served upon counsel for the Debtors so as to be received by 4:00 p.m. (prevailing Eastern Time) seven days before the final hearing. If no objections or responses are filed and served, this Court may enter a final order without further notice or hearing.

12.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

4384493