# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

|  |  |
|---|---|
| In re: | : Chapter 11 |
|  | : |
| RCCI WIND DOWN COMPANY, INC., *et al.* | : Case No. 20-71970 thru 20-71974 (AST) |
|  | : |
| Debtors. | : (Jointly Administered) |
|  | : |

-------------------------------------------------------------x

## SECOND AMENDED JOINT PLAN OF LIQUIDATION FOR
## RCCI WIND DOWN COMPANY, INC. AND CERTAIN OF
## <u>ITS AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE</u>

| | |
|---|---|
| MEYER, SUOZZI, ENGLISH & KLEIN, P.C. | TOGUT, SEGAL & SEGAL LLP |
| Edward J. LoBello | Frank A. Oswald |
| Jordan D. Weiss | Brian F. Moore |
| 990 Stewart Avenue, Suite 300 | One Penn Plaza, Suite 3335 |
| Garden City, New York 11530 | New York, New York 10119 |
| (516) 741-6565 | (212) 594-5000 |

Attorneys for Debtors
and Debtors in Possession

Dated:   March 12, 2021
             New York, New York

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

ARTICLE I
DEFINED TERMS AND RULES OF INTERPRETATION ............................................1

ARTICLE II
ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS ........................................13

    2.1    Administrative Claims ................................................................................13

    2.2    Priority Tax Claims ....................................................................................14

    2.3    Professional Fee Claims .............................................................................14

ARTICLE III
CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .................15

    3.1    Classification in General ............................................................................15

    3.2    Summary of Classification..........................................................................15

    3.3    Treatment of Classified Claims and Interests .............................................16

    3.4    Alternative Treatment ................................................................................18

    3.5    Special Provision Regarding Unimpaired Claims ......................................18

ARTICLE IV
ACCEPTANCE OR REJECTION OF THIS PLAN..........................................................19

    4.1    Acceptance by Classes Entitled to Vote ....................................................19

    4.2    Presumed Acceptance of this Plan .............................................................19

    4.3    Presumed Rejection of this Plan .................................................................19

    4.4    Elimination of Classes ...............................................................................19

    4.5    Cramdown ..................................................................................................19

ARTICLE V
MEANS FOR IMPLEMENTATION OF THIS PLAN ....................................................20

    5.1    Limited Consolidation................................................................................20

    5.2    Reserves ....................................................................................................20

5.3      Dissolution of the Liquidating Debtors.......................................................21

5.4      Management of Debtors' Assets ................................................................21

5.5      Effectuating Documents; Further Transactions ..........................................21

5.6      Further Authorization................................................................................22

5.7      Exemption from Certain Transfer Taxes ...................................................22

5.8      Cancellation of Existing Securities and Agreements.................................22

5.9      Preservation of Retained Actions..............................................................23

5.10     Preservation of Insurance ........................................................................24

5.11     Closing of the Debtors' Cases..................................................................24

ARTICLE VI
CORPORATE GOVERNANCE; PLAN ADMINISTRATION; LITIGATION
TRUST.......................................................................................................................24

6.1      Corporate Action.....................................................................................24

6.2      Governance .............................................................................................24

6.3      Wind Down .............................................................................................25

6.4      Certificate of Incorporation and By-Laws ................................................25

6.5      Appointment of Plan Administrator..........................................................25

6.6      Preservation of Rights .............................................................................25

6.7      Books and Records...................................................................................26

6.8      Powers and Duties....................................................................................26

6.9      Compensation of Plan Administrator and Plan
         Administrator Professionals .....................................................................28

6.10     Resignation, Death or Removal of Plan Administrator ..............................28

6.11     Responsible Officer..................................................................................28

6.12     Limitation of Liability..............................................................................29

6.13     Exculpation Relating to Liquidating Debtors ...........................................30

6.14     Litigation Trustee .......................................................................................... 30

6.15     Privileges ........................................................................................................ 30

ARTICLE VII
DISTRIBUTIONS ...................................................................................................... 31

7.1     Distribution Record Date ............................................................................. 31

7.2     Distribution Agent ........................................................................................ 31

7.3     Allowed Claims and Allowed Interests ...................................................... 31

7.4     Distribution for Claims Allowed as of the Effective Date .......................... 31

7.5     Interest on Penalties and Claims ................................................................. 32

7.6     Delivery of Distributions ............................................................................. 32

7.7     Satisfaction of Claims .................................................................................. 32

7.8     Manner of Payment Under Plan ................................................................... 33

7.9     No Distribution in Excess of Amount of Allowed Claim ........................... 33

7.10     Allocation of Distributions Between Principal and Interest ....................... 33

7.11     Setoffs and Recoupments ............................................................................ 33

7.12     Minimum Distributions ............................................................................... 33

7.13     Withholding and Reporting Requirements .................................................. 33

7.14     Forms ........................................................................................................... 34

7.15     Time Bar to Cash Payments by Check ......................................................... 34

7.16     Unclaimed Distributions ............................................................................. 34

ARTICLE VIII
PROCEDURES FOR DISPUTED CLAIMS ................................................................ 35

8.1     Allowance of Claims .................................................................................... 35

8.2     Objection to Claims ..................................................................................... 35

8.3     Amendments to Claims ................................................................................ 35

8.4     Estimation of Claims ................................................................................... 36

8.5       No Distributions Pending Allowance ........................................................36

8.6       Resolution of Claims.................................................................................36

8.7       No Recourse ..............................................................................................36

**ARTICLE IX**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..........37

9.1       Rejection of Executory Contracts and Unexpired Leases...........................37

9.2       Claims Based on Rejection of Executory Contracts and Unexpired
          Leases .......................................................................................................37

9.3       Reservation of Rights................................................................................38

**ARTICLE X**
**CONDITIONS PRECEDENT TO THE CONFIRMATION AND EFFECTIVE**
**DATES** ...................................................................................................................38

10.1      Condition Precedent to Confirmation of this Plan .....................................38

10.2      Conditions Precedent to the Effective Date ...............................................38

10.3      Waiver of Conditions Precedent ................................................................39

10.4      Effect of Failure of Conditions Precedent to the Effective Date ................39

**ARTICLE XI**
**EFFECT OF PLAN CONFIRMATION**............................................................................39

11.1      Binding Effect ..........................................................................................39

11.2      Vesting of Assets ......................................................................................40

11.3      Release of Liens ........................................................................................40

11.4      Subordinated Claims .................................................................................40

11.5      Term of Injunctions or Stays.....................................................................40

11.6      Compromise and Settlement of Claims, Interests, and Controversies........40

11.7      Releases and Related Matters ....................................................................41

11.8      Injunction .................................................................................................43

11.9      Exculpation and Limitation of Liability.....................................................44

11.10    Post-Effective Date Retention of Professionals ..........................................44

ARTICLE XII
RETENTION OF JURISDICTION.................................................................................44

ARTICLE XIII
MISCELLANEOUS PROVISIONS ...............................................................................46

13.1    Payment of Statutory Fees .........................................................................46

13.2    Dissolution of the Committee ....................................................................46

13.3    Amendment or Modification of this Plan ...................................................46

13.4    Substantial Consummation ........................................................................47

13.5    Severability of Plan Provisions .................................................................47

13.6    Successors and Assigns..............................................................................47

13.7    Revocation, Withdrawal, or Non-Consummation......................................47

13.8    Governing Law ..........................................................................................48

13.9    Time ...........................................................................................................48

13.10    Immediate Binding Effect..........................................................................48

13.11    Entire Agreement .......................................................................................48

13.12    Notice .........................................................................................................48

13.13    Filing of Additional Documents ................................................................49

# INTRODUCTION

RCCI Wind Down Company, Inc. ("RCCI"), FN Wind Down Company, Inc. ("FN"), Buy SE Wind Down Company, LLC ("Buy SE"), MW Wind Down Company, LLC ("Masquerade"), and DC Wind Down Company LLC ("DC"), as debtors and debtors in possession in the above-captioned cases, propose the following joint plan of liquidation for the resolution of the outstanding Claims against and Interests in the Debtors.

# ARTICLE I

# DEFINED TERMS AND RULES OF INTERPRETATION

Defined Terms. As used herein, capitalized terms shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1     ***Available Cash*** means all Cash owned by the Debtors as of the Effective Date, including all Cash on hand and Cash received by the Debtors pursuant to the Sale but excluding the Available GUC Cash.

1.2     ***Available GUC Cash*** means $4,250,000.00 in Cash reserved by the Debtors in accordance with the Sale Order and the Committee Settlement Stipulation for the sole purpose of funding distributions to holders of Allowed General Unsecured Claims and which may not be accessed for any other purpose (i) without the prior written consent of the Committee or Plan Administrator as provided in this Plan, or (ii) as required by Court order.

1.3     ***Accrued Professional Compensation*** means, at any date, all of a Professional's billed, accrued, and unpaid fees and reimbursable expenses for services rendered in the Chapter 11 Cases through and including such date, whether or not such Professional has filed a fee application for payment of such fees and expenses, (a) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and (b) after applying any retainer that has been provided by the Debtors to such Professional and not previously applied. No amount of a Professional's fees and expenses denied under a Final Order shall constitute Accrued Professional Compensation.

1.4     ***Administrative Claim*** means a Claim for costs and expenses of administration of the Chapter 11 Cases under sections 328, 330, 363, 364(c)(1), 365, 503(b), or 507(b) of the Bankruptcy Code, including, but not limited to: (a) any actual and necessary costs and expenses, incurred on or after the Petition Date and through the Effective Date, of preserving the Estates and assisting with the resolution of the outstanding Claims against the Debtors; (b) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code; and (c) all other Claims entitled to administrative Claim status pursuant to an order of the Bankruptcy Court.

1.5     ***Administrative Claims Bar Date*** has the meaning set forth in Section 2.1(a) of this Plan.

1.6     ***Administrative Claims Reserve*** means a fund to be established by the Debtors on the Effective Date, and administered thereafter by the Liquidating Debtors or Plan Administrator, as applicable, in an amount sufficient to pay Allowed Administrative Claims, Allowed Secured Claims, Allowed Other Priority Claims, and Allowed Priority Tax Claims.

1.7     ***Affiliate*** means, with respect to any Person, "affiliate" as defined in section 101(2) of the Bankruptcy Code.

1.8     ***Allowed*** means, with respect to a Claim against any Debtor, except as otherwise provided herein, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent, nor unliquidated, and for which no Proof of Claim has been timely filed, and as to which the Debtors or other parties in interest have not filed an objection to the allowance thereof by the Claims Objection Deadline, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, filed by the applicable Bar Date or Administrative Claims Bar Date, and as to which the Debtors or other parties in interest have not filed an objection to the allowance thereof by the Claims Objection Deadline, or (b) a Claim that is Allowed under this Plan or any stipulation or settlement approved by, or Final Order of, the Bankruptcy Court; *provided*, *however*, that any Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court will not be considered "Allowed Claims" under this Plan.  Notwithstanding the foregoing, a Claim shall not be Allowed and shall not be entitled to a Distribution under this Plan to the extent it has been satisfied prior to the Effective Date or constitutes a liability assumed by the Buyer pursuant to the Purchase Agreement or Sale Order.  If a Claim is Allowed only in part, references to Allowed Claims include and are limited to the Allowed portion of such Claim.  Notwithstanding anything to the contrary herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed and for which no Proof of Claim has been timely filed and any Claim that is disallowed in accordance with section 502(d) of the Bankruptcy Code is not considered Allowed and each such Claim shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

1.9     ***Ballot*** means each of the ballot forms distributed to each Holder of a Claim that is entitled to vote to accept or reject this Plan and on which the Holder is to indicate, among other things, acceptance or rejection of this Plan.

1.10    ***Bank Group LC Exposure Claim*** means a Claim held by the Prepetition Agent and the lender parties under the Prepetition Credit Agreement in respect of LC Exposure (as such term is defined in the Prepetition Credit Agreement).

1.11    ***Bank Group Secured Claim*** means a Claim held by the Prepetition Agent and the lender parties under the Prepetition Credit Agreement.

1.12    ***Bank Group Payoff Letter*** means the letter agreement, dated as of

October 1, 2020, by and among the Prepetition Agent, the lender parties under the Prepetition Credit Agreement and the Debtors related to the payoff of certain amounts owed under the Prepetition Credit Agreement.

    1.13    ***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter amended, to the extent such amendments apply to the Chapter 11 Cases.

    1.14    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Eastern District of New York.

    1.15    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

    1.16    ***Bar Date*** means, as applicable:  (a) the General Bar Date; (b) the later of (i) the General Bar Date and (ii) the date that is thirty (30) days after entry of a Bankruptcy Court order pursuant to which Executory Contracts or Unexpired Leases are rejected for Claims arising from such rejected agreements; (c) the later of (i) the General Bar Date and (ii) the date that is thirty (30) days after the date that notice of any applicable amendment or supplement to the Schedules is served on a claimant for those Claims affected by any such amendment or supplement to the Schedules; (d) October 27, 2020 for Governmental Units; and (e) the Administrative Claims Bar Date.

    1.17    ***Beige Family / Affiliates' Waived Claims*** means any filed or Scheduled Claim or any Claim that may be asserted against the Debtors by the Beige Shareholders or any relative, affiliate, or entity controlled in whole or in part by any of them ("Waiving Parties"), whether known or unknown, foreseen or unforeseen, matured or unmatured, and including without limitation any indemnification Claims and the following Claims held against the Debtors: (i) Claim No. 165, filed by Beige Family Realty, (ii) Claim Nos. 168 and 183, filed by Melville Associates LP, (iii) Claim No. 169, filed by Paradise Lane Realty LLC, (iv) Claim No. 170, filed by Greenville Realty Group, Inc, (v) Claim No. 171, filed by 536 Broadhollow Realty, (vi) Claim No. 173, filed by Marc Beige, (vii) Claim No. 177, filed by Buckeye Associates LLC, (viii) Claim No. 178, filed by Buckeye 59th Avenue LLC, (ix) Claim No. 182, filed by Richmond Associates LP, (x) Claim No. 184, filed by Howard Beige, and (xi) Claim No. 185, filed by 808 Broadway LLC; provided, however that the Beige Family / Affiliates' Waived Claims shall not include any defenses or counterclaims (other than claims for indemnification against the Debtors or their Estates) the Waiving Parties may have relating to the Excluded D&O Claims (the "Non Waived Beige Claims").

    1.18    ***Beige Release Parties*** means the Beige Shareholders; Beige Family Realty; Melville Associates LP; Paradise Lane Realty LLC; Greenville Realty Group, Inc.; 536 Broadhollow Realty LLC; Buckeye Associates LLC; Buckeye 59th Avenue LLC; Richmond Associates LP; Markham 14th Avenue Holdings; 100 Pine Ave. Drive LLC; Loker Realty LLC; Beige New Berlin Realty, LLC; and 808 Broadway LLC.

    1.19    ***Beige Shareholders*** means Marc Beige, Howard Beige, Maxine Beige, The Michelle Beige 2015 Irrevocable Trust, The 2017 Rubin A. Beige Irrevocable Trust, HBJ

2013 Family Trust, and Maxine Beige 2017 Trust #1.

      1.20    ***Business Day*** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

      1.21    ***Buyer*** means Rubie's II, LLC.

      1.22    **Buyer Settlement Stipulation** means that certain Stipulation Resolving Matters Ordered to Mediation by and Among the Debtors, the Official Committee of Unsecured Creditors, and Rubies II, LLC approved by and attached as Exhibit 1 to the Order Approving Stipulations dated December 23, 2020 [Docket No. 570].

      1.23    ***Cash*** means legal tender of the United States of America and equivalents thereof.

      1.24    ***Cause of Action*** means any action, proceeding, agreement, Claim, cause of action, controversy, demand, debt, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, recoupment, cross-claim, counterclaim, third-party claim, indemnity claim, contribution claim, claim for sanctions against any Holder of a Disallowed Claim, or any other claim, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether pending in litigation or otherwise, in contract or in tort, in law or in equity or pursuant to any other theory of law, based in whole or in part upon any act or omission or other event occurring prior to the Effective Date, including without limitation the Excluded D&O Claims.

      1.25    ***Chapter 11 Cases*** means the jointly administered cases under chapter 11 of the Bankruptcy Code, styled *In re RCCI Wind Down Company, Inc., et. al.*, Case Nos. 20-71970 through 20-71975 (AST).

      1.26    ***Claim*** means a "claim" against the Debtors as defined in section 101(5) of the Bankruptcy Code.

      1.27    ***Claims Objection Deadline*** means for all Claims other than the Bank Group LC Exposure Claims, the later of: (a) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court; (b) 90 days after the filing of a Proof of Claim or request for payment of an Administrative Claim; and (c) such later date as ordered by the Bankruptcy Court upon motion filed by the Debtors, or the Plan Administrator, as applicable. The deadline for the Liquidating Debtors or Plan Administrator to object to Bank Group LC Exposure Claims shall be thirty (30) days after the date on which the Prepetition Agent notifies the Plan Administrator that all of the Letters of Credit (as defined in the Prepetition Loan Documents) have been replaced or terminated. The Claims Objection Deadline may be extended one or more times by the Bankruptcy Court upon the request of the Liquidating Debtors or Plan Administrator, as applicable.

      1.28    ***Class*** means a category of Claims or Interests, as described in Article III

hereof.D

   1.29  ***Committee*** means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in these Chapter 11 Cases.

   1.30  **Committee Settlement Stipulation** means that certain Stipulation By and Among the Debtors and Official Committee of Unsecured Creditors Modifying Sale Order and Resolving Matters Ordered to Mediation and Other Matters Concerning These Chapter 11 Cases approved by and attached as Exhibit 2 to the Order Approving Stipulations dated December 23, 2020 [Docket No. 570].

   1.31  ***Confirmation*** means the confirmation of this Plan by the Bankruptcy Court under section 1129 of the Bankruptcy Code.

   1.32  ***Confirmation Date*** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

   1.33  ***Confirmation Hearing*** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

   1.34  ***Confirmation Order*** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

   1.35  ***D&O Policies*** means all insurance policies and contracts for directors' and officers' liability maintained by the Debtors, including any directors' and officers' "tail policy", including but not limited to (i) that certain Management Liability Policy provided by Radnor Specialty Insurance Company, Policy No. DPS5000148B, (ii) that certain Management and Professional Liability Follow Form Excess Insurance Policy provided by Starstone Specialty Insurance Company, Policy No. U7482520OASP, and (iii) that certain Excess Liability Policy provided by Landmark American Insurance Company, Policy No. HS685687.

   1.36  ***Debtors*** means, collectively, RCCI, FN, Buy SE, MQ, and DC.

   1.37  ***Disallowed*** means all or such part of a Claim (a) that is disallowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction or (b) proof of which was required to be filed but as to which a Proof of Claim was not timely or properly filed; unless Allowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction.

   1.38  ***Disclosure Statement*** means the disclosure statement (including all exhibits and schedules thereto) relating to this Plan, as amended, modified, or supplemented from time to time.

   1.39  ***Disputed*** means, in the context of a Claim, (a) any Claim as to which the Debtors have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtors or

any other party in interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order; (b) any Claim scheduled by the Debtors as contingent, unliquidated, or disputed; (c) any Claim which amends a Claim scheduled by the Debtors as contingent, unliquidated, or disputed; or (d) any Claim prior to it having become an Allowed Claim.

1.40    ***Distribution*** means a distribution that either the Debtors, the Liquidating Debtors, or Plan Administrator, as applicable, makes to Holders of Allowed Claims or Allowed Interests.

1.41    ***Distribution Agent*** means, for purposes of making Distributions under this Plan, the Plan Administrator or his or her designee.

1.42    ***Distribution Record Date*** means the date of the Confirmation Hearing.

1.43    ***Effective Date*** means the Business Day this Plan becomes effective as provided in Article X hereof.

1.44    ***Entity*** means "entity" as defined in section 101(15) of the Bankruptcy Code.

1.45    ***Estate(s)*** means, individually, the estate of any of the Debtors and, collectively, the estates of all of the Debtors created under section 541 of the Bankruptcy Code.

1.46    ***Excluded D&O Claims*** means all claims and causes of action held by the Estates against the Debtors' directors and officers that relate to the Claims and allegations that have been or may be asserted by Disguise, Inc. ("Disguise") and/or Pokemon Company International, Inc. ("Pokemon"), including but not limited to the Claims, allegations, and alleged facts and circumstances alleged or discussed in (i) Claim No. 191 asserted by Disguise (the "Disguise POC"); (ii) Claim No. 195 asserted by Pokemon (the "Pokemon POC"); (ii) the *Ex Parte Motion of Disguise, Inc. and the Pokemon Company, International, Inc. Pursuant to Bankruptcy Rule 2004 for Examination of Debtor* [Docket No. 263]; (iv) *Debtors' Motion to Quash Subpoenas* [Docket No. 461]; (v) *Objection to Debtors' Motion to Quash Subpoenas* [Docket No. 480]; (vi) *Debtors' Reply in Further Support of Motion to Quash Subpoenas* [Docket No. 487]; (vii) *Rubie's Motion Seeking to Disallow and Expunge the Proof of Claim of the Pokemon Company International, Inc.* [Docket No. 509]; and (viii) *Rubie's Motion Seeking to Disallow and Expunge the Proof of Claim of Disguise, Inc.* [Docket No. 510].

1.47    ***Exculpated Parties*** means (a) the Debtors; (b) the Debtors' Estates; (c) the Committee and each of its members in such capacity; (d) the Plan Administrator; and (e) with respect to the foregoing in clauses (a) through (d), each of their (i) respective current and former Affiliates, predecessors, successors, assigns, subsidiaries, managed accounts, or funds; and their (ii) current and former officers, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, independent contractors, management companies, investment advisors, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants,

and representatives, each in their capacity as such.

1.48    ***Executory Contract*** means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.49    ***Exhibit*** means an exhibit annexed to either this Plan (including an exhibit annexed to any Plan Supplement filed by the Debtors) or as an appendix to the Disclosure Statement, as amended, modified, or supplemented from time to time, each of which are incorporated as part of this Plan as if set forth fully herein.

1.50    ***Final Distribution Date*** means the date on which the Liquidating Debtors make the final Distribution to Holders of Allowed Claims pursuant to the terms of this Plan.

1.51    ***Final Order*** means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request re-argument or further review or rehearing has expired and no appeal, petition for certiorari, or request for re-argument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for re-argument, further review, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal, petition for certiorari, or request for re-argument, further review, or rehearing has been or can be taken or granted.

1.52    ***General Bar Date*** means September 21, 2020, the date by which each Holder of a Claim against any of the Debtors must have filed a Proof of Claim unless such Claim falls within one of the exceptions set forth in the Bar Date Order.

1.53    **General Bar Date Order** means the Amended Order Establishing Deadline for Filing Proofs of Claim and Directing the Form and Manner of Notice [Docket No. 237].

1.54    ***General Unsecured Claim*** means any Claim against the Debtors other than an Administrative Claim, a Priority Tax Claim, a Professional Fee Claim, a Secured Claim, an Other Priority Claim, or an Intercompany Claim.

1.55    ***General Unsecured Claims Reserve*** means an account to be established and funded by the Debtors with the Available GUC Cash on the Effective Date, as may be adjusted in accordance with Section 5.2 and which may be used solely for the payment of General Unsecured Claims that are (i) Allowed Claims or (ii) Disputed Claims that subsequently become Allowed Claims.

1.56    ***Governmental Unit*** means any "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

1.57    ***Holder*** means a holder of a Claim or Interest, as applicable.

1.58    ***Impaired*** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.59    ***Initial Distribution Date*** means (a) the first Business Day that is thirty (30) days after the Effective Date or (b) such other date as mutually agreed by (i) the Debtors or Liquidating Debtors, as applicable, and (ii) the Committee or Plan Administrator, as applicable.

1.60    ***Insurance Policy*** means any issued policy of insurance and any agreements related thereto covering the Debtors, the Estates, or their members, managers, officers, employees, or fiduciaries, or that may be available to provide coverage for Claims against the Debtors or any of the foregoing, including without limitation any general liability, property, workers compensation, casualty, umbrella, or excess liability policy(ies), errors and omissions, directors and officer or similar executive, fiduciary and organization liability policy(ies) (Side A, B, or C coverage), and any tail with respect thereto, in each case to the extent not transferred to the Buyer pursuant to the Sale Order and including, without limitation, the D&O Policies with respect to the Excluded D&O Claims.

1.61    ***Intercompany Claim*** means a Claim against any Debtor by another Debtor.

1.62    ***Interest*** means any "equity security" in a Debtor as defined in section 101(16) of the Bankruptcy Code.

1.63    ***IRC*** means the Internal Revenue Code of 1986, as now in effect or hereafter amended.

1.64    ***IRS*** means the Internal Revenue Service.

1.65    ***Lien*** means "lien" as defined in section 101(37) of the Bankruptcy Code.

1.66    ***Liquidating Debtors*** means the Debtors, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

1.67    ***Litigation Trust*** means a litigation trust to be established at the option of the Committee on the Effective Date pursuant to the terms of the Litigation Trust Agreement and this Plan and which shall be vested solely with the Excluded D&O Claims.

1.68    ***Litigation Trustee*** means the Person or Entity appointed by the Committee and approved by the Court to administer the Litigation Trust in accordance with Section 6.14 of the Plan.

1.69    ***Litigation Trust Agreement*** means the trust agreement that documents and governs the powers, duties, and responsibilities of the Litigation Trustee, which will be materially consistent with and subject to the Plan and otherwise reasonably acceptable to the Debtors and the Committee in the substance and form included in the Plan Supplement.  All Litigation Trust governance issues shall be determined by the Committee.

1.70    ***Other Priority Claim*** means any Claim against any of the Debtors entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code, other than an Administrative Claim, Professional Fee Claim, Secured Claim, or a Priority Tax Claim.

1.71    ***Person*** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, or other Entity.

1.72    ***Petition Date*** means April 30, 2020, the date on which the Debtors filed their voluntary chapter 11 petitions commencing these Chapter 11 Cases.

1.73    ***Plan*** means this second amended chapter 11 plan of liquidation, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be amended, modified, or supplemented, from time to time.

1.74    ***Plan Administrator*** means the Person or Entity appointed by the Committee and approved by the Court as Plan Administrator pursuant to Article VI of the Plan.

1.75    ***Plan Administrator Agreement*** means that certain agreement establishing and delineating the retention, terms and duties of the Plan Administrator, substantially in the form to be filed as part of the Plan Supplement, which shall be in form and substance acceptable to the Debtors and Committee.

1.76    ***Plan Supplement*** means any supplement to this Plan, and the compilation of documents, forms of documents, and Exhibits to this Plan, as amended, modified, or supplemented from time to time, initial drafts of which shall be filed by the Debtors as permitted herein on or before the Plan Supplement Filing Date.

1.77    ***Plan Supplement Filing Date*** means the date not later than seven (7) days before the Voting Deadline, which date may be modified by the Debtors.

1.78    ***Prepetition Agent*** means HSBC Bank USA, National Association, as administrative agent under the Prepetition Credit Agreement.

1.79    ***Prepetition Credit Agreement*** means that certain *3-Year Credit Agreement*, dated as of July 22, 2016, between the Debtors, certain other financial institutions party thereto, and the Prepetition Agent, as amended, modified, or supplemented from time to time.

1.80    ***Prepetition Loan Documents*** shall have the meaning ascribed to the term Loan Documents under the Prepetition Credit Agreement.

1.81    ***Priority Tax Claim*** means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.82    ***Professional*** means any professional employed in these Chapter 11 Cases

pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code or otherwise.

1.83    ***Professional Fee Claim*** means a Claim by a Professional for compensation for services rendered or reimbursement of costs attributable to the Debtors, expenses, or other charges incurred prior to and including the Effective Date.

1.84    ***Professional Fee Reserve*** means a reserve to be funded with the Professional Fee Reserve Amount by the Debtors on the Effective Date from Available Cash solely for the purpose of paying all Allowed Professional Fee Claims.

1.85    ***Professional Fee Reserve Amount*** means the aggregate Accrued Professional Compensation incurred on or after the Petition Date through the Effective Date as estimated by the Professionals in accordance with Section 2.3 of this Plan.

1.86    ***Pro Rata*** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims within such Class.

1.87    ***Proof of Claim*** means a written proof of Claim filed against any Debtor in the Chapter 11 Cases.

1.88    ***Purchase Agreement*** means that certain Asset Purchase Agreement dated August 17, 2020 [Docket No. 300] by and between the Debtors and Buyer as modified by the Sale Order, the record of the sale hearing held on September 24, 2020, the Buyer Settlement Stipulation, and the Committee Settlement Stipulation.

1.89    ***Released Party*** means each of:  (a) the Debtors; (b) the Debtors' Estates; (c) the Beige Release Parties; (d) the Committee and each of its members in such capacity; (e) the Plan Administrator and (f) with respect to the foregoing Entities in clauses (a) through (e), each of their (i) respective current and former Affiliates, predecessors, successors, assigns, subsidiaries, managed accounts, or funds; and their (ii) current and former officers, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), grantors, beneficiaries, principals, members, employees, agents, independent contractors, management companies, investment advisors, fund advisors, advisory board members, financial advisors, partners, each in their capacity as such.  For the avoidance of doubt, Rubies II, LLC is not a Released Party and shall not be the subject of the Releases set forth herein.

1.90    ***Releasing Parties*** means, collectively and in each case in their capacity as such:  (a) each Released Party; (b) each Holder of a Claim or Interest who was entitled to vote on this Plan and voted to accept this Plan; (c) each Holder of a Claim or Interest who did not vote to accept this Plan but checked the box on the applicable Ballot or Notice of Non-Voting Status indicating that they opt to grant the releases provided in this Plan; (d) each Holder of a Claim or Interest to the fullest extent permitted by law; (e) with respect to each of the foregoing Entities in clauses (a) through (d), such Entities' or Persons' successors and assigns.

1.91    ***Responsible Officer*** means, Marc Beige, solely in his capacity as the responsible person of the Debtors in accordance with this Plan.

1.92     ***Responsible Officer Agreement*** means an agreement governing the employment and duties of the Responsible Officer, the form of which shall be included with the Plan Supplement.

1.93     ***Retained Actions*** means, except as otherwise provided in the Sale Order, all claims, Causes of Action, rights of action, suits, and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Debtor's Estate may hold against any Person, including without limitation the Excluded D&O Claims.

1.94     ***Sale*** means the transaction to sell substantially all of the assets of the Debtors to Rubie's II, LLC, as set forth in the Sale Order.

1.95     ***Sale Order*** means the Order, dated September 25, 2020 [Docket No. 408] of the Bankruptcy Court approving the Sale and certain related relief requested in the motion of the Debtors, dated August 4, 2020 [Docket No. 279], to sell substantially all of the Debtors' assets.

1.96     ***Schedules*** means the Debtors' schedules of assets and liabilities and statements of financial affairs, filed under section 521 of the Bankruptcy Code and the Bankruptcy Rules, as amended, supplemented, or modified.

1.97     ***Secured Claim*** means a Claim that is secured by a Lien on property in which a Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code, including any Bank Group Secured Claim.

1.98     ***Third-Party Release*** means the release given by each of the Releasing Parties to the Released Parties as set forth in Section 11.7(b) of this Plan.

1.99     ***TSA*** means that certain Transition Services Agreement dated as of September 30, 2020 by and between the Buyer and the Debtors.

1.100     ***U.S. Trustee*** means the office of the United States Trustee for the Eastern District of New York.

1.101     ***U.S. Trustee Fees*** means all fees and charges assessed against the Estates by the U.S. Trustee and due pursuant to section 1930 of title 28 of the United States Code.

1.102     ***Unexpired Lease*** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.103     ***Unimpaired*** means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.104     ***Voting Deadline*** means the date by which a Holder of a Claim entitled to

vote on this Plan must deliver a Ballot to accept or reject this Plan as set forth in the order of the Bankruptcy Court approving the instructions and procedures relating to the solicitation of votes with respect to this Plan.

1.105    ***Wind-Down Reserve*** means a fund to be established by the Debtors on the Effective Date to fund the post-Effective Date duties of the Liquidating Debtors and Plan Administrator that are set forth in Section 5.2 of this Plan and the wind-down of the Chapter 11 Cases.

Rules of Interpretation and Computation of Time. For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (e) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan; (f) the words "herein," "hereunder," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; (k) "including" means "including without limitation;" and (l) with reference to any Distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

Exhibits. All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court no later than seven (7) days prior to the Voting Deadline as part of the Plan Supplement. Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to Debtors. Upon their filing, the Exhibits may be inspected at the website of our claims and noticing agent, KCC (the "Claims Agent") at https://www.kccllc.net/rubies/. The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

Controlling Documents. In the event of an inconsistency between this Plan and the Plan Supplement, the Plan shall control. The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided,* that, if there is determined to be any inconsistency between any Plan provision

and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of this Plan and shall control and take precedence.  To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement or any other agreement entered into between the Debtors and any third party, this Plan controls the Disclosure Statement and any such agreements and the Confirmation Order controls this Plan.

## ARTICLE II

## ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims are not classified and are not entitled to vote on this Plan.

2.1     *Administrative Claims*

(a)     All requests for payment of Administrative Claims, other than:

(i)     Administrative Claims that arose on or before December 31, 2020 that are subject to either the General Bar Date or the Order (I) Establishing a Bar Date for Filing Administrative Claims Arising from the Petition Date Through and Including December 31, 2020 and (II) Approving the form and Manner of Notice Thereof [Docket No. 595] fixing February 26, 2021 as the deadline for filing such Administrative Claims;

(ii)     Administrative Claims that have been Allowed on or before the Effective Date; and

(iii)   U.S. Trustee Fees,

must be filed with the Bankruptcy Court and served on the Debtors, the Claims Agent, the Committee and the U.S. Trustee notice of such Administrative Claim so as to be received by 5:00 p.m. prevailing Eastern time on the date that is thirty (30) days after the service of notice of occurrence of the Effective Date (the "Administrative Claims Bar Date").  Such notice must include at a minimum: (i) the name of the holder of the asserted Administrative Claim; (ii) the name of the applicable Debtor that is purported to be liable for such Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) supporting documentation for the Administrative Claim.  FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND RELEASED AND THE HOLDER THEREOF SHALL BE ENJOINED FROM COMMENCING OR CONTINUING ANY ACTION, EMPLOYMENT OF PROCESS OR ACT TO COLLECT, OFFSET, OR RECOVER SUCH ADMINISTRATIVE CLAIM.

(b)     Unless the Holder of an Allowed Administrative Claim agrees to

less favorable treatment, on or as soon as reasonably practicable after the later of (a) the Effective Date, (b) the first Business Day after the date that is thirty (30) calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, or (c) the first Business Day after the date that is thirty (30) calendar days after the date on which an Allowed Administrative Claim becomes payable under any agreement relating thereto, each Holder of such Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, and release, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim. Allowed Administrative Claims shall be paid from the funds in the Administrative Claims Reserve.  For the avoidance of doubt, except as otherwise expressly provided for in the Plan, any and all Beige Family / Affiliate Waived Claims, whether arising prior to or after the Petition Date, are deemed waived and Disallowed as of entry of the Sale Order and will not be entitled to any distribution under this Plan.

2.2     *Priority Tax Claims*

The legal and equitable rights of the Holders of Priority Tax Claims, if any, are Unimpaired by this Plan.  Unless the Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive at the option of the Debtors or the Liquidating Debtors through the Plan Administrator, as applicable,  (a) Cash equal to the amount of the Allowed Priority Tax Claim on the later of the Effective Date and the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon as reasonably practicable thereafter or (b) installment payments in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.

2.3     *Professional Fee Claims*

(a)     Professionals shall submit final fee applications seeking approval of all Professional Fee Claims by the Bankruptcy Court no later than thirty (30) days after the Effective Date.  These applications remain subject to Bankruptcy Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 327, 328, 330, 331, 363, 503(b), and 1103 of the Bankruptcy Code, as applicable.

(b)     Upon approval of a Professional's final fee application by a Final Order, such Professional shall receive payment of its Allowed Professional Fee Claims out of the Professional Fee Reserve.  Within three (3) Business Days after payment of all Allowed Professional Fee Claims, the Liquidating Debtors through the Plan Administrator shall cause the remaining amounts in the Professional Fee Reserve to revert to the General Unsecured Claims Reserve.

# ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### 3.1    *Classification in General*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.  Subject to the payment of any joint and several obligations between the Debtors, each Debtor shall be responsible for satisfying the Claims and Administrative Claims against and Interests in such Debtor from such Debtor's assets.

In accordance with section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and is fair, equitable, and reasonable.

### 3.2    *Summary of Classification*

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth below.  All of the potential Classes for the Debtors are set forth herein. The Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Section 4.4 hereof.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Secured Claims | Unimpaired | No (deemed to accept) |
| 2 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | No (deemed to reject) |
| 5 | Equity Interests | Impaired | No (deemed to reject) |

3.3      *Treatment of Classified Claims and Interests*

(a)      Class 1 –Secured Claims

(i)   *Claims in Class:*  Class 1 consists of all Secured Claims.

(ii)   *Treatment:*  Except to the extent that a Holder of an Allowed Secured Claim agrees to less favorable treatment, on or as soon as reasonably practicable after the later of (A) the Effective Date if such Secured Claim is an Allowed Secured Claim on the Effective Date or (B) the date on which such Secured Claim becomes an Allowed Secured Claim, each Holder of an Allowed Secured Claim shall receive in full and final satisfaction, settlement, and release, and in exchange for, such Allowed Secured Claim and any Lien securing such Claim, at the option of the Debtors: (x) payment in full in Cash, plus post-petition interest, if applicable; or (y) the return of the applicable collateral in satisfaction of the Allowed amount of such Secured Claim. Notwithstanding anything herein to the contrary, any and all Bank Group Secured Claims (other than Bank Group LC Exposure Claims) are deemed satisfied in full by the Buyer pursuant to the Sale and waived as against the Debtors' estates. The Holders of the Bank Group Secured Claims will not be entitled to any distribution under this Plan nor have any right to any Available Cash or Available GUC Cash; *provided*, *however*, that (i) the Bank Group LC Exposure Claims shall continue in effect solely for the purpose of evidencing the rights of the Holders of such Claims to seek payment from Persons other than the Liquidating Debtors, their Estates, and the Plan Administrator, including the Buyer and/or SBLC Cash Collateral Amount (as such term is defined in the Bank Group Payoff Letter); (ii) for the avoidance of doubt, the foregoing shall not act as a bar to the making of Distributions under this Plan and the Liquidating Debtors, Plan Administrator, and Litigation Trustee, as applicable, shall not be required to establish any reserve or otherwise account for the Bank Group LC Exposure Claims in making such Distributions; (iii) neither the Holders of Bank Group LC Exposure Claims nor the Prepetition Agent may seek payment from or exercise any right, recourse, or remedy against the Liquidating Debtors or their Estates on account of the Bank Group LC Exposure Claims, including without limitation by commencing any action or suit naming any Liquidating Debtor or the Plan Administrator as a party; provided however that if a Liquidating Debtor or the Plan

Administrator is a necessary party to an action seeking enforcement of a right or remedy against a third-party, such Liquidating Debtor or the Plan Administrator may be joined to such action solely as a nominal party; (iv) the Bank Group and Prepetition Agent represent and warrant that the SBLC Cash Collateral Amount is sufficient to cover the notional amount of the Letters of Credit (as defined in the Prepetition Loan Documents) and agree they will notify the Plan Administrator immediately upon termination and/or replacement of all of the Letters of Credit (as defined in the Prepetition Loan Documents), upon which the Bank Group LC Exposure Claims shall immediately be deemed fully discharged, released, and expunged, which the Debtors' claims agent shall be authorized to reflect on the claims register without any further action or Bankruptcy Court order; and (v) nothing contained in this Plan shall modify or limit (or be deemed to modify or limit) the rights of the Holders of Bank Group LC Exposure Claims against any Person other than the Debtors and/or their Estates or against the SBLC Cash Collateral Amount.

(iii) *Voting:* Claims in Class 1 are Unimpaired, and the Holders of Allowed Secured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Secured Claims are not entitled to vote to accept or reject this Plan.

(b)     Class 2 – Other Priority Claims

(i)     *Claims in Class:* Class 2 consist of all Other Priority Claims.

(ii)     *Treatment:* Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, on or as soon as reasonably practicable after the later of (A) the Effective Date if such Other Priority Claim is an Allowed Other Priority Claim on the Effective Date or (B) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, settlement, and release, and in exchange for, such Allowed Other Priority Claim, Cash equal to the unpaid portion of such Allowed Other Priority Claim.

(iii) *Voting:* Claims in Class 2 are Unimpaired, and the Holders of Allowed Other Priority Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Other Priority Claims are not entitled to vote to accept or reject this Plan.

(c)     Class 3 – General Unsecured Claims

(i)     *Claims in Class:* Class 3 consists of all General Unsecured Claims.

(ii)     *Treatment:* Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, settlement, and release, and in exchange for such Allowed General Unsecured Claim, its Pro Rata share of Cash from the General Unsecured Claims Reserve. For the avoidance of doubt, any and all Beige Family /

Affiliate Waived Claims, whether arising prior to or after the Petition Date, are deemed waived and Disallowed as of entry of the Sale Order and will not be entitled to any distribution under this Plan.

     (iii) *Voting:*  Claims in Class 3 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

    (d)  Class 4 – Intercompany Claims

     (i) *Claims in Class:*  Class 4 consist of all Intercompany Claims.

     (ii) *Treatment:*  On the Effective Date, all Intercompany Claims shall be disallowed and eliminated in their entirety, and Holders of Intercompany Claims shall not receive or retain any property under the Plan on account of such Intercompany Claims.

*Voting:*  Claims in Class 4 are Impaired, and each Holder of an Allowed Intercompany Claim is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, the Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

    (e)  Class 5 – Equity Interests

     (i) *Claims in Class:*  Class 5 consists of all Equity Interests.

     (ii) *Treatment:*  On the Effective Date, all Equity Interests shall be eliminated and Holders of Equity Interests shall not receive or retain any property under the Plan on account of such Equity Interests.

     (iii) *Voting:*  Claims in Class 5 are Impaired, and each Holder of an Allowed Equity Interest is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, the Holders of Equity Interests are not entitled to vote to accept or reject the Plan.

   3.4  *Alternative Treatment*

   Notwithstanding any provision herein to the contrary, any Holder of an Allowed Claim may receive, instead of the Distribution or treatment to which it is entitled hereunder, any other Distribution or treatment to which it and the Debtors or the Liquidating Debtors through the Plan Administrator, as applicable, may agree in writing; *provided*, *however*, that under no circumstances may the Debtors, Liquidating Debtors or Plan Administrator agree to provide any other Distribution or treatment to any Holder of an Allowed Claim that would adversely impair the Distribution or treatment provided to any other Holder of an Allowed Claim.

   3.5  *Special Provision Regarding Unimpaired Claims*

   Except as otherwise provided in this Plan, nothing shall affect the Debtors' rights and

defenses, both legal and equitable, with respect to any Unimpaired Claims, including but not limited to all rights with respect to legal and equitable defenses to setoffs against or recoupments of Unimpaired Claims.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THIS PLAN

### 4.1 *Acceptance by Classes Entitled to Vote*

Class 3 (General Unsecured Claims) is the only Class of Claims of the Debtors that is entitled to vote to accept or reject the Plan.  Class 3 shall have accepted the Plan if (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan, not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.  If there are no votes cast in the Class that is entitled to vote on this Plan, then this Plan shall be deemed accepted by such Class.

### 4.2 *Presumed Acceptance of this Plan*

Classes 1 (Secured Claims) and 2 (Other Priority Claims) are Unimpaired.  Therefore, such Classes are deemed to have accepted the Plan by operation of law and are not entitled to vote to accept or reject the Plan.

### 4.3 *Presumed Rejection of this Plan*

Classes  4 (Intercompany Claims) and 5 (Equity Interests) will receive no Distribution under the Plan.  Therefore, such Classes are deemed to have rejected the Plan by operation of law and are not entitled to vote to accept or reject the Plan.

### 4.4 *Elimination of Classes*

To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

### 4.5 *Cramdown*

The Debtors request Confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Debtors reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THIS PLAN

5.1     *Limited Consolidation.*

The entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the limited consolidation of each of the Debtors, and their respective estates, into RCCI for voting, confirmation, and distribution purposes under the Plan. Accordingly, on and after the Effective Date, (i) all assets and all liabilities of the Debtors shall be deemed merged into RCCI, (ii) all guaranties of any Debtor of the payment, performance, or collection of obligations of another Debtor shall be eliminated and cancelled, (iii) any obligation of any Debtor and all guaranties thereof executed by one or more of the other Debtors shall be treated as a single obligation, and such guaranties shall be deemed a single Claim against the consolidated Debtors, (iv) all joint obligations of two or more Debtors and all multiple Claims against such entities on account of such joint obligations shall be treated and allowed only as a single Claim against the consolidated Debtors, (v) all Claims between or among the Debtors shall be cancelled, and (vi) each Claim filed in the Chapter 11 Case of any Debtor shall be deemed filed against the consolidated Debtors and a single obligation of the consolidated Debtors on and after the Effective Date. The limited consolidation and deemed merger shall not affect (other than for purposes related to funding distributions under the Plan) (a) the legal and organizational structure of the Debtors, (b) defenses to any Causes of Action or requirements for any third party to establish mutuality to assert a right of setoff, and (c) distributions out of any insurance policies or proceeds of such policies.

5.2     *Reserves*

(a)     On or before the Effective Date, the Debtors shall establish the following reserves, which shall be funded with the Available Cash:

(i)    The Professional Fee Reserve, which shall be funded from Available Cash with the Professional Fee Reserve Amount for the purpose of paying all Allowed Professional Fee Claims.

(ii)   The Administrative Claims Reserve funded from Available Cash, which, in accordance with Section 7.3 of this Plan, shall be used to provide Distributions to Holders of Administrative Claims, Priority Tax Claims, Secured Claims, and Other Priority Claims that are (i) Allowed Claims as of the Effective Date, or (ii) Disputed Claims that subsequently become Allowed Claims.

(iii)  The Wind-Down Reserve funded from Available Cash, which shall be used to fund the post-Effective Date duties of the Liquidating Debtors and Plan Administrator that are set forth in this Plan and the wind-down of the Chapter 11 Cases.

(b)     On or before the Effective Date, the Debtors shall establish the

General Unsecured Claims Reserve, which shall be funded with the Available GUC Cash.  The General Unsecured Claims Reserve shall be used solely to provide Distributions to Holders of Allowed General Unsecured Claims and may not be accessed for any other purpose without (i) prior to the Committee's dissolution in accordance with Section 13.2, the Committee's prior written consent, (ii) after the Committee's dissolution in accordance with Section 13.2, the Plan Administrator's prior written consent or (iii) as required by Court order at any time.  At any point after the Effective Date, to the extent that any funds remain in the Professional Fee Reserve, Administrative Claims Reserve, or the Wind-Down Reserve after payment of all Allowed Claims or costs to be paid from each applicable reserve pursuant to this Plan, such excess funds shall revert to the General Unsecured Claims Reserve and be deemed Available GUC Cash.

5.3     *Dissolution of the Liquidating Debtors*

Upon (a) completion of the Debtors' final federal, state and local tax returns by the Responsible Officer, (b) a determination (if any) pursuant to section 505(b) of the Bankruptcy Code of any unpaid tax liability of any unpaid tax liability of the Debtors or their Estates for any tax incurred during the administration of the Chapter 11 Cases as determined under applicable tax laws, (c) the Final Distribution Date and the filing by the Liquidating Debtors of a certification to that effect with the Bankruptcy Court (which may be included in the application for the entry of the final decree), and (d) entry of a final decree closing the Chapter 11 Cases, any of the Liquidating Debtors that have not yet been dissolved shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Liquidating Debtors or payments to be made in connection therewith; provided, however, that the Liquidating Debtors may, but are not be required to, take appropriate action to dissolve under applicable law.

5.4     *Management of Debtors' Assets*

After the Effective Date, all property of the Debtors shall be managed and administered by the Plan Administrator.  If the Plan Administrator in its discretion decides not to sell any non-Cash property or if such property cannot, in the Plan Administrator's judgment, be sold in a commercially reasonable manner prior to the Final Distribution Date, the Plan Administrator shall have the right to abandon or otherwise dispose of such property in its business judgment. Absent gross negligence, willful misconduct or fraud in connection therewith, no party in interest shall have a cause of action against the Plan Administrator, the Debtors or each of their respective officers, directors, employees, consultants, trustees or professionals arising from or related to the disposition or abandonment of non-Cash property in accordance with this Section.

5.5     *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Liquidating Debtors are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan, without the need for any approval, authorization, or consent except for those expressly required pursuant to this Plan.

### 5.6    *Further Authorization*

The Debtors or the Liquidating Debtors through the Plan Administrator, as applicable, shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

### 5.7    *Exemption from Certain Transfer Taxes*

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by any Debtor or Liquidating Debtor, as applicable, or any transfer from any Entity pursuant to, in contemplation of, or in connection with this Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or Liquidating Debtors, as applicable; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 5.8    *Cancellation of Existing Securities and Agreements*

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, on the Effective Date, except to the extent otherwise provided in this Plan, all notes, instruments, certificates, securities, letters of credit and other documents evidencing or creating any indebtedness or obligation of or ownership in the Debtors shall be cancelled, and the obligations in any way related thereto shall be fully satisfied, released, and discharged. On the Effective Date, except to the extent otherwise provided in this Plan, all Interests in the Debtors shall be cancelled, and the obligations in any way related thereto shall be fully satisfied, released, and discharged.

For the avoidance of doubt, the Prepetition Loan Documents shall be deemed terminated and cancelled on the Effective Date; *provided, however*, that (a) the Prepetition Loan Documents and Bank Group Payoff Letter shall continue in effect solely for the purpose of (i) allowing any Holder of Bank Group LC Exposure Claims or the Prepetition Agent on behalf of such Holders of Bank Group LC Exposure Claims to enforce any rights and remedies against any Person other than the Liquidating Debtors, their Estates, and the Plan Administrator, including the Buyer and SBLC Cash Collateral Amount, until such time as all Bank Group LC Exposure Claims are paid in full by the Buyer or otherwise released in accordance with the Bank Group Payoff Letter and the Prepetition Loan Documents and (ii) allowing the Prepetition Agent and the Issuing Bank (as such term is defined in the Prepetition Loan Documents) to enforce their respective rights, claims and interests vis-à-vis any party other than the Liquidating Debtors, their Estates and the Plan

Administrator, including the rights of the Prepetition Agent to payment of fees, expenses and indemnification obligations against any money or property distributable under the Prepetition Loan Documents, including any rights to priority of payment and/or to exercise charging liens; (b) notwithstanding the foregoing subclause (a), the Letters of Credit (as defined in the Prepetition Loan Documents) may not be extended and will terminate no later than their respective stated expiry dates; (c) neither any holder of a Bank Group LC Exposure Claim nor the Prepetition Agent shall have the right to exercise any right, remedy, or recourse against the Debtors or their Estates or seek payment from the Liquidating Debtors or Plan Administrator, all of which rights and remedies are waived, cancelled and terminated, as applicable, as against the Debtors and their Estates; and (d) nothing contained in this Plan shall modify or limit (or be deemed to modify or limit) the Buyer's obligations under that certain letter agreement dated as of October 2, 2020 by and between the Buyer and the Debtors pursuant to which Buyer agreed to indemnify the Seller Indemnitees (as defined therein and which, for the avoidance of doubt, shall include the Liquidating Debtors and Plan Administrator) for all losses arising from Buyer's failure to replace the Letters of Credit on or prior to Sale closing as required by the Purchase Agreement. After the Effective Date, the Bankruptcy Court shall retain jurisdiction to hear and decide any disputes between the Bank Group and Buyer related to the Letters of Credit or enforcement of the terms of this Section 5.8 and Section 3.3(a) of this Plan.

5.9     *Preservation of Retained Actions*

Other than Causes of Action against an Entity that were sold pursuant to the Sale Order or are waived, relinquished, exculpated, released, compromised, or settled in this Plan or by a Bankruptcy Court Final Order, the Debtors and Liquidating Debtors reserve any and all Causes of Action. On and after the Effective Date, the Plan Administrator on behalf of the Liquidating Debtors may pursue such Causes of Action in its sole discretion. No Entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, the Liquidating Debtors, or Plan Administrator will not pursue any and all available Causes of Action against them. The failure of the Debtors to specifically list any claim, right of action, suit, proceeding, or other Retained Action in this Plan, the Disclosure Statement, or otherwise, does not, and will not, be deemed to constitute a waiver or release by the Debtors or the Liquidating Debtors, as applicable, of such claim, right of action, suit, proceeding, or other Retained Action. The Debtors, the Liquidating Debtors, and the Plan Administrator, as applicable, will retain the right to pursue such claims, rights of actions, suits, proceedings, and other Retained Actions in their sole discretion and, therefore, the failure to list a claim, right of action, suit, proceeding, or other Retained Action shall not result in a limitation of the right to pursue the same on and after the Effective Date based on any preclusion doctrine, including, but not limited to, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches.

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Plan Administrator, shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion subject to the consent of the Committee prior to the Effective Date, which consent shall not be unreasonably withheld or delayed, to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of

the foregoing without the consent or approval of any third party other than the Committee or further notice to or action, order, or approval of the Bankruptcy Court.  Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of this Plan itself shall be resolved only by Confirmation of this Plan itself.

### 5.10    *Preservation of Insurance*

Nothing contained in this Plan shall diminish or impair the enforceability of any Insurance Policy that may cover Claims against the Debtors or additional insureds, including without limitation the D&O Policies with respect to the Excluded D&O Claims.

### 5.11    *Closing of the Debtors' Cases*

Upon the Effective Date, each of the Chapter 11 Cases except the RCCI Case shall be deemed closed without any further action. After the Final Distribution Date, the Liquidating Debtors through the Plan Administrator shall seek authority from the Bankruptcy Court to close the RCCI Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VI

## CORPORATE GOVERNANCE; PLAN ADMINISTRATION; LITIGATION TRUST

### 6.1    *Corporate Action*

Each of the matters provided for under this Plan involving the corporate structure of any Debtor or the Liquidating Debtors or any corporate action to be taken by or required of any Debtor or Liquidating Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by the Plan Administrator or the shareholders, members, creditors, directors, or managers of the Debtors or Liquidating Debtors. To the extent permitted by applicable law, such authorizations and approvals shall be effective notwithstanding any requirements under non-bankruptcy law.

### 6.2    *Governance*

On the Effective Date, the members of the board of directors or managers, as the case may be, of each of the Debtors and each of the Debtors' management teams shall be deemed to have resigned without the necessity of any act on the part of such parties.  Upon the Effective Date, the Plan Administrator shall succeed to all rights, powers, and authority otherwise applicable to the Debtors' managers, officers, and directors in accordance with Section 6.8; provided, however, (i) the Responsible Officer shall have the duties and obligations set forth in Section 6.11 and (ii) the Litigation Trustee, if appointed, shall have the rights, powers, and authority as provided in Section 6.14.  Nothing contained herein shall prevent the Plan Administrator from seeking to employ any other Debtor personnel on behalf of the Liquidating

Debtors. With the express consent of the Committee, a single Person or Entity may occupy more than one of the positions Plan Administrator, Responsible Officer, and Litigation Trustee and each of the foregoing may employ the same professional or professionals to assist in their respective duties. The provision of services by any Professional retained in these Chapter 11 Cases shall not disqualify such Professional from employment by any of the Plan Administrator, Responsible Officer, or Litigation Trustee and any conflict of interest with respect to such firm's prior representations in these Chapter 11 Cases shall be deemed waived upon entry of the Confirmation Order.

### 6.3    *Wind Down*

After the Effective Date, the Liquidating Debtors shall continue to wind down in accordance with this Plan.  The wind-down of each such Liquidating Debtor's assets (as determined for federal income tax purposes) shall occur after the Effective Date.

### 6.4    *Certificate of Incorporation and By-Laws*

As of the Effective Date, the certificate of incorporation and by-laws of the Debtors shall be amended to the extent necessary to carry out the provisions of this Plan.

### 6.5    *Appointment of Plan Administrator*

On the Effective Date, the Plan Administrator shall be appointed pursuant to the Plan and the Plan Administrator Agreement and shall be authorized to conduct the wind down of the Liquidating Debtors' affairs in accordance with section 1123 of the Bankruptcy Code and shall have all the powers, authority and responsibilities specified in this Plan and the Plan Administrator Agreement.  Pursuant to Bankruptcy Code section 1123(b)(3) and except as set forth in Section 6.14 with respect to any Litigation Trustee appointed pursuant to this Plan, the Plan Administrator shall be deemed the appointed representative to pursue and litigate Debtor and Estate Claims and Causes of Action, including Retained Actions, and may pursue, litigate, compromise and settle any such rights, Claims, and Causes of Action in accordance with the best interests of and for the benefit of the holders of Claims.

### 6.6    *Preservation of Rights*

Except as set forth in Section 6.14 with respect to any Litigation Trustee appointed pursuant to this Plan, the Plan Administrator retains any and all rights of, and on behalf of, the Debtors, the Estates, and Liquidating Debtors not released pursuant to the terms of this Plan, to commence and pursue any and all Causes of Action, including, without limitation, setoff, offset and recoupment rights, regardless of whether or not such rights are specifically enumerated in the Plan, Disclosure Statement, Plan Supplement, or elsewhere, and all such rights shall not be deemed modified, waived, released in any manner, nor shall confirmation of the Plan or the Confirmation Order act as res judicata or limit any of such rights of the Plan Administrator to commence and pursue any and all Causes of Action, including, without limitation, setoff, offset and recoupment rights, to the extent the Plan Administrator deems appropriate. Any and all Causes of Action, including, without limitation, setoff, offset and recoupment rights, may, but

need not, be pursued by the Debtors prior to the Effective Date and by the Plan Administrator after the Effective Date, to the extent warranted. Subject to the other terms and provisions of this Plan, the Plan Administrator shall be granted standing, authority, power and right to assert, prosecute and/or settle the Causes of Action and/or make a claim under the D&O Policies based upon its powers as a bankruptcy appointed representative of the Debtors' Estates with the same or similar abilities possessed by bankruptcy or insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, creditors committees, or similar officials or entities.

### 6.7    *Books and Records*

Books and records, including computer generated or computer maintained books and records for computer data, as well as electronically generated or maintained books and records or data, along with books and records of any Debtors maintained by or in the possession of third parties shall remain property of Debtors or Liquidating Debtors, as applicable, to be used by the Plan Administrator to wind down the Liquidating Debtors and their Estates and implement the Plan.  After the Final Distribution Date and the RCCI Case is closed, the Liquidating Debtors and Plan Administrator, as applicable, shall be authorized to destroy or abandon any books and records in its possession in accordance with Section 5.4 of the Plan.   For the avoidance of doubt, the Plan Administrator shall succeed to the rights of the Debtors pursuant to the TSA and Section 6.1 of the Purchase Agreement.  The Responsible Officer and the Buyer shall provide reasonable and timely cooperation to effectuate the provisions of the Plan as reasonably requested by the Plan Administrator, including, but not limited to, access to the Debtors' books and records and executing such documents as are necessary to carry out the terms of the Plan.

### 6.8    *Powers and Duties*

From and after the Effective Date, pursuant to the terms and provisions of this Plan, the Plan Administrator shall have the power and authority to perform the acts set forth in the Plan Administrator Agreement (subject to approval of the Bankruptcy Court where applicable) in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation any set forth herein; provided, however that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Plan Administrator to act as specifically authorized by any other provision of this Plan, the Plan Administrator Agreement, and/or any applicable law, and to act in such manner as the Plan Administrator may deem necessary or appropriate to take any act deemed appropriate by the Plan Administrator, including without limitation to discharge all obligations assumed by the Plan Administrator or provided herein and to conserve and protect the Debtors' assets or to confer on holders of Claims the benefits intended to be conferred upon them by this Plan.  The Plan Administrator shall be empowered to:

(i)    except to the extent Claims have been previously Allowed or Disallowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise, or settle any and all Claims against the Debtors and Liquidating Debtors, as applicable, including without limitation with respect to Professional Fee Claims;

(ii)   take all steps and execute all instruments and documents

necessary to make Distributions to Holders of Allowed Claims in accordance with this Plan;

(iii)  exercise its reasonable business judgment to direct and control the wind down, liquidation, sale, and/or abandoning of the remaining assets of the Liquidating Debtors under this Plan;

(iv)  prosecute all Causes of Action on behalf of the Debtors, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action;

(v)   act on behalf of the Debtors in all adversary proceedings and contested matters then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere and to settle, retain, enforce, dispute or adjust any Claim and otherwise pursue actions involving assets of the Debtors that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise, waived, relinquished or transferred in the Plan;

(vi)  establish, replenish, or release reserves as provided in this Plan;

(vii) make payments to existing professionals that continue to perform in their current capacities;

(viii)   retain professionals to assist in performing its duties under this Plan;

(ix)  maintain the books and records and accounts of the Debtors and Liquidating Debtors;

(x)   invest Cash of the Liquidating Debtors, including any Cash proceeds realized from the liquidation of any assets of the Liquidating Debtors, including any Causes of Action, and any income earned thereon;

(xi)  incur and pay reasonable and necessary expenses in connection with the performance of duties under this Plan, including the reasonable fees and expenses of professionals;

(xii) abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of the Plan Administrator's choice, any assets of the Debtors if they are of no benefit to the Estate or Debtors;

(xiii)   maintain the Insurance Policies and purchase or create and carry any other insurance policies and pay all insurance premiums and costs the Plan Administrator deems necessary or advisable;

(xiv)   pay the U.S. Trustee Fees; and

(xv) perform other duties and functions that are consistent with the implementation of this Plan.

6.9 *Compensation of Plan Administrator and Plan Administrator Professionals*

(a)    The Plan Administrator shall be compensated as set forth in the Plan Administrator Agreement.  The Plan Administrator shall fully comply with the terms, conditions, and rights set forth in this Plan, the Confirmation Order, and the Plan Administrator Agreement.  The Plan Administrator shall not be required to file a fee application to receive compensation.

(b)    The reasonable fees and expenses of the professional persons employed by the Plan Administrator (the "Plan Administrator Professional Fees") in connection with his or her duties and responsibilities shall be paid as set forth in this Plan.  The Plan Administrator Professional Fees shall be paid from the Wind-Down Reserve within ten (10) Business Days after submission of a detailed invoice therefor to the Plan Administrator.  If the Plan Administrator disputes the reasonableness of any such invoice, the Plan Administrator or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.  The undisputed portion of such reasonable fees and expenses shall be paid as provided herein.

6.10 *Resignation, Death or Removal of Plan Administrator*

The Plan Administrator may resign at any time upon application to the Bankruptcy Court. In the event of any such resignation, or the removal, death or incapacity of the Plan Administrator, the Bankruptcy Court may, upon motion of a party in interest or other request, appoint a new Plan Administrator.  No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors. Every successor Plan Administrator appointed pursuant hereto shall execute, acknowledge and file with the Bankruptcy Court, and deliver to the holders of General Unsecured Claims (at the addresses as provided in Section 7.6) an instrument in writing accepting such appointment hereunder, and thereupon such successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor.  Any successor Plan Administrator shall be bound by and comply with the terms of the Plan, the Confirmation Order, and the Plan Administrator Agreement.

6.11 *Responsible Officer*

(a)    Notwithstanding anything in this Plan to the contrary, the Responsible Officer shall be appointed on the Effective Date and be solely empowered and have the duty and obligation to (x) administer each Liquidating Debtor's tax obligations, including (i) filing tax returns and paying tax obligations; for the avoidance of doubt, the Beige Shareholders will pay the full cost of preparing and filing the Debtors' 2020 and 2021 tax returns and final tax returns, and Marc Beige will sign such tax returns on behalf of the Debtors,

(ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Liquidating Debtor or its Estate under Bankruptcy Code section 505(b) for all taxable periods of such Liquidating Debtor ending after the Petition Date through the liquidation of such Liquidating Debtor as determined under applicable tax laws, and (iii) representing the interest and account of each Liquidating Debtor or its Estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit; and (y) prepare and file any and all informational returns, reports, statements, returns, or disclosures relating to the Liquidating Debtors that are required hereunder, by any Governmental Unit or applicable law. The Responsible Officer shall consult in good faith with and provide regular reporting to the Plan Administrator in connection with the Responsible Officer's exercise of its duties.  The Plan Administrator may in its sole discretion remove or replace the Responsible Officer at any time.

(b)    The Responsible Officer shall serve without compensation other than reimbursement of any actual, necessary costs and expenses incurred in connection with its duties; *provided* that (i) the Responsible Officer will not be reimbursed for costs or expenses incurred in any capacity other than as Responsible Officer and (ii) for the avoidance of doubt, none of the Beige Shareholders may be reimbursed for costs and expenses incurred in connection with preparing and filing the Debtors' 2020 and 2021 tax returns and final tax returns, which costs shall be fully borne by the Beige Shareholders.  The terms of the Responsible Officer's employment will otherwise be governed by the Responsible Officer Agreement. The Responsible Officer shall be entitled to employ one (1) current or former Debtor employee to assist in his duties (a "Responsible Officer Employee"), who shall be entitled to reasonable compensation and reimbursement of actual, necessary costs and expenses.  The Responsible Officer may employ one or more additional Responsible Officer Employees solely upon the express written consent of the Plan Administrator. Any Responsible Officer Employee shall continue to be compensated by the Buyer in accordance with and subject to the TSA, if applicable. Compensation and reasonable expenses of any professional retained by the Responsible Officer and any Responsible Officer Employee shall be paid by the Plan Administrator from the Wind-Down Reserve within ten (10) Business Days after submission of a detailed invoice therefor to the Plan Administrator.  If the Plan Administrator disputes the reasonableness of any such invoice, the Plan Administrator or the party submitting such invoice may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.  The undisputed portion of such reasonable fees and expenses shall be paid as provided herein.  For the avoidance of doubt, a Responsible Officer Employee may only receive compensation pursuant to this Section for amounts exceeding the Buyer's obligation under the TSA.

6.12    *Limitation of Liability*

The Liquidating Debtors shall indemnify the Plan Administrator and Responsible Officer and his or her professionals against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits or claims that the Plan Administrator or Responsible Officer or his or her respective professionals may incur or sustain by reason of being or having been a Plan Administrator or Responsible Officer or professionals of the Plan Administrator or Responsible Officer for performing any functions incidental to such service; provided, however, the foregoing shall not relieve the Plan Administrator or Responsible Officer or their

professionals from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud or self-dealing, or, in the case of an attorney professional and as required under Rule 1.8(h)(1) of the New York State Rules of Professional Conduct, malpractice.

### 6.13    *Exculpation Relating to Liquidating Debtors*

On and after the Effective Date, the Plan Administrator, the Responsible Officer, the Debtors and Liquidating Debtors shall not have any liability to holders of Claims or Interests other than as provided for in the Plan. The Plan will be administered and actions will be taken in the name of the Liquidating Debtors through the Plan Administrator or Responsible Officer, as applicable. The Plan Administrator and Responsible Officer shall comply with all applicable provisions of the Plan. On the Effective Date, the Plan Administrator shall assume all of its other obligations, powers and authority under the Plan. No holder of a Claim or Interest or any other party in interest will have, or otherwise pursue, any claim or cause of action against the Plan Administrator, Responsible Officer, the Debtors, Liquidating Debtors or the employees or professionals thereof (solely in the performance of their duties), for making payments and Distributions in accordance with this Plan or for fulfilling any functions incidental to implementing the provisions of this Plan, except for any acts or omissions to act that are the result of bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud or self-dealing, or, in the case of an attorney professional and as required under Rule 1.8(h)(1) of the New York State Rules of Professional Conduct, malpractice.

### 6.14    *Litigation Trustee*

The Committee shall have the right in its sole discretion, but not the obligation, to appoint the Litigation Trustee at any time prior to the Plan Supplement Filing Date. If so appointed, the Litigation Trust will be established on the Effective Date and governed by the terms of the Litigation Trust Agreement, and the Excluded D&O Claims shall be deemed transferred to the Litigation Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests without any further action of any of the Debtors, Liquidating Debtors, Plan Administrator, or any employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors or the Liquidating Debtors. The Litigation Trustee's duties, powers, responsibilities, and compensation will be established by the Litigation Trust Agreement. Pursuant to Bankruptcy Code section 1123(b)(3) Litigation Trustee shall be deemed the appointed representative to pursue and litigate the Excluded D&O Claims and the Litigation Trustee shall be granted standing, authority, power and right to assert, prosecute and/or settle the Excluded D&O Claims and/or make a claim under the D&O Policies based upon its powers as a bankruptcy appointed representative of the Debtors' Estates with the same or similar abilities possessed by bankruptcy or insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, creditors committees, or similar officials or entities.

### 6.15    *Privileges*

On the Effective Date and subject to the terms of this Plan, all of the Debtors' privileges, including, but not limited to, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections relating to the Causes

of Action shall vest in the Liquidating Debtors, Plan Administrator, Responsible Officer, and Litigation Trust, as applicable, without waiver, limitation or release on the Effective Date.

## ARTICLE VII

## DISTRIBUTIONS

### 7.1    *Distribution Record Date*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents, shall be deemed closed, and there shall be no further changes in the record of Holders of any of the Claims or Interests.  The Debtors and the Liquidating Debtors shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

### 7.2    *Distribution Agent*

Except as otherwise provided herein, all distributions under the Plan shall be made by the Distribution Agent.  The Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that the Distribution Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtors.  Furthermore, any such entity required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

### 7.3    *Allowed Claims and Allowed Interests*

Notwithstanding any provision herein to the contrary, the Distribution Agent shall make Distributions only to Holders of Allowed Claims.  A Holder of a Disputed Claim shall receive a Distribution on account thereof only when and to the extent that such Holder's Disputed Claim becomes an Allowed Claim.

### 7.4    *Distribution for Claims Allowed as of the Effective Date*

Except as otherwise provided under this Plan or as ordered by the Bankruptcy Court, the Distributions to be made on account of Claims that are Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims, Allowed Other Priority Claims shall be made on the Effective Date or as soon thereafter as is reasonably practicable thereafter.  The Debtors or the Plan Administrator, as applicable, shall reserve in the Administrative Claims Reserve an amount sufficient to pay Holders of Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Secured Claims, and Disputed Other Priority Claims the amount such Holders would be entitled to receive under this Plan if such Claims were to become Allowed Claims. After the resolution of all such Disputed Claims, the Liquidating Debtors shall treat any amounts that were reserved for such Disputed Claims that do not become Allowed Claims as Cash of the General Unsecured Claims Reserve.

Distributions on account of Allowed General Unsecured Claims shall be made on or before the Initial Distribution Date. The Debtors or the Plan Administrator, as applicable, shall reserve in the General Unsecured Claims Reserve an amount sufficient to pay Holders of Disputed General Unsecured Claims to the extent such Disputed General Unsecured Claim becomes an Allowed Claim. The amount set aside for such Disputed General Unsecured Claim shall be the amount that would be distributed on account of such Claim if it were Allowed in the lower of (i) the amount set forth in the Proof of Claim filed by the Holder of such Claim and (ii) the estimated amount of such Claim as determined by the Court or the Plan Administrator pursuant to Section 8.4.

### 7.5    *Interest on Penalties and Claims*

Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest and penalties shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim is satisfied in accordance with the terms of this Plan.

### 7.6    *Delivery of Distributions*

Subject to Bankruptcy Rule 9010, and except as set forth in this Section of the Plan, all Distributions under the Plan to Holders of Allowed Claims shall be made to the Holder of each Allowed Claim at the address of such Holder as listed on the Schedules as of the Distribution Record Date, unless the Debtors, Liquidating Debtors or Plan Administrator, as applicable, have been notified in writing of a change of address, including, without limitation, by the timely filing of a proof of claim by such holder that provides an address for such Holder different from the address reflected on the Schedules. In the event that any Distribution to any Holder is returned as undeliverable, the Disbursing Agent shall have no obligation to determine the correct current address of such Holder and no Distribution to such Holder shall be made unless and until the Liquidating Debtors or Plan Administrator is notified in writing of the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; *provided*, *however*, such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of sixty (60) days from the date the such Distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Debtors automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with Section 7.15 of this Plan, and the Claim of any such Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

### 7.7    *Satisfaction of Claims*

Unless otherwise provided herein, any Distribution to be made on account of Allowed Claims under this Plan shall be in complete and final satisfaction, settlement, and exchange for such Allowed Claims.

7.8        *Manner of Payment Under Plan*

At the option of the Distribution Agent, any Cash payment to be made hereunder may be made by a check or wire transfer.

7.9        *No Distribution in Excess of Amount of Allowed Claim*

Notwithstanding anything to the contrary in this Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Distributions in excess of the Allowed amount of such Claim.

7.10        *Allocation of Distributions Between Principal and Interest*

Except as otherwise provided in this Plan and subject to Section 7.4 of this Plan, to the extent that any Allowed Claim entitled to a Distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated first to the principal amount (as determined for federal income tax purposes) of the Claim and then to accrued but unpaid interest.

7.11        *Setoffs and Recoupments*

The Debtors, Liquidating Debtors or the Plan Administrator may, but shall not be required to, set off against any Claims of any nature whatsoever that the Debtors may have against the Holder of a Claim; *provided* that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any Claim the Debtors may have against the Holder of such Claim.

7.12        *Minimum Distributions*

No payment of Cash of less than one hundred dollars ($100) shall be made by the Debtors, Liquidating Debtors, or Plan Administrator to any Holder of an Allowed Claim unless a request therefor is made in writing to the Debtors or Plan Administrator, as applicable.  If no request is made as provided in the preceding sentence within sixty (60) days of the later of:  (a) the Effective Date and (b) the first Distribution Date such Claim is Allowed, all such distributions shall be distributed to other holders of Allowed Claims in accordance with the Plan or as otherwise ordered by the Bankruptcy Court.

7.13        *Withholding and Reporting Requirements*

(a)        In connection with this Plan and all instruments issued in connection therewith and distributed thereon, the Debtors and the Liquidating Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.  In the case of a non-Cash Distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and sell such withheld property to generate the Cash necessary to pay over the withholding tax.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to

and received by the applicable recipient for all purposes of this Plan. Under the backup withholding rules of the Internal Revenue Service, a Holder may be subject to backup withholding with respect to Distributions or payments made pursuant to the Plan, unless the Holder (a) comes within certain exempt categories (which includes corporations) and, when required, demonstrates this fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding.

(b)     Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a Distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution.  The Liquidating Debtors have the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to any issuing or disbursing party for payment of any such tax obligations.

### 7.14    *Forms*

Any party entitled to receive any property as an issuance or Distribution under this Plan shall, upon request, deliver to the Liquidating Debtors or such other Person designated by the Liquidating Debtors (which Entity shall subsequently deliver to the Liquidating Debtors any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt under the tax code and so notifies the Liquidating Debtors.  If such request is made by Liquidating Debtors or such other Person designated by the Liquidating Debtors and the Holder fails to comply before the date that is 60 days after the request is made, the amount of such Distribution shall irrevocably revert to the General Unsecured Claims Reserve and be deemed unclaimed property under section 347(b) of the Bankruptcy Code and any Holder of such Claim in respect of such Distribution shall be forever barred from asserting such Claim against any Debtor and its respective property.

### 7.15    *Time Bar to Cash Payments by Check*

Checks issued by the Debtors, Liquidating Debtors, or Plan Administrator on account of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Section may be made directly to the Debtors or Plan Administrator by the holder of the Allowed Claim to whom the check was originally issued.  Any Claim in respect of such voided check must be made in writing on or be-fore the later of (a) the Effective Date and (b) sixty (60) days after the date on which the Distribution was made.  After that date, all Claims in respect of void checks shall be released and forever barred and the proceeds of those checks shall be deemed unclaimed property in accordance with section 347(b) of the Bankruptcy Code and be distributed as provided in Section 8.12 herein.

### 7.16    *Unclaimed Distributions*

All Distributions to holders of Allowed Claims under the Plan that are unclaimed for a

period of sixty (60) days after distribution thereof shall be deemed unclaimed property under Bankruptcy Code section 347(b), and any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred.  All such unclaimed property shall revest in the Debtors or Liquidating Debtors, deposited in the General Unsecured Claims Reserve and, subject to Section 7.12, be distributed to other holders of Allowed Claims in accordance with the Plan or as otherwise ordered by the Bankruptcy Court.

## ARTICLE VIII

## PROCEDURES FOR DISPUTED CLAIMS

### 8.1     *Allowance of Claims*

After the Effective Date, the Liquidating Debtors shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim deemed Allowed under this Plan.  Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in these Chapter 11 Cases allowing such Claim, *provided, that,* after the Effective Date, the Plan Administrator shall have the right to settle, compromise, or stipulate to the allowance of a Claim without any need for approval by the Bankruptcy Court.

### 8.2     *Objection to Claims*

As of the Effective Date, objections to, and requests for estimation of Claims against the Debtors may be interposed and prosecuted only by the Plan Administrator on behalf of the Liquidating Debtors (except with respect to Professional Fee Claims subject to objection by any party in interest).  Such objections and requests for estimation shall be served and filed by the Claims Objection Deadline. Any Claims filed after the applicable Bar Date shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Liquidating Debtors or the Plan Administrator unless the Person or entity wishing to file such Claim has received prior Bankruptcy Court authority to file such Claim after the applicable Bar Date.

### 8.3     *Amendments to Claims*

After the Confirmation Date, a Proof of Claim may not be amended without the authorization of the Bankruptcy Court.  Any Claim amended after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Liquidating Debtors or Plan Administrator, unless the Holder of the Claim has obtained prior Bankruptcy Court authorization to file the amendment.

### 8.4    *Estimation of Claims*

For purposes of calculating and making Distributions and establishing reserves under the Plan, the Plan Administrator shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class.  The Liquidating Debtors through the Plan Administrator may also at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Debtors through the Plan Administrator may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 8.5    *No Distributions Pending Allowance*

If an objection to a Claim is filed as set forth in Section 8.2 hereof, no payment or Distribution provided under this Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### 8.6    *Resolution of Claims*

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Debtors, through the Plan Administrator shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith.  The Liquidating Debtors through the Plan Administrator or their respective successors may pursue such retained Claims, rights, Causes of Action, suits, or proceedings, as appropriate, subject to the Committee's consent prior to the Effective Date, which consent shall not be unreasonably withheld or delayed.

### 8.7    *No Recourse*

Notwithstanding that the Allowed amount of any particular Disputed Claim is

36

reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by this Plan there is insufficient value to provide a recovery equal to that received by other Holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Distribution Agent, the Debtors, Liquidating Debtors, the Plan Administrator, any Released Party or any of their respective professionals, consultants, officers, directors, employees or members or their successors or as-signs, or any of their respective property. **THE ESTIMATION OF CLAIMS AND THE ES-TABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.**

## ARTICLE IX

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1     *Rejection of Executory Contracts and Unexpired Leases.*

Except as otherwise provided in this Plan, on the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) has previously been assumed by order of the Bankruptcy Court in effect as of the Effective Date (which order may be the Sale Order or the Confirmation Order); (b) is the subject of a motion to assume filed on or before the Effective Date; or (c) has expired or terminated pursuant to its own terms.

9.2     *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to this Plan or otherwise, must be filed with Bankruptcy Court and served on the Debtors or the Liquidating Debtors, as applicable, no later than thirty (30) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease.  In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtors or the Liquidating Debtors, as applicable, no later than fourteen (14) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Liquidating Debtors, the Estates, or the property of any of the foregoing without the need for any objection by the Debtors or the Liquidating Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All

Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

      9.3     *Reservation of Rights.*

Nothing contained in this Plan shall constitute an admission by the Debtors that any particular contract is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Liquidating Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter and to provide appropriate treatment of such contract or lease.

## ARTICLE X

## CONDITIONS PRECEDENT TO THE CONFIRMATION AND EFFECTIVE DATES

      10.1     *Condition Precedent to Confirmation of this Plan*

As a condition precedent to the occurrence of the Confirmation Date, the Bankruptcy Court shall have entered an order approving the Disclosure Statement with respect to this Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

      10.2     *Conditions Precedent to the Effective Date*

The Debtors shall request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry.  The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with the terms hereof:

      (a)     the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Debtors and Committee, and the Confirmation Order shall have become a Final Order;

      (b)     all Claims against the Debtors' estates shall have been fully reconciled and each objection to or settlement of any such Claims has been sustained or approved by a Final Order;

      (c)     the Professional Fee Reserve shall have been funded in Cash in an amount acceptable to the Debtors and all amounts authorized as of the Effective Date to be paid to Professionals pursuant to orders of the Bankruptcy Court shall have been paid;

      (d)     the Administrative Claims Reserve, the Wind-Down Reserve, and the General Unsecured Claims Reserve shall have been established and funded in accordance with Section 5.2;

(e)     all actions, documents, and agreements necessary to implement and consummate this Plan and the transactions and other matters contemplated thereby shall have been effected or executed;

(f)     all documents and agreements necessary to implement this Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements;

(g)     all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by this Plan, if any, shall have been obtained, if any, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

10.3     *Waiver of Conditions Precedent*

Each of the conditions precedent in Section 10.2 may be waived by the Debtors with the express written consent of  the Committee without further order of the Bankruptcy Court.

10.4     *Effect of Failure of Conditions Precedent to the Effective Date*

If the Effective Date does not occur by March 31, 2021 (which date may be extended with the express written consent of the Committee) or if the Confirmation Order is vacated, (a) no Distributions under this Plan shall be made, (b) the Debtors and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, (c) all the Debtors' obligations with respect to the Claims and the Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceedings involving the Debtors or otherwise, and (d) the Debtors' exclusive period to file a chapter 11 plan pursuant to Section 1121 of the Bankruptcy Code shall be terminated as to the Committee, and the Debtors and Committee shall share exclusivity pursuant to Section 1121.

## ARTICLE XI

## EFFECT OF PLAN CONFIRMATION

11.1     *Binding Effect*

Following the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtors, their Estates, all present and former Holders of Claims and Interests whether or not such Holders voted in favor of this Plan, and their respective successors and assigns. Confirmation of this Plan does not provide the Debtors with a discharge under section 1141 of

the Bankruptcy Code because this Plan is a liquidating chapter 11 plan.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under this Plan and whether or not such Holder has accepted this Plan.

11.2     *Vesting of Assets*

On the Effective Date, pursuant to section 1141(b) of the Bankruptcy Code, all property of the Debtors' Estates shall vest in the Liquidating Debtors, except as provided pursuant to this Plan and the Confirmation Order.

11.3     *Release of Liens*

Except as otherwise provided in this Plan or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Debtors.

11.4     *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective Distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Liquidating Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

11.5     *Term of Injunctions or Stays.*

Unless otherwise provided, all injunctions or stays arising under or entered during these Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Cases.

11.6     *Compromise and Settlement of Claims, Interests, and Controversies.*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such

Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of this Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against or Interests in the Debtors and Causes of Action against other Persons.

      11.7    *Releases and Related Matters*

      **(a)    *Releases by the Debtors*.  Pursuant to section 1123(b) of the Bankruptcy Code, and without limiting any other applicable provisions of, or releases contained in, this Plan, as of the Effective Date, the Debtors, their Estates, and any other person seeking to exercise the rights of the Estates, to the extent permitted by applicable law, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, and waived any and all liabilities, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that such Person or Entity has, had, or may have against any Released Party, in each case, relating to a Debtor, the Estates, these Chapter 11 Cases, any prepetition financing arrangements, the Debtors' financial statements, the debtor-in-possession financing, the sale of any and all assets of the Debtors, the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation, or consummation of this Plan, the Exhibits, the Disclosure Statement, any amendments thereof or supplements thereto, the Plan Supplement, or any other transactions in connection with these Chapter 11 Cases or any contract, instrument, release, or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under this Plan or the obligations assumed hereunder (including any claims based on theories of alleged negligence, misrepresentation, non-disclosure or breach of fiduciary duty); *provided*, *however*, that notwithstanding anything contained in the Plan to the contrary, nothing in this Section shall be deemed to release the Excluded D&O Claims, any obligation of the Beige Shareholders under the Sale Order, or the liability of any Released Party that would otherwise result from any act or omission of such Released Party to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct (including fraud).**

      **Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtors' release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the release is:  (1) essential to the Confirmation of this Plan; (2) an exercise of the Debtors' business judgment; (3) in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (4) a good-faith settlement and compromise of the Claims released by the release; (5) in the best interests of the Debtors and all Holders of Claims and Interests; (6) fair, equitable, and reasonable; (7) a bar to any of the Releasing Parties**

asserting any Claim or Cause of Action released pursuant to the releases by the Debtors.

(b)    ***Releases by the Releasing Parties.***  **To the greatest extent permissible and without limiting any other applicable provisions of, or releases contained in, this Plan, as of the Effective Date, in consideration for the obligations of the Debtors under this Plan, and the consideration and other waivers, contracts, instruments, releases, agreements, or documents to be entered into or delivered in connection with this Plan, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, and waived any and all liabilities, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Releasing Party has, had, or may have against any Released Party, (including, without limitation, claims arising under applicable non-bankruptcy law, and any and all alter-ego, contribution and indemnification theories of recovery, and any interests, costs, penalties, legal and other professional fees and expenses, and incidental, consequential and punitive damage claims, in each case, relating to a Debtor, the Estates, these Chapter 11 Cases, the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation, or consummation of this Plan, the Exhibits, the Disclosure Statement, any amendments thereof or supplements thereto, the Plan Supplement, or any other transactions in connection with these Chapter 11 Cases or any contract, instrument, release, or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under this Plan or the obligations assumed hereunder;** *provided*, *however*, **that nothing in this Section shall be deemed to release (a) the Excluded D&O Claims; (b) any obligation of the Beige Shareholders under the Sale Order; (c) subject to Sections 3.3(a) and 5.8 of this Plan, any Released Party from any obligations not otherwise paid or satisfied under the Bank Group Payoff Letter,** *provided further* **that any recourse with respect to Bank Group LC Exposure Claims shall be limited and restricted as provided in Sections 3.3(a) and 5.8 of this Plan,** *provided further***, that nothing in this Section shall be deemed to release the rights of the Holders of Bank Group LC Exposure Claims against any Person other than the Debtors and/or their Estates or against the SBLC Cash Collateral Amount; or (d) the liability of any Released Party that would otherwise result from any act or omission of such Released Party to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct (including fraud);** *provided further*, *however*, **that notwithstanding the foregoing or anything to the contrary in this Plan, HSBC Bank (USA), National Association ("HSBC Bank") shall not be deemed to have released or waived any obligations or liabilities of any Beige Release Party owing or hereafter owed to HSBC Bank arising out of or in connection with or related to any loans or other financial accommodations provided by HSBC Bank to each of 536 Broadhollow Realty LLC, Beige New Berlin Realty, LLC, Buckeye Associates LLC, 59 Spence Street, LLC and Melville Associates LP, or any affiliate thereof.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) essential to the Confirmation of this Plan; (2) given in exchange for the good and valuable consideration and substantial**

contributions provided by the Released Parties; (3) a good-faith settlement and compromise of the Claims released by the Third-Party Release; (4) in the best interests of the Debtors and their Estates; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

(c)     *Waiver of Statutory Limitation on Releases*.  Without limiting any other applicable provisions of, or releases contained in, this Plan, each Releasing Party in each of the releases contained in this Plan (including under this Section) expressly acknowledges that although ordinarily a general release may not extend to Claims which the Releasing Party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, it has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims.  Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the Released Party.  The releases contained in this Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

11.8    *Injunction*

Except as otherwise provided in this Plan or the Confirmation Order, from and after the Effective Date, to the extent a party's Claim has been released or otherwise treated pursuant to this Plan or the Confirmation Order, such Releasing Party shall be permanently enjoined from pursuing such Claim against the applicable Released Party for any reason at any time on or after the Effective Date, including (i) commencing or continuing in any manner any action or other proceeding of any kind, including on account of any Claims, Interests, Causes of Action, or liabilities that have been Released; (ii) enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien, Claim, or encumbrance of any kind; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors, the Plan Administrator, or the Released Parties; and (v) commencing or continuing any act, in any manner, or in any place to assert any Claim, or send any notice or invoice in respect of any Claim that has been released under this Plan or that does not otherwise comply with or is inconsistent with the provisions of this Plan, or from making or threatening to make or assert any claim in any liquidation of any Debtor under any applicable law; *provided, however*, that nothing contained in this Plan shall (A) preclude an Entity from obtaining benefits directly and expressly provided to such Entity pursuant to the terms of this Plan or (B) be construed to prevent any Entity from defending against Claims objections or collection action, whether by asserting a right of setoff, recoupment, or otherwise, to the extent permitted by law.

11.9     ***Exculpation and Limitation of Liability***

**From and after the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity, and no Holder of a Claim or Interest, no other party in interest, and none of their respective current and former officers, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, independent contractors, management companies, investment advisors, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such, shall have any right of action against any Exculpated Party for any act taken or omitted to be taken before the Effective Date based on these Chapter 11 Cases, the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation, or consummation of this Plan, the Disclosure Statement, any amendments thereof or supplements thereto, the Plan Supplement, or any other transactions in connection with these Chapter 11 Cases or any contract, instrument, release, or other agreement or document created or entered into or any other act taken or omitted to be taken in connection therewith or in connection with any other obligations arising under this Plan or the obligations assumed hereunder; *provided*, *however*, that the foregoing provisions shall have no effect on:  (a) the liability of any Person or Entity that would otherwise result from the failure to perform or pay any obligation or liability under this Plan or any contract, instrument, release, or other agreement or document (i) previously assumed, (ii) entered into during these Chapter 11 Cases, or (iii) to be entered into or delivered in connection with this Plan; or (b) the liability of any Exculpated Party from any obligation or liability under this Plan.**

11.10     ***Post-Effective Date Retention of Professionals***

**Upon the Effective Date, any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate and the Plan Administrator will employ and pay professionals in the ordinary course of business.**

## ARTICLE XII

## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction (unless otherwise indicated) over all matters arising in, arising out of, and/or related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(b)      decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

(c)      enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

(d)      resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to this Plan, or any Entity's rights arising from or obligations incurred in connection with this Plan or such documents;

(e)      modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(f)      hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331, 503(b), and 1129(a)(4) of the Bankruptcy Code; *provided*, *however*, that from and after the Effective Date the payment of fees and expenses by the Liquidating Debtors, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(g)      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

(h)      adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

(i)      resolve any cases, controversies, suits, or disputes that may arise in connection with Claims and Claims Appeals, including without limitation, the Bar Date, related notice, Claim objections, allowance, disallowance, estimation, and Distribution;

(j)      hear and determine Retained Actions by or on behalf of the Debtors or the Liquidating Debtors;

(k)      enter and implement such orders as are necessary or appropriate if

the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or Distributions pursuant to this Plan are enjoined or stayed;

(l)    determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

(m)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with these Chapter 11 Cases;

(n)    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and

(o)    enter an order closing these Chapter 11 Cases.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

### 13.1    *Payment of Statutory Fees*

All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtors or the Liquidating Debtors, as applicable, on the earlier of when due or the Effective Date.

### 13.2    *Dissolution of the Committee*

On the first (1st) Business Day following the Effective Date, the Committee shall be dissolved and the Committee, its members, and professionals retained by the Committee in accordance with Bankruptcy Code section 1103 shall be deemed released from their respective fiduciary obligations, duties, and responsibilities arising from or related to the Chapter 11 Cases, except with respect to: (i) prosecuting applications for professionals' compensation and reimbursement of expenses incurred as a member of the Committee; (ii) asserting, disputing, and participating in the resolution of Professional Fee Claims; (iii) prosecuting or participating in any appeal of the Confirmation Order or any request for reconsideration thereof; and (iv) contesting or consenting to the use of funds in the General Unsecured Claims Reserve for any purpose other than funding distributions to Allowed General Unsecured Claims, in either case prior to entry of a Final Order or Final Orders approving all Professional final fee applications in accordance with Section 2.3.  Upon the conclusion of (i) through (iv) above, the Committee shall be immediately dissolved and released.

### 13.3    *Amendment or Modification of this Plan*

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtors, subject to the express written consent of the Committee, reserve the right to alter, amend, or modify this Plan at any time prior

to or after the Confirmation Date but prior to the substantial consummation of this Plan.  A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

13.4    *Substantial Consummation*

On the Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

13.5    *Severability of Plan Provisions*

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.6    *Successors and Assigns*

This Plan shall be binding upon and inure to the benefit of the Debtors and their respective successors and assigns, including the Liquidating Debtors and Plan Administrator. The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

13.7    *Revocation, Withdrawal, or Non-Consummation*

The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Effective Date and to file other plans of liquidation in each case subject to the Committee's written consent.  If the Debtors revoke or withdraw this Plan, or if Confirmation or consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (c) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors or

any other Person.

### 13.8    *Governing Law*

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of law thereof.

### 13.9    *Time*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 13.10    *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Liquidating Debtors, the Plan Administrator, the Holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns.

### 13.11    *Entire Agreement*

On the Effective Date, this Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

### 13.12    *Notice*

Any notice required or permitted to be provided under this Plan, unless otherwise provided herein, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery service, postage prepaid, and addressed as follows:

> If to the Debtors:
> RCCI WIND DOWN COMPANY, INC.
> 601 Cantiague Rock Road
> Westbury, NY 11590
> Attention:
> (718) 441-0834
>
> – and –

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.    TOGUT, SEGAL & SEGAL LLP
Edward J. LoBello    Frank A. Oswald
990 Stewart Avenue, Suite 300    One Penn Plaza, Suite 3335
Garden City, New York 11530    New York, New York 10119
(516) 741-6565    (212) 594-5000
E-mail: elobello@msek.com    E-mail: frankoswald@teamtogut.com

    13.13   *Filing of Additional Documents*

    On or before substantial consummation of this Plan, the Debtors shall file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Dated:  March 12, 2021
    New York, New York

        RCCI WIND DOWN COMPANY, INC.

        By:    */s/ Marc Beige*
            Name:  Marc Beige
            Title:    President